DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
KELLY M. KNOLL, SBN 305579
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: dkramer@wsgr.com
Email: lwhite@wsgr.com
Email: kknoll@wsgr.com

BRIAN M. WILLEN (*Pro Hac Vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email: bwillen@wsgr.com

Attorneys for Defendants
GOOGLE LLC and YOUTUBE, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KIMBERLY CARLESTE NEWMAN, LISA CABRERA, CATHERINE JONES, DENOTRA NICOLE LEWIS, ANDREW HEPKINS, HARVEY STUBBS, KHALIF MUHAMMAD, KEU REYES, and OSIRIS LEY,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC, YOUTUBE, LLC, and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.: 5:20-cv-04011 LHK<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' REVISED SECOND AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Before: Hon. Lucy H. Koh<br>Courtroom: 8<br>Hearing Date: March 11, 2021<br>Time: 1:30 p.m. |

1

**TABLE OF CONTENTS**

2    NOTICE OF MOTION AND MOTION ........................................................................1

3    STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED ...........................1

4    MEMORANDUM OF POINTS AND AUTHORITIES ..............................................................1

5    FACTUAL BACKGROUND ..................................................................................................2

6          A.    The YouTube Service And Terms Of Use ..................................................2

7          B.    YouTube's Restricted Mode And Advertising Features ...............................3

8          C.    Plaintiffs And Their Claims Against Google ..............................................4

9    ARGUMENT ..........................................................................................................................6

10   I.    THE SAC VIOLATES RULE 8'S PLAIN STATEMENT REQUIREMENT.....................6

11

12   II.   PLAINTIFFS FAIL TO STATE A VIABLE CAUSE OF ACTION ..................................7

13         A.    Plaintiffs Fail To State A Claim Under Section 1981 Or The Unruh Act ...................8

14         B.    Plaintiffs Fail To State Claims Under The Federal Or State Constitutions ...............11

15         C.    Plaintiffs Fail To State A Contract-Based Claim ........................................15

16         D.    Plaintiffs Fail To State An Equitable Claim..............................................16

17         E.    Plaintiffs Fail To State A Claim Under The Lanham Act...........................19

18         F.    Plaintiffs Fail To State A Claim Under The UCL......................................20

19   III.  GOOGLE IS PROTECTED FROM PLAINTIFFS' CLAIMS BY SECTION 230 ...........21

20         A.    Google Is Protected By Two Separate Provisions Of Section 230 ............21

21         B.    Section 230 Is Not Unconstitutional .......................................................23

22   CONCLUSION ......................................................................................................................25

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

*Aguilar v. Int'l Longshoremen's Union Local #10*,
    966 F.2d 443 (9th Cir. 1992) .................................................................................17

*Ali v. Intel Corp.*,
    2019 U.S. Dist. LEXIS 50925 (N.D. Cal. Mar. 26, 2019) ......................................7

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
    526 U.S. 40 (1999) ................................................................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................7

*Avago Techs. United States Inc. v. NanoPrecision Prods.*,
    2017 U.S. Dist. LEXIS 13484 (N.D. Cal. Jan. 31, 2017) .....................................18

*Bank of N.Y. v. Fremont Gen. Corp.*,
    523 F.3d 902 (9th Cir. 2008) .................................................................................18

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009) .................................................................21, 22, 24

*Bartholomew v. YouTube, LLC*,
    17 Cal. App. 5th 1217 (2017) ................................................................................20

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003) .................................................................13, 22, 24

*Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*,
    688 F. Supp. 2d 940 (N.D. Cal. 2010) ..................................................................17

*Brignac v. Yelp Inc.*,
    2019 U.S. Dist. LEXIS 94581 (N.D. Cal. June 5, 2019) .................................8, 11

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
    20 Cal. 4th 163 (1999) .....................................................................................20, 21

*Cirino v. Ocwen Loan Servicing LLC*,
    2019 U.S. Dist. LEXIS 123796 (C.D. Cal. May 29, 2019) ...................................17

*Comcast Corp. v. National Ass'n of African American-Owned Media*,
    140 S. Ct. 1009 (2020) ............................................................................................9

*Cullen v. Netflix, Inc.*,
    880 F. Supp. 2d 1017 (N.D. Cal. 2012) .................................................................11

*DeHoog v. Anheuser-Busch InBev SA/NV*,
    899 F.3d 758 (9th Cir. 2018) ...................................................................................9

*Denver Area Educational Telecommunications Consortium, Inc. v. FCC*,
    518 U.S. 727 (1996) ...........................................................................................24, 25

*Doe One v. CVS Pharmacy, Inc.*,
    348 F. Supp. 3d 967 (N.D. Cal. 2018) .........................................................................7, 9

*Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*,
    470 F.3d 827 (9th Cir. 2006)........................................................................................8

*Domen v. Vimeo, Inc.*,
    433 F. Supp. 3d 592 (S.D.N.Y. Jan. 14, 2020)...........................................................14, 22

*Domino's Pizza, Inc. v. McDonald*,
    546 US 470 (2006) ..................................................................................................11

*Earll v. eBay, Inc.*,
    2011 U.S. Dist. LEXIS 100360 (N.D. Cal. Sept. 6, 2011)....................................................10

*Ebeid v. Facebook, Inc.*,
    2019 U.S. Dist. LEXIS 78876 (N.D. Cal. May 9, 2019) ...................................................16

*Englert v. IVAC Corp.*,
    92 Cal. App. 3d 178 (1979) .......................................................................................19

*Enigma Software Group USA, LLC v. Malwarebytes, Inc.*,
    946 F.3d 1040 (9th Cir. 2019).....................................................................................23

*Fair Hous. Council v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008)......................................................................................22

*Federal Agency of News LLC v. Facebook, Inc.*,
    432 F. Supp. 3d 1107 (N.D. Cal. 2020) ....................................................................12, 22

*Flores v. EMC Mortg. Co.*,
    997 F. Supp. 2d 1088 (E.D. Cal. 2014)...........................................................................6

*Freedom Watch, Inc. v. Google, Inc.*,
    368 F. Supp. 3d 30 (D.D.C. 2019) ...............................................................................12

*Fuhu, Inc. v. Toys "R" Us, Inc.*,
    2013 U.S. Dist. LEXIS 196563 (S.D. Cal. Mar. 1, 2013)....................................................19

*Fyk v. Facebook, Inc.*,
    808 F. App'x 597 (9th Cir. 2020)..................................................................................22

*Gamble v. Kaiser Found. Health Plan, Inc.*,
    348 F. Supp. 3d 1003 (N.D. Cal. 2018) ...........................................................................9

*Gen. Bldg. Contractors Ass'n v. Pennsylvania*,
    458 U.S. 375 (1982) .................................................................................................8

*Golden Gateway Ctr. v. Golden Gateway Tenants Ass'n*,
 26 Cal. 4th 1013 (2001)..................................................................................................12

*Gonzalez v. Google, Inc.*,
 282 F. Supp. 3d 1150 (N.D. Cal. 2017) .........................................................................22

*Gonzalez v. Planned Parenthood of L.A.*,
 759 F.3d 1112 (9th Cir. 2014)..........................................................................................7

*Gray v. Apple Inc.*,
 2017 U.S. Dist. LEXIS 67805 (N.D. Cal. May 3, 2017) .................................................9

*Greater L.A. Agency on Deafness, Inc. v. CNN, Inc.*,
 742 F.3d 414 (9th Cir. 2014).........................................................................................8, 9

*Green v. Am. Online*,
 318 F.3d 465 (3d Cir. 2003) .......................................................................................13, 24

*Harris v. Capital Growth Investors XIV*,
 52 Cal. 3d 1142 (1991)....................................................................................................8

*Hennessey's Tavern, Inc. v. Nehrenheim*,
 2019 WL 3825492 (Cal. Super. Ct. July 26, 2019)..........................................................8

*hiQ Labs, Inc. v. LinkedIn Corp.*,
 273 F. Supp. 3d 1099 (N.D. Cal. 2017) .........................................................................14

*Jackson v. Fischer*,
 931 F. Supp. 2d 1049 (N.D. Cal. 2013) .........................................................................17

*Jimenez v. DTRS St. Francis, LLC*,
 2013 U.S. Dist. LEXIS 160620 (N.D. Cal. Nov. 6, 2013)...............................................9

*Kimzey v. Yelp! Inc.*,
 836 F.3d 1263 (9th Cir. 2016)......................................................................................13, 24

*Kinderstart.com, LLC v. Google, Inc.*,
 2007 U.S. Dist. LEXIS 22637 (N.D. Cal. Mar. 16, 2007) .............................................20

*King v. Facebook, Inc.*,
 2019 U.S. Dist. LEXIS 151582 (N.D. Cal. Sept. 5, 2019)..............................................22

*Knapp v. Hogan*,
 738 F.3d 1106 (9th Cir. 2013)..........................................................................................7

*Knievel v. ESPN*,
 393 F.3d 1068 (9th Cir. 2005)..........................................................................................3

*Kwikset Corp. v. Super. Ct.*,
 51 Cal. 4th 310 (2011)...................................................................................................21

*La'Tiejira v. Facebook, Inc.*,
    272 F. Supp. 3d 981 (S.D. Tex. 2017) ................................................................24

*Levitt v. Yelp! Inc.*,
    2011 U.S. Dist. LEXIS 124082 (N.D. Cal. Oct. 26, 2011) ...........................21, 22

*Lewis v. Google LLC*,
    2020 U.S. Dist. LEXIS 150603 (N.D. Cal. May 20, 2020) .........................16, 22

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    572 U.S. 118 (2014) ..............................................................................................20

*Manhattan Cmty. Access Corp. v. Halleck*,
    139 S. Ct. 1921 (2019) ...........................................................11, 12, 13, 14, 24

*McHenry v. Renne*,
    84 F.3d 1172 (9th Cir. 1996)....................................................................................6

*Media.net Advert. FZ-LLC v. NetSeer, Inc.*,
    156 F. Supp. 3d 1052 (N.D. Cal. 2016) ...............................................................19

*Melendez v. Emmett*,
    2014 U.S. Dist. LEXIS 140511 (N.D. Cal. Sept. 30, 2014)..................................11

*Merritt v. JP Morgan*,
    2018 U.S. Dist. LEXIS 69006 (N.D. Cal. Apr. 24, 2018).....................................18

*Mishiyev v. Alphabet, Inc.*,
    444 F. Supp. 3d 1154 (N.D. Cal. 2020) ...............................................................16

*Oracle Am., Inc. v. CedarCrestone, Inc.*,
    938 F. Supp. 2d 895 (N.D. Cal. 2013) .................................................................20

*Park Mgmt. Corp. v. In Def. of Animals*,
    36 Cal. App. 5th 649 (2019) .................................................................................14

*Parker v. PayPal, Inc.*,
    2017 U.S. Dist. LEXIS 130800 (E.D. Pa. Aug. 16, 2017).....................................24

*Pasadena Live v. City of Pasadena*,
    114 Cal. App. 4th 1089 (2004)..............................................................................16

*Prager Univ. v. Google LLC*,
    2018 U.S. Dist. LEXIS 51000 (N.D. Cal. Mar. 26, 2018) ..............................1, 7, 12, 19, 20

*Prager Univ. v. Google LLC*,
    2019 Cal. Super. LEXIS 2034 (Cal. Super. Ct. Nov. 19, 2019) ........1, 14, 16, 20, 21, 23, 24

*Roberts v. AT&T Mobility*,
    877 F.3d 833 (9th Cir. 2017)............................................................................13, 25

*Robins v. Pruneyard Shopping Ctr.*,
    23 Cal.3d 899 (1979)....................................................................................................14

*Sepehry-Fard v. MB Fin. Servs.*,
    2014 U.S. Dist. LEXIS 71568 (N.D. Cal. May 23, 2014) ............................................7

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015) ...................................................................22, 24

*Silvaco Data Sys. v. Intel Corp.*,
    184 Cal. App. 4th 210 (2010).......................................................................................18

*Skinner v. Railway Labor Executives' Ass'n*,
    489 U.S. 602 (1989) ...............................................................................................12, 13

*Song Fi, Inc. v. Google Inc.*,
    2018 U.S. Dist. LEXIS 82015 (N.D. Cal. May 15, 2018) ...........................................20

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001).........................................................................................8

*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*,
    100 Cal. App. 4th 44 (2002).........................................................................................16

*Sutton v. Providence St. Joseph Med. Ctr.*,
    192 F.3d 826 (9th Cir. 1999).........................................................................................13

*Turner v. Ass'n of American Medical Colleges*,
    167 Cal. App. 4th 1401 (2008).......................................................................................9

*UCAR Tech. (USA) Inc. v. Li*,
    2018 U.S. Dist. LEXIS 93817 (N.D. Cal. June 4, 2018) .............................................18

*Vallarta v. United Airlines, Inc.*,
    2020 U.S. Dist. LEXIS 183329 (N.D. Cal. Oct. 2, 2020)............................................18

*Walker v. KFC Corp.*,
    728 F.2d 1215 (9th Cir. 1984).......................................................................................17

*White v. J.P. Morgan Chase, Inc.*,
    167 F. Supp. 3d 1108 (E.D. Cal. 2016).........................................................................17

*Wilkins-Jones v. Cty. of Alameda*,
    859 F. Supp. 2d 1039 (N.D. Cal. 2012) ........................................................................10

*Williams v. Tobener*,
    2016 U.S. Dist. LEXIS 129931 (N.D. Cal. Sept. 22, 2016)...........................................9

*Youngman v. Nevada Irrigation Dist.*,
    70 Cal. 2d 240 (1969)...................................................................................................17

*Zango, Inc. v. Kaspersky Lab, Inc.*,
    568 F.3d 1169 (9th Cir. 2009) ..........................................................................23

*Zepeda v. PayPal, Inc.*,
    777 F. Supp. 2d 1215 (N.D. Cal. 2011) ............................................................17

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997)..............................................................................22

*Zimmerman v. Facebook, Inc.*,
    2020 U.S. Dist. LEXIS 183323 (N.D. Cal. Oct. 2, 2020) ..................................15

**STATUTES**

42 U.S.C. § 1981 ......................................................................................................6, 8, 11

47 U.S.C. § 230(b) ......................................................................................................13, 23

47 U.S.C. § 230(c) ............................................................................1, 12, 21, 22, 23

47 U.S.C. § 230(e) ......................................................................................................21

15 U.S.C. § 1125(a)(1)(B)..........................................................................................19

**RULES**

Fed. R. Civ. P. 8 ..............................................................................................1, 6, 7

Fed. R. Civ. P. 12(b)(6)..............................................................................................1, 7

Fed. R. Civ. P. 9(b)......................................................................................................21

**MISCELLANEOUS**

Jeff Kosseff, *The Twenty-Six Words That Created the Internet* (2019)..........................24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 11, 2021, at 1:30 p.m., before the Honorable Lucy H. Koh of the United States District Court for the Northern District of California, Courtroom 8, Fourth Floor, 280 South 1st Street, San Jose, California, Defendants Google LLC ("Google") and YouTube, LLC ("YouTube") (collectively "Defendants") shall and hereby do move for an order dismissing with prejudice all claims advanced by Plaintiffs in their Revised Second Amended Class Action Complaint (Dkt. No. 27, "SAC"). The motion is based upon this Notice of Motion; the supporting Memorandum of Points and Authorities; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before the Court.

## STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED

Pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure and Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c) ("Section 230"), Defendants seek dismissal of Plaintiffs' SAC without further leave to amend.

## MEMORANDUM OF POINTS AND AUTHORITIES

This case follows on the heels of two similar lawsuits, each claiming that YouTube's content moderation decisions are the result of alleged bias against different groups or viewpoints, and each brought by the same counsel who represent Plaintiffs here. The first of these cases, brought by Prager University, claimed YouTube discriminated against conservative viewpoints, and was dismissed by both the federal and state courts. *See Prager Univ. v. Google LLC*, 2018 U.S. Dist. LEXIS 51000 (N.D. Cal. Mar. 26, 2018) ("*Prager I*"); *Prager Univ. v. Google LLC*, 2019 Cal. Super. LEXIS 2034 (Cal. Super. Ct. Nov. 19, 2019) ("*Prager II*"). The second alleged discrimination against LGBTQ+ content creators, and Defendants' motion to dismiss is pending before Judge DeMarchi. *See Divino Group LLC v. Google LLC*, No. 5:19-cv-04749-VKD (N.D. Cal.). This case, the third, now claims discrimination on the basis of race. Like the plaintiffs in *Prager* and *Divino*, Plaintiffs allege that Google and YouTube wrongly excluded some of their videos from Restricted Mode, disqualified some of their videos from advertising, or restricted or removed their content in various other ways. Rather than see these for what they are—just

---

1   different views about how YouTube's policies should be applied or possible imperfections in

2   YouTube's content review systems—Plaintiffs assert (without factual support) they were

3   motivated by racial bias.

4         These claims are false and unsupported by anything other than baseless rhetoric. But even

5   accepting Plaintiffs' factual allegations as true, their claims fail. Plaintiffs have not alleged any

6   facts to support their claims of intentional discrimination on the basis of race, as they must to state

7   claims under Section 1981 and the Unruh Act. Nor have Plaintiffs alleged anything that would

8   allow them to pursue claims—for violation of the federal and state constitutions, and the Lanham

9   Act—that are materially identical to claims their counsel has tried and failed to advance before.

10   Plaintiffs' contract claims are barred by the plain terms of the agreements they seek to enforce,

11   which protect Defendants' right to remove, restrict access to, and display content on YouTube, at

12   their discretion. Plaintiffs' remaining state law claims—for conversion, replevin, promissory

13   estoppel, accounting, and violation of the UCL—all fail as derivative of or precluded by their

14   contract claims, among other things. Finally, and anticipating that Google and YouTube will

15   invoke their statutory rights under Section 230, Plaintiffs also allege that that statute is

16   unconstitutional. As courts have uniformly held, this constitutional challenge fails. Neither the

17   prolix nature of Plaintiffs' allegations nor their distracting rhetoric provides any basis for a

18   different result here. The SAC should be dismissed.

19                        **FACTUAL BACKGROUND**

20       **A.**      **The YouTube Service And Terms Of Use**

21         YouTube is a popular online video hosting platform. ¶¶ 27, 38-39.[1] YouTube, LLC is a

22   subsidiary of Google LLC. ¶¶ 27-29. Content creators upload videos to YouTube free of charge,

23   enabling YouTube's billions of users to view, share, and comment on them. ¶ 519. YouTube

24   strives to be welcoming to all voices, and the videos available on the service reflect a broad

25   diversity of culture, perspective, and background. Members of historically disadvantaged

26   communities, including African-American, Puerto Rican, and Mexican-American content creators,

27

28       [1] Citations to "¶ _" are to the SAC.

---

use YouTube's platform in large numbers. ¶¶ 51, 59, 181. Not only are there no race-based barriers to entry on YouTube, YouTube's Community Guidelines prohibit users from promoting hate or violence on the basis of "race," "ethnicity," and "nationality." Exs. 3, 6.[2]

YouTube strives to make its service welcoming to all content creators and its service is governed by (race-neutral) terms and content policies. *See, e.g.*, ¶¶ 7 n.2, 42-43, 75, 77, 472. Before creating channels and uploading their content to the service, Plaintiffs acknowledge they agreed to YouTube's Terms of Service and the incorporated Community Guidelines. *See* ¶¶ 7 n.2, 75, 85, 349, 472. Those Terms provide that YouTube reserves the right to remove content from its service, including videos uploaded by content creators. Ex. 2.[3] The Community Guidelines are common-sense rules prohibiting certain kinds of content, including "[v]iolent or gory content," "hate speech," "harassment," and "name calling or malicious insults." Exs. 3-6. Google and YouTube reserve the right to remove any content that they believe to be contrary to these rules. Ex. 2. None of YouTube's terms or content policies make distinctions among creators or content on the basis of race.

**B.     YouTube's Restricted Mode And Advertising Features**

To make YouTube more inclusive for more sensitive viewers, while still allowing a wide range of content on the platform, YouTube offers a feature called Restricted Mode—an optional, opt-in setting that a small minority of users select to screen out content flagged as age-restricted or "potentially adult." ¶¶ 135-137; Ex. 8. Videos are excluded from Restricted Mode by software that

---

[2] Citations to "Ex. _" are to exhibits attached to the Declaration of Lauren Gallo White. The SAC alleges that "Plaintiffs entered into binding and legally enforceable contracts with Defendants including the TOS and related agreement(s) under California and controlling federal law." ¶ 472; *see also* ¶ 7 n.2. The SAC also expressly references the YouTube Community Guidelines and related content policies incorporated in YouTube's Terms (*see, e.g.*, ¶¶ 42-43, 77, 164, 271, 349, 492) and extensively quotes YouTube's Help Center page titled "Your content & Restricted Mode" (*see, e.g.*, ¶¶ 139, 142). The SAC thus incorporates by reference the terms, policies, and guidelines. The Court therefore may consider these documents in ruling on this motion. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

[3] Effective December 10, 2019, YouTube replaced this reservation with a functionally identical one: "YouTube is under no obligation to host or serve Content." Ex. 1; *see also id.* ("If we reasonably believe that any Content is in breach of this Agreement or may cause harm to YouTube, our users, or third parties, we may remove or take down that Content in our discretion.").

---

1  checks "signals like the video's metadata, title and the language used in the video" and by human

2  reviewers. Ex. 8; *see also* ¶ 139. Excluded videos, as long as they comply with the Community

3  Guidelines, remain freely available on YouTube's general service where they can be seen by the

4  vast majority of users who have not turned on Restricted Mode. While of course "Restricted Mode

5  will never be perfect," creators who believe their content has been wrongly excluded from

6  Restricted Mode may appeal to YouTube. ¶¶ 50-51, 146; Ex. 8.

7       YouTube allows content creators whose channels meet certain minimum viewership

8  requirements to earn revenue from (or "monetize") their videos by running advertisements with

9  them as part of the YouTube Partner Program. To be eligible for monetization, Plaintiffs agreed to

10  certain additional written contracts, including YouTube's Partner Program Terms and the AdSense

11  Online Terms of Service. *See* ¶¶ 7 n.2, 472; Exs. 9-10, 14. In addition, Plaintiffs agreed to comply

12  with YouTube's monetization policies, including the Advertiser-friendly content guidelines, which

13  are designed to ensure that ads do not appear alongside videos with content that certain audiences

14  might find objectionable. *See* ¶¶ 7 n.2, 349; Exs. 7, 9-14. YouTube uses automated software to

15  identify content as inappropriate for advertising, and creators may appeal demonetization

16  decisions for manual review. ¶ 176; Ex. 13.

17       The YouTube Partner Program Terms provide that "YouTube is not obligated to display

18  any advertisements alongside your videos and may determine the type and format of ads available

19  on the YouTube Service." Ex. 10. Similarly, YouTube's advertising guidelines explain that

20  "YouTube reserves the right, at its discretion, to not show ads on videos and watch pages." Ex. 7.

21       **C.    Plaintiffs And Their Claims Against Google**

22       Plaintiffs are individuals who identify as African American, Puerto Rican, or Mexican

23  American. ¶¶ 18-26. Plaintiffs' content includes news programs, commentary on current events,

24  music videos, makeup tutorials, cooking videos, films, episodic series, and comedy sketches.

25  Plaintiffs' content includes videos titled "CANDACE OWENS IS A 'COON ARTIST'" (on "The

26  True Royal Family"), https://www.youtube.com/watch?v=Wz1c7WjoVuo (July 13, 2020); "What

27  I Don't Like About Mexicans…" (on "Carmen Caboom Reloaded"),

28  https://www.youtube.com/watch?v=N33eLIj2-fk (Jan. 20, 2019); and videos depicting gory

simulated violence (on "Osyley"), https://www.youtube.com/watch?v=6O-BXCg0p7I (Oct. 9, 2014). ¶¶ 18-26, 338, 340. Each Plaintiff has operated a YouTube channel for at least five years, and some have been uploading videos for over a decade. ¶¶ 18-26. No Plaintiff alleges that they are currently prohibited from uploading content to YouTube or from operating channels on YouTube's general service (that is, without Restricted Mode turned on). Plaintiffs' allegations are far more limited: they claim that YouTube removed (or failed to restore) a fraction of their videos (*see* ¶¶ 179, 187, 199, 228, 249, 271-272, 329-330), excluded some (but not all) of their videos from Restricted Mode (*see* ¶¶ 24, 182-183, 216, 253-254, 287, 305, 325, 329, 338, 345), deemed some (but not all) of their videos inappropriate for advertising (or "demonetized" them) (*see* ¶¶ 18-20, 180, 199-200, 246-247, 249, 278, 329, 345), and took other actions that allegedly made it harder for viewers to find or access their videos and channels.[4] Plaintiffs attempt to pile up these contractually permitted alleged restrictions and weave them into a sprawling and vaguely defined attack. The SAC is rife with conclusory rhetoric—unsupported by actual factual allegations—characterizing YouTube's actions as "discriminatory," "arbitrary," "capricious," and even "anticompetitive" and describing YouTube's stated reasons for its actions as "pretext." *E.g.*, ¶¶ 62, 64, 120-121, 147, 322, 482.

Plaintiffs seek declaratory and injunctive relief, an accounting, and monetary damages against Defendants based on more than a dozen causes of action, which are discussed in detail

---

[4] *See* ¶¶ 130, 145, 151, 333-334 (alleged difficulties in qualifying for or accessing "special programs and perks," such as the YouTube Partner Program); ¶¶ 65.g, 163, 207 (too many YouTube advertisements placed in videos); ¶ 208 (alleged delays between Plaintiffs' video uploads, user notifications, and users' access to videos); ¶ 331 (custom "thumbnail" images allegedly deleted); ¶¶ 65.h, 164, 178 (videos allegedly excluded from a window that recommends videos); ¶¶ 65.i, 165-170, 209, 267-278, 290-291, 311 (other creators' "[h]ostile" or "[i]rrelevant" videos allegedly included too often in a window that recommends videos); ¶¶ 65.a, 121 (videos reviewed and filtered using automated means); ¶¶ 65.f, 159, 193, 213 (users allegedly unable to post comments or having their comments removed); ¶¶ 65.f, 159-161, 193, 212-13, 266 ("livestream" broadcast videos allegedly experiencing bandwidth issues, blurry or unclear visuals, and other temporary accessibility issues); ¶¶ 65.e, 65.k, 154-155, 176-177, 232-235 (user-flagged content removed or restricted, and delays in appeals of such decisions); ¶¶ 197, 201-206, 273-276, 297, 316-319 (alleged reductions in subscribers and view counts); ¶¶ 65.d, 150-153, 184, 223, 269, 285-286, 328 (videos and channels allegedly prevented from appearing in search results); ¶¶ 226, 332 (other users allegedly copying Plaintiffs' videos or branding to their own channels).

below. Plaintiffs also purport to represent a putative class of all YouTube users who are "defined or classified as a protected class or person[s]" under 42 U.S.C. § 1981. ¶ 349.

**ARGUMENT**

**I.     THE SAC VIOLATES RULE 8'S PLAIN STATEMENT REQUIREMENT**

Plaintiffs' SAC stumbles on Rule 8's most basic pleading requirement: the inclusion of a "short and plain statement" of its claims for relief. Fed. R. Civ. P. 8(a)(2). The Court may dismiss a complaint as violative of Rule 8 where it lacks such a "short and plain" statement, and instead "mixes allegations of relevant facts, irrelevant facts, political argument and legal argument in a confusing way." *McHenry v. Renne*, 84 F.3d 1172, 1174, 1179-80 (9th Cir. 1996); *accord Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011).

Spanning nearly 600 paragraphs over 172 pages, the SAC is not only prolix, but also so rife with irrelevancies and speculation as to render the exact nature of (and factual support for) Plaintiffs' claims indecipherable. For example, Plaintiffs allege:

- "Defendants' discretion to find a violation YouTube's content based rules can be used by Defendants to bar the user from using any or all services offered by Defendants in any way including, the purchase and use of hand held smart phone, email, search engines, applications, and information or other services that are essential for public health, safety, law enforcement, election administration, taxation, and any other service performed by governments." ¶ 568.

- "Defendants' multiple roles create platform wide conflicts of interest, in which Defendants utilize their unfettered authority to curate third party content on YouTube as a pretext to impose access and content restrictions on Plaintiffs and all other persons similarly situated." ¶ 113.

*See also* ¶¶ 44-47, 54, 149, 212, 309, 313. These claims are neither short nor plain, but rather incomprehensible. Moreover, the SAC's most incendiary allegations consist of only "passing references and conclusions without supporting facts," *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1103 (E.D. Cal. 2014), including, for example, Plaintiffs' claims that Defendants: facilitate "culturally rampant" bias and discrimination among their employees against African Americans

1    (¶¶ 124-125) and "digitally profile, redline, and target" protected persons based on "race, sexual or

2    gender identity, and other personal characteristics" (¶¶ 9, 36, 62, 65.a, 98). Courts in this district

3    have relied on Rule 8 to toss out similarly conclusory statements as insufficient to support claims

4    of intentional discrimination. *See, e.g.*, *Doe One v. CVS Pharmacy, Inc.*, 348 F. Supp. 3d 967, 989

5    (N.D. Cal. 2018) (finding unsupported allegations that the defendants engaged in "intentionally

6    discriminatory actions" were "insufficient to meet the pleading standards of Rule 8(a)"); *Ali v.*

7    *Intel Corp.*, 2019 U.S. Dist. LEXIS 50925, at *11 (N.D. Cal. Mar. 26, 2019) (Koh, J.). This Court

8    should do likewise.

9         Under Rule 8, neither the Court nor Defendants are required to sort through a 600-

10   paragraph morass in order to determine what issues are potentially cognizable. See *Knapp v.*

11   *Hogan*, 738 F.3d 1106, 1111 (9th Cir. 2013). Stripped of its repetition, conclusions, and

12   arguments, moreover, the SAC contains very few cognizable facts, much less facts sufficient to

13   describe with any plausibility Plaintiffs' core allegation that YouTube is discriminating against

14   Plaintiffs or anyone else on the basis of race. On the basis of Rule 8 alone, Plaintiffs' SAC should

15   be dismissed.

16   **II.     PLAINTIFFS FAIL TO STATE A VIABLE CAUSE OF ACTION**

17        Insofar as the SAC meets Rule 8's standards, it fails to state a claim under Rule 12(b)(6). It

18   is well established that "[t]hreadbare recitals of the elements of a cause of action, supported by

19   mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead,

20   Plaintiffs must allege "factual content that allows the court to draw the reasonable inference that

21   the defendant is liable for the misconduct alleged." *Id.* The Court is not required to "assume the

22   truth of legal conclusions merely because they are cast in the form of factual allegations." *Prager*

23   *I*, 2018 U.S. Dist. LEXIS 51000, at *9. Nor should the Court accept allegations that contradict

24   documents attached to the SAC or incorporated by reference, *Gonzalez v. Planned Parenthood of*

25   *L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014), or that rest on "unwarranted deductions of fact, or

26   unreasonable inferences," *Sepehry-Fard v. MB Fin. Servs.*, 2014 U.S. Dist. LEXIS 71568, at *4

27   (N.D. Cal. May 23, 2014) (citation omitted).

28

1

**A.      Plaintiffs Fail To State A Claim Under Section 1981 Or The Unruh Act**

2

Plaintiffs' central claim is that Defendants have engaged in unlawful discrimination against

3

"African American content creators, viewers, and consumers," in violation of both Section 1981

4

and the Unruh Act. ¶¶ 1, 471, 474, 481-482, 484. Section 1981 guarantees that all persons shall

5

have the same right to make and enforce contracts regardless of race. *Doe v. Kamehameha*

6

*Sch./Bernice Pauahi Bishop Estate*, 470 F.3d 827, 835-37 (9th Cir. 2006) (quoting 42 U.S.C.

7

§ 1981). The Unruh Act grants individuals full and equal access to business establishments.

8

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 989 (9th Cir. 2001). Both statutes require acts of

9

*intentional* discrimination. *See Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 386-

10

389 (1982); *Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142, 1175 (1991). Neither is

11

satisfied by allegations of disparate impact or anything less than purposeful discrimination. *See*

12

*Gen. Bldg. Contractors*, 458 U.S. at 389-90 & n.17; *Greater L.A. Agency on Deafness, Inc. v.*

13

*CNN, Inc.*, 742 F.3d 414, 426-27 (9th Cir. 2014); *Brignac v. Yelp Inc.*, 2019 U.S. Dist. LEXIS

14

94581, at *16-17 (N.D. Cal. June 5, 2019).

15

Plaintiffs come nowhere close to making this showing. They certainly cannot point to any

16

YouTube policy that, by its terms, discriminates on the basis of race or national origin. Plaintiffs

17

do not allege (nor could they) that YouTube's Restricted Mode, its Terms of Service, its

18

advertising guidelines, or any other feature, agreement, or rule contains any remotely

19

discriminatory provisions. Nothing in those policies calls for or contemplates greater restrictions

20

on content based on a creator's race, nationality, identity, or racial "viewpoint."[5] Exs. 8, 13.

21

Insofar as Plaintiffs' Section 1981 and Unruh Act claims are premised on the idea that the impact

22

of YouTube's facially neutral policies is felt more heavily by Plaintiffs than other creators, that

23

---

24

[5] Plaintiffs nowhere explain what they mean by "racial … viewpoint." ¶ 473; *see also, e.g.*,
¶¶ 2, 48. Even if the SAC had identified some perspective shared by all of the Plaintiffs, it would

25

make no difference. Section 1981 and the Unruh Act prohibit discrimination on the basis of
*identity*, not viewpoint. *See, e.g., Hennessey's Tavern, Inc. v. Nehrenheim*, 2019 WL 3825492, at

26

*3 (Cal. Super. Ct. July 26, 2019) (declining to recognize "political views" as a "personal
characteristic" actionable under Unruh Act and noting absence of case law recognizing

27

"'political views' as a judicially-recognized classification"). In any event, Plaintiffs' allegations
do not support a finding that YouTube discriminated against any particular point of view,

28

"racial" or otherwise.

---

theory fails as a matter of law. *See Gamble v. Kaiser Found. Health Plan, Inc.*, 348 F. Supp. 3d 1003, 1023 n.11 (N.D. Cal. 2018); *Turner v. Ass'n of American Medical Colleges*, 167 Cal. App. 4th 1401, 1408 (2008).

And while Plaintiffs arguably have not even alleged that much, disparate impact is the only theory the SAC tries to advance through non-conclusory allegations. For example, Plaintiffs allege that Defendants "refus[e]" to apply their policies "equally to all YouTube users," and have flagged some of Plaintiffs' videos for exclusion from Restricted Mode or for demonetization, while leaving allegedly similarly situated, non-minority content unrestricted. *E.g.*, ¶¶ 175, 219-221, 342, 344, 475. On their face, these allegations are not enough to state a claim under Section 1981 or the Unruh Act. *See CNN*, 742 F.3d at 426 (disparate impact on hearing-impaired viewers did not state an Unruh Act claim based on alleged policy of not captioning videos); *CVS Pharmacy, Inc.*, 348 F. Supp. 3d at 989 (dismissing Unruh Act claim based on application of facially neutral benefits policy); *Gray v. Apple Inc.*, 2017 U.S. Dist. LEXIS 67805, at *7 (N.D. Cal. May 3, 2017) (dismissing Section 1981 claim premised on alleged disparate treatment); *Jimenez v. DTRS St. Francis, LLC*, 2013 U.S. Dist. LEXIS 160620, at *8-10 (N.D. Cal. Nov. 6, 2013) (same).

Likewise, Plaintiffs' conclusory assertions that Defendants deliberately programmed YouTube's algorithms to "target" Plaintiffs or to flag videos based on race (¶¶ 4, 36-37, 65, 95, 98) rest, at best, on Plaintiffs' guess about the reasons their videos were restricted or demonetized. Plaintiffs assert that "Defendants' conduct constitutes intentional, knowing, and systematic race discrimination," ¶ 6, but this "classic speculative conclusion" falls well short of stating a discrimination claim, *DeHoog v. Anheuser-Busch InBev SA/NV*, 899 F.3d 758, 765 (9th Cir. 2018); *see also CNN*, 742 F.3d at 426. "To plead intentional discrimination, 'plaintiff cannot merely invoke his race in the course of a claim's narrative and automatically be entitled to pursue relief.'" *Williams v. Tobener*, 2016 U.S. Dist. LEXIS 129931, at *4-5 (N.D. Cal. Sept. 22, 2016). Rather, "[t]o prevail [under 1981], a plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. National Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1019 (2020); *see also, e.g., Jimenez*, 2013 U.S. Dist. LEXIS 160620, at *8-10; *Gray*, 2017 U.S. Dist. LEXIS 67805, at *7-8. "[M]ere

1   conclusory allegations of intentional discrimination will not suffice." *Williams*, 2016 U.S. Dist.

2   LEXIS 129931, at *4-5.

3        Not only have Plaintiffs failed to do that, the facts alleged in the SAC actually undercut

4   any claim of intentional discrimination. Again, Plaintiffs acknowledge that none of the Plaintiffs

5   were kicked off or stopped from posting their videos on YouTube. And even as to the Restricted

6   Mode and advertising allegations that are the focus of the SAC, Plaintiffs admit that the

7   restrictions they complain about affected a limited number of their videos. It is undisputed, for

8   example, that large numbers of Plaintiffs' videos were allowed to appear in Restricted Mode and

9   to earn advertising revenue. *See* ¶¶ 18-26, 182-83, 216, 246, 251, 278, 287, 305, 325, 329, 338,

10  344; *accord* ¶¶ 18-21, 180, 199-200, 246, 249, 329, 345. What is more, Plaintiffs admit that

11  YouTube often re-monetized or removed restrictions from their videos (when appropriate under

12  YouTube's policies) in response to their appeals. *See, e.g.*, ¶¶ 233-235, 265, 320. These facts,

13  which are apparent from the SAC, are inconsistent with any claim that YouTube intentionally

14  discriminated against Plaintiffs because of their race or nationality. *See, e.g.*, *Earll v. eBay, Inc.*,

15  2011 U.S. Dist. LEXIS 100360, at *8-9 (N.D. Cal. Sept. 6, 2011) (eBay representatives' advice

16  that plaintiff get the help of "a hearing person" failed to plead intentional discrimination where

17  others directed plaintiff to services for hearing-impaired users); *Wilkins-Jones v. Cty. of Alameda*,

18  859 F. Supp. 2d 1039, 1052 (N.D. Cal. 2012) ("That Defendants provided some, but not all,

19  accommodations to Plaintiff tends to negate an inference that Defendants' conduct was

20  purposefully discriminatory.").

21       Indeed, the SAC acknowledges a far more plausible reason that some, but not all, of

22  Plaintiffs' videos were restricted or not allowed to be monetized: those specific videos were

23  "found to violate one of YouTube's content based rules governing user content and access to the

24  platform." *See* ¶ 473.e; *see also, e.g.*, ¶¶ 326, 340 (describing Plaintiffs' videos—including a video

25  in which a person cocks a gun and then aims it at the camera, and another simulating a person

26  repeatedly slicing into her arm with a knife—as being restricted by YouTube). Though Plaintiffs

27  dismiss this as "mere pretext" (¶ 473.e), that assertion is unsupported by the SAC and inconsistent

28  with Plaintiffs' acknowledgment that only a portion of their videos were ever removed or

restricted by YouTube. *See, e.g.*, *Melendez v. Emmett*, 2014 U.S. Dist. LEXIS 140511, at \*6-7 (N.D. Cal. Sept. 30, 2014) (dismissing allegations of disparate treatment where other allegations suggested non-discriminatory reason for termination); *Brignac*, 2019 U.S. Dist. LEXIS 94581, at \*16-17 (dismissing allegations of disparate treatment in ad ranking where other allegations suggested that plaintiff's ad ranking was attributable to "the user reviews for his business and his decision not to pay for advertising on Yelp").

Finally, Plaintiffs' discrimination claims are undermined by their own acknowledgment of YouTube's considerable outreach efforts to African-American content creators. Among other things, YouTube has invited African-American content creators to discuss perceived challenges with YouTube's implementation of its content moderation policies. ¶¶ 51, 59. These allegations belie any suggestion that the content-moderation decisions at issue here amounted to willful *speaker-based* discrimination based on race, as opposed content-based determinations about particular videos—determinations that Plaintiffs may disagree with but simply do not amount to violations of Section 1981 or the Unruh Act. *Accord Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1024-25 (N.D. Cal. 2012) (Netflix's effort to increase the number of captioned videos "offset an inference of intentional discrimination" against hearing-impaired users).[6]

**B.**     **Plaintiffs Fail To State Claims Under The Federal Or State Constitutions**

Plaintiffs' next set of claims alleges that Defendants unlawfully "censored" Plaintiffs' speech, in violation of the U.S. and California constitutions. ¶¶ 518-537, 571-572. These claims fail because Defendants are private parties, not government actors. *See Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019) ("The Free Speech Clause does not prohibit private

---

[6] Plaintiffs' Section 1981 claim also fails for an additional reason: "[A] plaintiff cannot state a claim under § 1981 unless he has (or would have) rights under the existing (or proposed) contract," *Domino's Pizza, Inc. v. McDonald*, 546 US 470, 479-80 (2006), yet Plaintiffs have not shown that their enjoyment of any contractual rights was frustrated. Plaintiffs argue that Defendants impaired their contractual rights by filtering, restricting, removing, or blocking their content. *See* ¶ 473. But as Defendants explain in response to Plaintiffs' contract claims (*see infra* pp.15-16), the parties' agreements allow YouTube to exclude videos from Restricted Mode, to decline to pair videos with advertising, and to remove content from its service at its discretion. *See* Ex. 2. In no way do YouTube's alleged actions impair Plaintiffs' equal right "to make and enforce contracts." 42 U.S.C. § 1981.

---

abridgment of speech."); *Golden Gateway Ctr. v. Golden Gateway Tenants Ass'n*, 26 Cal. 4th 1013, 1023 (2001) ("California's free speech clause contains a state action limitation.").

**First Amendment.** In a case brought by the same attorneys that represent Plaintiffs here and advancing a virtually identical claim, the Ninth Circuit expressly held (affirming this Court's decision) that Google and YouTube are not state actors and cannot be sued under the First Amendment for their editorial decisions. *Prager I*, 2018 U.S. Dist. LEXIS 51000, at *25-27 (N.D. Cal. Mar. 26, 2018), *aff'd*, 951 F.3d 991, 997-99 (9th Cir. 2020) ("*Prager III*") (holding that hosting and moderating online content is not a "traditional and exclusive government function"). *Prager*, which is consistent with a long and unbroken line of cases rejecting similar First Amendment claims against private online service providers, squarely forecloses Plaintiffs' "public function" theory. *Id.*; *see also, e.g.*, *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 40 (D.D.C. 2019), *aff'd* 816 F. App'x 497 (D.C. Cir. 2020); *Federal Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1121-27 (N.D. Cal. 2020) ("*FAN*"); *accord Halleck*, 139 S. Ct. at 1931 ("The Constitution does not disable private property owners and private lessees from exercising editorial discretion over speech and speakers on their property.").

Plaintiffs try to evade this directly on-point precedent by arguing that the Supreme Court's decision in *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602 (1989), established a "permissive endorsement test," whereby a private actor becomes a state actor when it benefits from a law "that endorses or permits the party to engage in conduct that interferes with a fundamental constitutional right in a manner that the government may not." ¶ 541; *see also* ¶¶ 554-566. The argument appears to be that, because YouTube relies, in part, on Section 230(c) to defend against Plaintiffs' claims, its otherwise private editorial judgments are somehow transformed into state action. ¶¶ 556-557, 565-566. This argument does not work.

To start, no case has ever held that, merely by invoking an immunity statute, a private defendant becomes a state actor. *Skinner* suggested no such thing. That case did not involve an immunity, but rather a comprehensive federal drug testing regime for railroad employees, under which the federal government not only authorized drug testing but (1) *required* the railroads to withdraw from service any employee who declined testing, (2) asserted the right to receive the

employees' test results, and (3) barred the railroads from divesting themselves of the authority

created by the regulations. *Skinner*, 489 U.S. at 611, 615. The Court held that these regulatory

mandates provided "clear indices of the Government's *encouragement, endorsement, and*

*participation*," rendering the railroads "instrument[s] or agent[s] of the Government." *Id.* at 614-

16 (emphasis added). Plaintiffs thus are simply wrong to suggest (¶¶ 560-562) that *Skinner* holds

that general "endorsement"—separate from "encouragement" and "participation"—is enough to

create state action. Indeed, the Ninth Circuit has expressly (and repeatedly) held that private action

undertaken pursuant to—or even in order to comply with—a generally applicable law is *not* state

action. *See Roberts v. AT&T Mobility*, 877 F.3d 833 (9th Cir. 2017) (private company's

enforcement of arbitration provision made enforceable by federal statute); *Sutton v. Providence St.*

*Joseph Med. Ctr.*, 192 F.3d 826, 837-44 (9th Cir. 1999) (private employer's decision not to hire

plaintiff for refusing to provide social security number as required by federal law). Simply put:

"Action taken by private entities with the mere approval or acquiescence of the State is not state

action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999).

Under actual state action doctrine, Section 230 does nothing to make private companies

into state actors. *Accord Halleck*, 139 S. Ct. at 1928 (describing government compulsion and joint

participation tests for state action). It is a safeguard against civil liability, and it does not *compel*

online platforms to do anything. *See Green v. Am. Online*, 318 F.3d 465, 472 (3d Cir. 2003). Nor

does Section 230 endorse and encourage, much less amount to government *participation* in,

private decisions by online services to remove or restrict access to third-party content. While

Section 230 protects such decisions, it equally protects service providers' decisions to publish,

leave up, or expand access to user-created content. *Accord Kimzey v. Yelp! Inc.*, 836 F.3d 1263,

1269, 1271 (9th Cir. 2016) (explaining Section 230's purpose of promoting the "free exchange of

information and ideas over the Internet" and holding that the statute protects the "proliferation and

dissemination" of content).

In this way, Section 230 is a clear example of the government trying to take itself out of

the business of regulating online speech. *See Batzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003);

47 U.S.C. § 230(b)(2). Section 230 leaves decisions about content moderation in the hands of

1    service providers, thereby reinforcing the platforms' own First Amendment rights to exercise

2    editorial discretion. It would turn the statute—and the First Amendment—on its head to find that

3    Section 230 somehow converted otherwise private platforms into state actors. It would also defy

4    established law: if even extensive government *regulation* of a private entity does not make it a

5    state actor, *Halleck*, 139 S. Ct. at 1932, it cannot be that government *deregulation* has that

6    transformative effect. Indeed, Plaintiffs' argument would do exactly what the state-action rule is

7    meant to stop: "eviscerate certain private entities' rights to exercise editorial control over speech

8    and speakers on their properties or platforms." *Id.*

9        **California Constitution.** Plaintiffs' claim under the California Constitution fails for

10   similar reasons. This claim is based on the theory that YouTube has held itself out as a "public

11   forum," such that its private editorial decisions somehow became state action. ¶¶ 27, 79, 92, 518-

12   523. Every court that has addressed such efforts to treat private online services as state actors has

13   rejected them. That includes the recent decision in *Prager II*, 2019 Cal. Super. LEXIS 2034, at

14   *15-18, which rejected an identical claim brought by the same lawyers who represent Plaintiffs

15   here.

16       Plaintiffs may try to rely on the line of cases following *Robins v. Pruneyard Shopping Ctr.*,

17   23 Cal.3d 899 (1979), *aff'd*, 447 U.S. 74 (1980), which have held that a very limited class of

18   private real property—*e.g.*, certain shopping malls, *id.* at 910, and a plaza in front of a privately

19   owned amusement park, *Park Mgmt. Corp. v. In Def. of Animals*, 36 Cal. App. 5th 649, 666

20   (2019)—can be treated as constitutional public forums. These cases do not apply here, as "[n]o

21   court has expressly extended *Pruneyard* to the Internet generally." *hiQ Labs, Inc. v. LinkedIn*

22   *Corp.*, 273 F. Supp. 3d 1099, 1116 (N.D. Cal. 2017), *aff'd*, 938 F.3d 985 (9th Cir. 2019). As Judge

23   Chen explained, the "analogy between a shopping mall and the Internet is imperfect, and there are

24   a host of potential 'slippery slope' problems that are likely to surface were *Pruneyard* to apply to

25   the Internet." *Id.* The state court in *Prager II* was similarly unwilling to accept this "dramatic

26   expansion" of *Pruneyard*, 2019 Cal. Super. LEXIS 2034, at *17-18, and a federal court should be

27   no more willing to stretch California law beyond any place it has gone before. *Accord Domen v.*

28   *Vimeo, Inc.*, 433 F. Supp. 3d 592, 606-07 (S.D.N.Y. Jan. 14, 2020), *appeal docketed*, No. 20-616

1   (2d Cir. Feb. 18, 2020) (rejecting a similar claim under California constitution: "The Vimeo

2   website is not the equivalent of a California-based shopping center where 'large groups of citizens

3   congregate.'"); *Zimmerman v. Facebook, Inc.*, 2020 U.S. Dist. LEXIS 183323, at *5-6 (N.D. Cal.

4   Oct. 2, 2020) (same).

5         **C.       Plaintiffs Fail To State A Contract-Based Claim**

6         Plaintiffs next claim that YouTube's impediment of a "right of equal access to YouTube"

7   violates the express and implied provisions of the YouTube Terms of Service and other

8   agreements. ¶¶ 440-447 (breach of contract); ¶¶ 448-457 (implied covenant). These claims are

9   ungrounded in—if not contrary to—the actual terms of the parties' agreement. In articulating the

10  breach of contract claim, Plaintiffs vaguely allude to actions YouTube allegedly undertook to

11  "review, filter and restrict Plaintiffs' access" to the service. ¶ 445. Plaintiffs likewise claim that,

12  through unspecified "conduct," YouTube breached an implied covenant of good faith and fair

13  dealing arising from the parties' agreements. ¶ 455. It is clear from the parties' agreements,

14  however, that the alleged removal, restriction, or demonetization of Plaintiffs' content does not

15  give rise to a viable claim.

16        The Terms of Service expressly state that YouTube reserves the right to remove content

17  from its platform in its discretion. Ex. 2. Likewise, the YouTube Partner Program Terms explain

18  that "YouTube is not obligated to display any advertisements alongside your videos and may

19  determine the type and format of ads available on the YouTube Service." Ex. 10. Finally, Google

20  and YouTube's terms and policies regarding advertising and monetization reserve "the right to

21  refuse or limit your access to [AdSense] Services," as well as "the right, at [YouTube's]

22  discretion, to not show ads on videos and watch pages." Exs. 7, 14. These terms reserve to

23  YouTube the right to exclude videos from Restricted Mode and to deem videos ineligible for

24  monetization. Given that the Terms of Service define "Content" broadly, YouTube's right to

25  exclude "Content" (Ex. 2) also covers Plaintiffs' allegations of deleted custom thumbnails, deleted

26  subscriptions, videos prevented from appearing in search results, and all the other actions Google

27  and YouTube allegedly took to "review, filter and restrict Plaintiffs' access to YouTube." ¶ 445;

28  *see also, e.g.*, ¶ 65; *supra* n.4.

---

As a matter of law, Plaintiffs cannot premise a breach claim on an action specifically permitted by the agreement. *See Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44, 56-57 (2002); *Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1159-60 (N.D. Cal. 2020), *appeal docketed*, No. 10-15657 (9th Cir. Apr. 14, 2020); *accord Lewis v. Google LLC*, 2020 U.S. Dist. LEXIS 150603, at \*44 (N.D. Cal. May 20, 2020) (YouTube did not breach the implied covenant by removing videos with hateful content, as YouTube was expressly authorized to do by its terms and guidelines); *Ebeid v. Facebook, Inc.*, 2019 U.S. Dist. LEXIS 78876, at \*21-22 (N.D. Cal. May 9, 2019) (Facebook did not breach the implied covenant by removing plaintiff's posts where "Facebook had the contractual right to remove or disapprove any post or ad at Facebook's sole discretion"); *Prager II*, 2019 Cal. Super. LEXIS 2034, at \*31-32 (YouTube did not breach the implied covenant by demonetizing and limiting access to plaintiff's videos, given YouTube's contractual right to remove content and discontinue any aspects of its service).

Plaintiffs' invocation of the implied covenant (¶¶ 448-457) fails for an additional reason. The implied covenant "is limited to assuring compliance with the *express terms* of the contract, and cannot be extended to create obligations not contemplated by the contract." *Pasadena Live v. City of Pasadena*, 114 Cal. App. 4th 1089, 1094 (2004). Here, however, as "in most cases," Plaintiffs' implied covenant claim "add[s] nothing to [their] claim for breach of contract." *Lewis*, 2020 U.S. Dist. LEXIS 150603, at \*41 (citation omitted). Insofar as Plaintiffs seek to impose limits "beyond those to which the parties actually agreed, the [implied covenant] claim is invalid. To the extent the implied covenant claim seeks simply to invoke terms to which the parties *did* agree, it is superfluous." *Id.* at \*40-41. Either way, the claim should be dismissed.

### D.     Plaintiffs Fail To State An Equitable Claim

Taking a different tack, Plaintiffs assert various state equity claims—for promissory estoppel (¶¶ 458-466), an accounting (¶¶ 413-421), conversion (¶¶ 422-431), and replevin (¶¶ 432-439)—that likewise fail as a matter of law.

**Promissory Estoppel.** Plaintiffs try to repackage their contract claims as a claim for promissory estoppel. But this theory is belied by the parties' written agreements. Promissory estoppel is an equitable theory based on a promise to perform that is unbargained for and that

plaintiffs reasonably and foreseeably relied upon to their detriment. *Youngman v. Nevada Irrigation Dist.*, 70 Cal. 2d 240, 249-50 (1969). It "is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event it fails to prove a breach of contract." *Walker v. KFC Corp.*, 728 F.2d 1215, 1219 (9th Cir. 1984). But that is precisely what Plaintiffs seek to do here. They claim to have detrimentally relied on several of YouTube's alleged promises (¶ 460) in exchange for Plaintiffs' "irrevocable license rights and other valuable consideration." ¶ 461. This kind of bargained-for exchange "is founded on the very acts which induced [Plaintiffs] to enter into the written agreements" (*see* ¶¶ 444, 454, 462-463) and, as such, it cannot give rise to a claim of promissory estoppel. *Walker*, 728 F.2d at 1220; *accord Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 954 (N.D. Cal. 2010) ("[T]he presence of adequate consideration renders the doctrine of promissory estoppel inapplicable.").

On top of that, Plaintiffs do not identify any "clear and unambiguous" promises made by YouTube that could create an enforceable agreement outside the parties' written contracts. *White v. J.P. Morgan Chase, Inc.*, 167 F. Supp. 3d 1108, 1113 (E.D. Cal. 2016) (relying upon *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal. App. 3d 885, 890-91 (1976)); *see* ¶ 429. As discussed above, YouTube's Terms of Service and advertising agreements expressly authorize it to remove content and to decline to pair videos with ads. Exs. 2, 10. Plaintiffs do not allege that YouTube ever said anything that assured Plaintiffs the unfettered right to monetize their videos or have them appear in Restricted Mode. And they certainly cannot conjure a legally enforceable promise squarely at odds with the terms of the parties' written agreements. *See Aguilar v. Int'l Longshoremen's Union Local #10*, 966 F.2d 443, 446-47 (9th Cir. 1992).

**Accounting.** Plaintiffs' claim for accounting is predicated on Defendants' supposed failure to pay Plaintiffs revenue allegedly owed under the parties' agreements. *See, e.g.*, ¶¶ 417-419. As such, this claim is entirely derivative of Plaintiffs' breach of contract claims and fails for the reasons discussed above. *See, e.g.*, *Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215, 1221 (N.D. Cal. 2011) (dismissing accounting claim as derivative of separate claims); *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1068-69 (N.D. Cal. 2013) (same); *Cirino v. Ocwen Loan Servicing LLC*, 2019

1  U.S. Dist. LEXIS 123796 (C.D. Cal. May 29, 2019), *aff'd* 815 F. App'x 204 (9th Cir. 2020)

2  (same); *see also Merritt v. JP Morgan*, 2018 U.S. Dist. LEXIS 69006, at *29-30 (N.D. Cal. Apr.

3  24, 2018) (Koh, J.) ("[W]here any money owed to Plaintiffs would be a result of damages,

4  California courts have dismissed separate claims for an accounting.").

5      **Conversion.** Plaintiffs' conversion claim is based on YouTube's allegedly wrongful

6  retention of Plaintiffs' videos "in the form of electronic data" after those videos have been

7  removed from the YouTube platform. ¶¶ 430-431. This theory fails on multiple grounds.

8      First, Plaintiffs consented to YouTube's retention of this data by uploading their videos to

9  YouTube and accepting the Terms of Service. "[T]here can be no conversion where an owner

10 either expressly or impliedly assents to or ratifies the taking, use or disposition of his property."

11 *Vallarta v. United Airlines, Inc.*, 2020 U.S. Dist. LEXIS 183329, at *37 (N.D. Cal. Oct. 2, 2020)

12 *see Bank of N.Y. v. Fremont Gen. Corp.*, 523 F.3d 902, 914 (9th Cir. 2008). Plaintiffs specifically

13 agreed that "YouTube may retain, but not display, distribute, or perform, server copies of

14 [Plaintiffs'] videos that have been removed or deleted" (Exs. 1-2); and acknowledged that

15 Plaintiffs could save a copy of their data at any time prior to its removal (Ex. 1). This consent to

16 the terms "negatives the wrongful element of the defendant's act," and serves as a complete

17 defense to conversion. *See Fremont Gen. Corp.*, 523 F.3d at 914 (citations omitted).

18     But even beyond the issue of Plaintiffs' consent, recent decisions in California and in this

19 District have repeatedly held that a plaintiff cannot plead a conversion claim based on unspecified,

20 intangible electronic data. *See Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 239 n.21

21 (2010); *UCAR Tech. (USA) Inc. v. Li*, 2018 U.S. Dist. LEXIS 93817, at *9-10 (N.D. Cal. June 4,

22 2018) (dismissing a conversion claim "[t]o the extent the conversion claim is based upon the

23 misappropriation of unspecified, intangible, non-trade secret 'computer data,' 'proprietary

24 information and work product'"); *Avago Techs. United States Inc. v. NanoPrecision Prods.*, 2017

25 U.S. Dist. LEXIS 13484, at *6 (N.D. Cal. Jan. 31, 2017). For this reason as well, Plaintiffs'

26

27

28

1  conversion claim fails.[7]

2  **Replevin.** Plaintiffs correctly recognize their claim for replevin—an equitable remedy

3  providing specific performance of the return of physical property improperly held by another—

4  rises and falls with conversion. ¶ 402; *see Fuhu, Inc. v. Toys "R" Us, Inc.*, 2013 U.S. Dist. LEXIS

5  196563, at *42 (S.D. Cal. Mar. 1, 2013); *see also Englert v. IVAC Corp.*, 92 Cal. App. 3d 178, 184

6  (1979). It therefore fails for the reasons discussed above.

7  **E.      Plaintiffs Fail To State A Claim Under The Lanham Act**

8  In another attempt to resurrect a theory that both this Court and the Ninth Circuit have

9  squarely rejected, Plaintiffs allege that the act of excluding some of their videos from Restricted

10  Mode violates the Lanham Act (15 U.S.C. § 1125(a)(1)(B)) because it somehow falsely

11  communicates to a user that the video violates rules concerning "nudity, vulgarity, violence, hate,

12  [or] shocking or sexually explicit material." ¶ 492. This claim fails for the same reasons the

13  identical claim failed in *Prager*. *See Prager I*, 2018 U.S. Dist. LEXIS 51000, at *30-35; *Prager*

14  *III*, 951 F.3d at 999-1000.

15  *First*, the categories of "potentially mature" content described in YouTube's Restricted

16  Mode guidelines do not constitute "commercial advertising or promotion." 15 U.S.C.

17  § 1125(a)(1)(B). Rather, "statements about Restricted Mode were made to explain a user tool, not

18  for a promotional purpose to 'penetrate the relevant market' of the viewing public." *Prager III*,

19  951 F.3d at 1000. *Second*, any statement implied by a video's exclusion from Restricted Mode is

20  not actionable because it has no "'tendency to mislead, confuse or deceive' the public about the

21  nature of [Plaintiffs'] videos." *Id.*[8] *Third*, any claim under the Lanham Act requires that the

22

23  [7] Plaintiffs also allege that Defendants have interfered with Plaintiffs' "sole dominion" over

24  their own videos. ¶ 400. While unclear what that is supposed to mean, to the extent Plaintiffs
allege conversion of the *content* of their videos, rather than the unspecified electronic data on

25  YouTube's servers, that conversion claim would be preempted under the Copyright Act, which
provides exclusive relief for Plaintiffs' copyright interests in their video content. *See Media.net*

26  *Advert. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1069-70 (N.D. Cal. 2016).

27  [8] Nor do Plaintiffs identify any *express* statements about Restricted Mode that could support
a false advertising claim. YouTube's only alleged public statement about Plaintiffs' videos'

28  exclusion from Restricted Mode is incontrovertibly truthful: "This video is unavailable with
Restricted Mode enabled. To view this video, you will need to disable Restricted Mode." ¶¶ 24,

alleged false misrepresentation cause the plaintiff harm. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014). Yet Plaintiffs do not allege any causal connection between any statement by YouTube and any damages they claim to have sustained. Instead, as this Court recognized in *Prager*, "any harm that Plaintiff[s] suffered was caused by [YouTube's] decisions to limit access to some of Plaintiff[s'] videos," *Prager I*, 2018 U.S. Dist. LEXIS 51000, at *35, or its decisions not to allow certain of Plaintiffs' videos to be monetized—not by implied statements concerning YouTube's Restricted Mode.

### F.       Plaintiffs Fail To State A Claim Under The UCL

The UCL "establishes three varieties of unfair competition"—unlawful, unfair, or fraudulent. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). The "unlawful" prong "'borrows' violations of other laws and treats them as unlawful practices." *Id.* Plaintiffs cannot state a claim under this prong because they fail to allege a predicate unlawful act. *Accord Oracle Am., Inc. v. CedarCrestone, Inc.*, 938 F. Supp. 2d 895, 908 (N.D. Cal. 2013).

The UCL defines an "unfair" business practice differently depending on whether the plaintiff sues as a competitor or as a consumer. If they are trying to sue as competitors, which is far from clear, Plaintiffs must allege conduct that "threatens an incipient violation of an antitrust law … or otherwise significantly threatens or harms competition." *Cel-Tech*, 20 Cal. 4th at 187. Needless to say, Plaintiffs assert nothing close to that; instead, they present threadbare conclusions that Defendants compete with them by posting their own unspecified videos (¶¶ 40, 42, 63, 95, 147); restrict Plaintiffs' content based on race, while exempting YouTube's own content (or that of "preferred" or "sponsored" creators) from review or restriction (¶¶ 43, 119, 504); and use their "monopoly" power to "manipulate, bully, and falsely denigrate legitimate YouTube users" (¶¶ 39, 63, 97, 106, 149). As a matter of law, this is not enough to show an incipient antitrust violation or harm to competition. *See Kinderstart.com, LLC v. Google, Inc.*, 2007 U.S. Dist. LEXIS 22637, at *18 (N.D. Cal. Mar. 16, 2007) (directing traffic to "*third-party* sites that competed with

---

140, 325. As a matter of law, no false impression could have flowed from this statement. *Accord Prager II*, 2019 Cal. Super. LEXIS 2034, at *30 n.8; *Song Fi, Inc. v. Google Inc.*, 2018 U.S. Dist. LEXIS 82015, at *4, *11-12 (N.D. Cal. May 15, 2018); *Bartholomew v. YouTube, LLC*, 17 Cal. App. 5th 1217, 1232-33 (2017).

KinderStart" did not show harm to competition). "Injury to a competitor is not equivalent to injury to competition." *Cel-Tech*, 20 Cal. 4th at 186; *see also Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136-37 (9th Cir. 2014) (deeming insufficient the assertion that Yelp "harms competition by favoring businesses that … purchase advertising to the detriment of competing businesses that decline to purchase advertising").

Beyond these allegations, Plaintiffs assert that Defendants violated the UCL by allegedly misleading the public about YouTube's enforcement of its rules "appl[ied] equally to all." ¶ 503; *see* ¶¶ 93-94. Whether offered under the "unfair" prong or the "fraudulent" prong, this claim fails because Plaintiffs fail to identify any misleading statements with the particularity required by Rule 9(b), and because YouTube's statements about the open nature of its platform and its commitment to free expression are non-actionable statements, particularly when viewed alongside YouTube's specific policies regarding Restricted Mode and advertising. *Prager II*, 2019 Cal. Super. LEXIS 2034, at *32-33 (dismissing nearly identical UCL claim). And as for the statements that Plaintiffs' videos were excluded from Restricted Mode, the SAC fails to allege that Plaintiffs relied on these statements in any way. *See Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 326-27 (2011) (plaintiff "must demonstrate actual reliance on the allegedly deceptive or misleading statements"). Finally, Plaintiffs fail to allege financial harm as a result of any allegedly false statement, as opposed to YouTube's decision to make certain of their videos less visible or demonetize them. *Prager II*, 2019 Cal. Super. LEXIS 2034, at *33-34.

## III.   GOOGLE IS PROTECTED FROM PLAINTIFFS' CLAIMS BY SECTION 230

### A.   Google Is Protected By Two Separate Provisions Of Section 230

While the Court need go no further to dismiss this action, insofar as Plaintiffs' claims are based on YouTube's decisions about whether and how to display videos and advertisements, they are separately barred by Section 230, which immunizes online platforms against efforts to hold them liable for publishing decisions like these. 47 U.S.C. §§ 230(c), (e)(3); *accord Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102-03 (9th Cir. 2009).

Two separate provisions of Section 230 are relevant here. *First*, Section 230(c)(1) bars lawsuits "seeking to hold a service provider liable for its exercise of a publisher's traditional

1   editorial functions—such as deciding whether to publish, withdraw, postpone or alter content."

2   *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997); *accord Batzel v. Smith*, 333 F.3d

3   1018, 1031 n.18 (9th Cir. 2003). As the Ninth Circuit has explained, "any activity that can be

4   boiled down to deciding whether to exclude material that third parties seek to post online is

5   perforce immune under section 230." *Barnes,* 570 F.3d at 1102 (quoting *Fair Hous. Council v.*

6   *Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008). This Court thus has squarely held

7   that Section 230(c)(1) protects against exactly the kinds of claims at issue here: attacks on a

8   service provider's "decision to block access to—or, in other words, to refuse to publish"—user

9   content, including user-uploaded videos, and advertisements.[9] *Sikhs for Justice "SFJ", Inc. v.*

10  *Facebook, Inc.*, 144 F. Supp. 3d 1088, 1094-95 (N.D. Cal. 2015), *aff'd*, 697 F. App'x 526 (9th Cir.

11  2017); *see also, e.g., FAN*, 432 F. Supp. 3d at 1119-20; *Fyk v. Facebook, Inc.*, 808 F. App'x 597,

12  597-98 (9th Cir. 2020).[10]

13      *Second*, Plaintiffs' claims predicated on the exclusion of their videos from Restricted Mode

14  fail independently under the separate immunity provided by Section 230(c)(2)(B). This provision

15  immunizes a provider of an "interactive computer service" as to "any action taken to enable or

16  make available" to a user "the technical means to restrict access" to "material that the provider or

17  user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise

18  _____

19      [9] The SAC rattles off a list of other alleged misconduct of mostly unspecified significance
    that exemplifies YouTube's role as a publisher of user-submitted content. *See supra* n.4. Like the
20  decisions regarding Restricted Mode, monetization, and removal of content, each of these
    alleged actions represents a decision by YouTube regarding whether and how to display content
21  produced by others—what kinds of content to pair with ads, how to organize and present content
    to viewers, and whether and how to enable viewers to interact with content. These are decisions a
22  publisher makes, and as such they are equally protected by Section 230(c)(1). *See Gonzalez v.*
    *Google, Inc.*, 282 F. Supp. 3d 1150, 1168 (N.D. Cal. 2017), *appeal docketed*, No. 18-16700 (9th
23  Cir. Sept. 10, 2018) (Section 230(c)(1) bars claims based on pairing content with ads); *Levitt v.*
    *Yelp! Inc.*, 2011 U.S. Dist. LEXIS 124082, at *20 (N.D. Cal. Oct. 26, 2011) (Section 230(c)(1)
24  bars claims based on changing the order in which Yelp reviews appear), *aff'd*, 765 F.3d 1123
25  (9th Cir. 2014).

26      [10] *See also Lewis*, 2020 U.S. Dist. LEXIS 150603, at *20-25 (demonetizing, restricting, and
    removing user's videos); *Domen.*, 433 F. Supp. 3d at 602-03 (removal of videos and termination
27  of accounts); *King v. Facebook, Inc.*, 2019 U.S. Dist. LEXIS 151582, at *8-10 (N.D. Cal. Sept.
    5, 2019), *appeal docketed*, No. 20-15188 (9th Cir. Feb. 11, 2020) ("removing [plaintiff's] posts,
28  blocking his content, or suspending his accounts").

objectionable." 47 U.S.C. § 230(c)(2)(A)-(B). The immunity "covers actions taken to enable or *make available to others* the technical means to restrict access to objectionable material." *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1173-75 (9th Cir. 2009). It applies regardless of whether the service provider or the user decides what kinds of objectionable material to filter out. *Id.* at 1176.

Restricted Mode is precisely the kind of tool covered by this immunity: it gives YouTube users the "technical means" to "restrict access" to content that they or YouTube deem "objectionable" for especially sensitive users (including material that may be too sexually explicit or violent). *See Prager II*, 2019 Cal. Super. LEXIS 2034, at *25-26 (holding that Section 230(c)(2)(B) bars claims seeking to hold YouTube liable for its decisions about how to apply Restricted Mode). Indeed, Restricted Mode is a paradigm example of technology designed to "maximize user control" and to "empower parents to restrict their children's access to objectionable or inappropriate online material"—exactly what Congress intended Section 230(c)(2)(B) to encourage and protect. 47 U.S.C. § 230(b)(3)-(4).[11]

### B.  Section 230 Is Not Unconstitutional

Perhaps recognizing that a straightforward application of Section 230 bars their claims, Plaintiffs' SAC advances the argument that Section 230 is unconstitutional—a violation of Plaintiffs' rights under the First Amendment and the Fourteenth Amendment's Equal Protection Clause. ¶¶ 109-111, 387, 395-397. This argument is contrary to two decades of case law, which has consistently applied Section 230 immunity to protect online services like YouTube—and courts have roundly rejected similar constitutional objections in the few cases where they have

---

[11] Plaintiffs may point to the ruling in *Enigma Software Group USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040 (9th Cir. 2019), that content-restriction decisions driven by "anticompetitive animus" are not protected by Section 230(c)(2)(B). *Id.* at 1050-51. But *Enigma*'s narrow holding does not apply to this case. The key point in *Enigma* (emphasized throughout the Ninth Circuit's opinion) was that the plaintiff and defendant were "direct competitors"—business rivals that sold competing computer security software. *Id.* at 1047-48, 1050. Here, in contrast, Plaintiffs and Defendants are not direct competitors. Plaintiffs are suing in their capacity as *users* of YouTube's services—not *competitors* with it. And Plaintiffs cannot evade the clear command of Section 230(c)(2)(B) to protect tools like Restricted Mode by tossing in token and facially implausible assertions of anticompetitive motive.

been raised. *See Green v. AOL*, 318 F.3d 465, 472 (3d Cir. 2003) (Section 230 does not violate the First Amendment); *Prager II*, 2019 Cal. Super. LEXIS 2034, at \*30 (same); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 994-95 (S.D. Tex. 2017) (same); *Parker v. PayPal, Inc.*, 2017 U.S. Dist. LEXIS 130800, at \*16-17 (E.D. Pa. Aug. 16, 2017) (Section 230 does not violate due process or the Tenth Amendment).

For good reason. "The Constitution does not disable private property owners and private lessees from exercising editorial discretion over speech and speakers on their property," *Halleck*, 139 S. Ct. at 1931, and Section 230 does not change that reality. For Plaintiffs' theory to work, the Court would first have to conclude that Section 230 somehow transforms YouTube's private content moderation decisions into state action capable of interfering with Plaintiffs' constitutional rights. But as discussed above, Section 230 does not require, coerce, or pressure online service providers to censor content. Instead, it allows providers "to establish standards of decency without risking liability for doing so." *Green*, 318 F.3d at 472. Indeed, the whole purpose of Section 230 was to *avoid* the kind of government censorship that raised constitutional concerns. *See* Jeff Kosseff, *The Twenty-Six Words That Created the Internet* 63 (2019); *accord Batzel*, 333 F.3d at 1028 (explaining that Section 230 "sought to further First Amendment and e-commerce interests on the Internet while also promoting the protection of minors"). Rather than ban certain kinds of content from the Internet (or require service providers to block minors or others from accessing it), Section 230 leaves content-moderation decisions to the voluntary choices of private service providers, protecting those platforms (and their users) from liability *both* for content that they decide to moderate or remove, *SFJ*, 144 F. Supp. 3d at 1095, *and* for content that they decide to keep up or disseminate, *Barnes*, 570 F.3d at 1102-03; *Kimzey*, 836 F.3d at 1266-67. Far from violating the Constitution, therefore, Section 230 actually reinforces the First Amendment rights of platforms and publishers to exercise editorial judgments about how to regulate content on their services. *Accord La'Tiejira*, 272 F. Supp. 3d at 991 (First Amendment protects online platform's "right to decide what to publish and what not to publish on its platform").

Plaintiffs' reliance (*see* ¶¶ 16, 17.i, 110, 378, 387, 397) on the Supreme Court's splintered decision in *Denver Area Educational Telecommunications Consortium, Inc. v. FCC*, 518 U.S. 727

1  (1996), is misplaced. In the plurality opinion in that case, the Supreme Court found

2  unconstitutional a provision of a telecommunications statute that "*permit[ted]* a cable operator to

3  prevent transmission of 'patently offensive' programming … on public access channels." *Id.* at

4  760-66. But as the Ninth Circuit has recognized, this plurality is "not binding" and should be read

5  "very narrowly." *Roberts*, 877 F.3d at 840. This limited reach reflects that case's "unique context,

6  where cable operators were empowered by statute to censor speech on public television," *id.* at

7  841, where they "ha[d] not historically exercised editorial control," *Denver Area*, 518 U.S. at 760-

8  61. Unlike the provision at issue in *Denver Area*, Section 230(c)(1) does not make content-based

9  distinctions; nor did the statute create new editorial rights that did not exist before: online service

10  providers have always had discretion to make editorial decisions about the speech that appears on

11  their platforms. *Denver Area* has no application here.

12    In short, Plaintiffs' constitutional attack on Section 230 is frivolous: that established

13  protection applies here and bars Plaintiffs' claims.

14           **<u>CONCLUSION</u>**

15    For these reasons, Plaintiffs' SAC should be dismissed.

17          Respectfully submitted,

18  Dated:  November 2, 2020    WILSON SONSINI GOODRICH & ROSATI
            Professional Corporation

20          By:  */s/ Lauren Gallo White*
           Lauren Gallo White

22          Attorneys for Defendants
           GOOGLE LLC and YOUTUBE, LLC