BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
Peter Obstler (State Bar No. 171623)
  pobstler@bgrfirm.com
Eric M. George (State Bar No. 166403)
  egeorge@bgrfirm.com
Dennis S. Ellis (State Bar No. 178196)
  dellis@bgrfirm.com
Debi A. Ramos (State Bar No. 135373)
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Telephone: (310) 274-7100
Facsimile: (310) 275-5697

Attorneys for Kimberly Carleste Newman, Lisa
Cabrera, Catherine Jones, Denotra Nicole Lewis,
Andrew Hepkins, Harvey Stubbs, Khalif
Muhammad, Keu Reyes and Osiris Ley

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| Kimberly Carleste Newman, Lisa Cabrera, Catherine Jones, Denotra Nicole Lewis, Andrew Hepkins, Harvey Stubbs, Khalif Muhammad, Keu Reyes and Osiris Ley <br><br> Plaintiffs, <br><br> vs. <br><br> Google LLC, YouTube LLC, Alphabet Inc. and Does 1 through 100, inclusive, <br><br> Defendants. | Case No. 5:20-cv-04011-LHK <br><br> **PLAINTIFFS' FURTHER REVISED AND CORRECTED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT** <br><br> Judge:  Hon. Judge Lucy H. Koh <br> Date:  March 11, 2021 <br> Time:  1:30 p.m. <br> Crtrm.:  8 <br><br> Trial Date:  None Set |

1735083.1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION...................................................................................................... 1

II.     PROCEDURAL BACKGROUND ........................................................................... 3

III.    ARGUMENT: PLAINTIFFS HAVE STATED CLAIMS FOR RELIEF ........................... 4

        A.      Plaintiffs Have Complied With Rule 8 ........................................................ 4

        B.      Plaintiffs State A Claim For Breach Of Contract........................................ 5

                1.      The SAC Alleges Eleven Categories Of Contract Breaches ........................ 5

                2.      The Contract Does Not Authorize Unfettered Discretion To Filter
                        And Block Content And Access .................................................. 6

                3.      Plaintiffs State Claims For Equitable Relief........................................ 8

        C.      Plaintiffs State A Claim For Race Discrimination In Contract Under §1981 ........... 9

        D.      Plaintiffs State A Claim For Discrimination Under The Unruh Civil Rights
                Act........................................................................................................ 13

        E.      Plaintiffs State A Claim For False Advertising Under The Lanham Act ............... 14

                1.      Defendants Falsely Imply Plaintiffs' Videos Contain Obscene Or
                        Inappropriate Content........................................................... 15

                2.      Plaintiffs' False Advertising Claim Is Not "Identical" To The Claim
                        in *Prager* ........................................................................ 17

        F.      Plaintiffs State A Claim Under Section 17200 For Unfair Competition ............... 18

        G.      Defendants Are Not Entitled To Immunity Under Section 230(c)....................... 19

                1.      Defendants Are Not Immune For Discriminatory Filtering and
                        Blocking By Interchanging Sections 230(c)(1) And (c)(2)(B).................. 20

                2.      Defendants Are Not Immune For Breach of Contract,
                        Discrimination, And Anticompetitive Conduct Under Section
                        230(c)(1) .......................................................................... 21

                3.      Defendants Are Not Immune For Racial Profiling, Blocking, And
                        Filtering Under Section 230(c)(2) ............................................ 23

                4.      Applying Section 230(c) To Immunize Race Based Discrimination
                        Is Unconstitutional .............................................................. 24

        H.      Plaintiffs State A Claim For Liberty Of Speech.................................... 25

1735083.1

-i-                                              Case No. 5:20-cv-04011-LHK

PLAINTIFFS' FURTHER REVISED AND CORRECTED OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

1

## <u>TABLE OF CONTENTS</u>
(Continued)

2

<u>Page</u>

3

      I.      Plaintiffs Allege That Defendants Are State Actors Under The First
Amendment Under Halleck and *Prager III* ........................................................... 28

4

IV.      REQUEST FOR LEAVE TO AMEND ............................................................. 30

5

V.      CONCLUSION ............................................................................................. 30

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' FURTHER REVISED AND CORRECTED OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*In re Adobe Sys., Inc. Privacy Litig.*,
  66 F. Supp. 3d 1197 (N.D. Cal. 2014) (Koh, J.) .................................................................. 19

*Albertson's, Inc. v. Young*,
  107 Cal. App. 4th 106 (2003) ....................................................................................... 26, 27

*Allred v. Harris*,
  14 Cal. App. 4th 13861 (1993) ........................................................................................... 27

*Allred v. Shawley*,
  232 Cal. App. 3d 1489 (1991) ..................................................................................... 26, 27

*Almeida v. Amazon, Inc.*,
  456 F.3d 1316 (11th Cir. 2006) ......................................................................................... 20

*Anthony v. Yahoo Inc.*,
  421 F. Supp. 2d 1257 (N.D. Cal. 2006) (Whyte, J.) .......................................................... 23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................................... 4, 10

*Atl. Richfield Co. v. Christian*,
  140 S. Ct. 1335 (2020) ...................................................................................................... 19

*Bank of Stockton v. Church of Soldiers*,
  44 Cal. App. 4th 1623 (1996) ........................................................................................... 27

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ........................................................................................... 21

*Barrett v. Rosenthal*,
  40 Cal.4th 33 (2006) ........................................................................................................ 27

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................................... 4, 10

*Boschma v. Home Loan Ctr., Inc.*,
  198 Cal. App. 4th 230 (2011) ........................................................................................... 18

*Briggs v. Eden Council for Hope & Opportunity*,
  19 Cal.4th 1106 (1999) ..................................................................................................... 28

*Cleary v. News Corp.*,
  30 F.3d 1255 (9th Cir. 1994) ............................................................................................ 18

1

**TABLE OF AUTHORITIES**
(Continued)

2

**Page**

3

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.,*
173 F.3d 725 (9th Cir. 1999) ................................................................. 2, 12

4

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media,*
140 S. Ct. 1009 (2020) ........................................................9, 10, 11, 13

5

6

*Cutting Fruit Packing Co. v. Canty*
(1904) 141 C. 692, 695.......................................................................... 5

7

8

*Darnaa LLC v. Google, Inc.,*
2016 WL 6540452 (N.D. Cal. Nov. 2, 2016) ..................................... 23

9

*Demetriades v. Yelp, Inc.,*
228 Cal. App. 4th 294 (2014) ............................................................ 23

10

11

*Denver Area Educ. Telecommunications Consortium, Inc. v. F.C.C.,*
518 U.S. 727 (1996).................................................................2, 19, 24, 25

12

13

*Divino Grp. LLC v. Google LLC,*
No. 19-CV-04749-VKD, 2021 WL 51715 (N.D. Cal. Jan. 6, 2021) ...................... 4

14

*Doe v. GTE Corp.,*
347 F.3d 655 (7th Cir. 2003) ............................................................ 20

15

16

*Domen v. Vimeo, Inc.,*
433 F. Supp. 3d 592 (S.D.N.Y. Jan. 14, 2020), *appeal docketed*, No. 20-616 (2d Cir. Feb. 18, 2020) ........................................................................ 27

17

18

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.,*
946 F.3d 1040 (9th Cir. 2019) ................................................ 21, 22, 23

19

20

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,*
521 F.3d 1157 (9th Cir. 2008) ........................................................ 20, 23

21

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,*
314 F.3d 48 (2d Cir. 2002) ............................................................ 16

22

23

*Fashion Valley Mall, LLC v. Nat'l Labor Relations Bd.,*
42 Cal. 4th 850 (2007)................................................................. 25, 26

24

*Golden Gateway Ctr. v. Golden Gateway Tenants Assn.,*
26 Cal. 4th 1013 (2001).................................................................... 26

25

26

*Goodman v. Lukens Steel Co.,*
482 U.S. 656 (1987) ....................................................................... 8

27

28

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*Green Valley Landowners Assn. v. City of Vallejo*,
241 Cal. App. 4th 425 (2015) ..................................................................................... 8

*Grubbs v. Sheakley Group, Inc.*,
807 F.3d 785 (2015) ..................................................................................... 2, 16, 18

*Gunn v Minton*,
568 U.S. 251 (2013) ................................................................................................. 19

*Hall v. Pennsylvania State Police*
570 F.2d 86 (3rd Cir. 1978) ....................................................................................... 8

*Hankins v. El Torito Restaurants, Inc.*,
63 Cal. App. 4th 510 (1998) .................................................................................... 14

*Harris v. Capital Growth Inv'rs XIV*,
52 Cal. 3d 1142 (1991) ........................................................................................... 14

*hiQ Labs, Inc. v. LinkedIn Corp.*,
273 F. Supp. 3d 1099 (N.D. Cal. 2017) (Chen, J.), *aff'd*, 938 F.3d 985 (9th Cir.
2019) ........................................................................................................................ 27

*Holomaxx Techs. v. Microsoft Corp.*,
783 F.Supp.2d 1097 (N.D. Cal. Mar. 11, 2011) ............................................... 22, 23

*Hy Cite Corp. v. badbusinessbureau.com, L.L.C.*,
418 F. Supp. 2d 1142 (D. Ariz. 2005) ..................................................................... 24

*Inc. v. Google, Inc.*,
108 F. Supp. 3d 876 (N.D. Cal. 2015) ..................................................................... 20

*Indep. Training & Apprenticeship Program v. California Dep't of Indus. Relations
ex rel. Baker*,
No. 2:11-CV-01047-GEB, 2011 WL 3584719 (E.D. Cal. Aug. 15, 2011), aff'd
sub nom. 730 F.3d 1024 (9th Cir. 2013) ................................................................. 20

*Johnson v. Arden*,
614 F.3d 785 (8th Cir. 2010) ................................................................................... 20

*Keum v. Virgin Am. Inc.*,
781 F. Supp. 2d 944 (N.D. Cal. 2011) ....................................................................... 9

*Levitt v. Yelp! Inc.*,
No. C-10-1321 EMC, 2011 WL 5079526 (N.D. Cal. Oct. 26, 2011).................... 23

# TABLE OF AUTHORITIES
### (Continued)

**Page**

*Madsen v. Women's Health Ctr., Inc.,*
    512 U.S. 753 (1994) ................................................................................................. 25

*Manhattan Cmty. Access Corp. v. Halleck,*
    139 S. Ct. 1921 (2019) ................................................................................3, 26, 28, 29

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
    519 F.3d 1025 (9th Cir. 2008) ................................................................................... 1

*Marsh v. State of Ala.,*
    326 U.S. 501 (1946) ........................................................................................... 28, 29

*Mazur v. eBay Inc.,*
    No. C 07-3967 MHP, 2008 WL 618988 (N.D. Cal. Mar. 4, 2008) (Patel, J.) ....................... 23

*Morgan v. AT&T Wireless Servs., Inc.,*
    177 Cal. App. 4th 1235 (2009) ........................................................................... 18, 19

*Newcal Indus., Inc. v. Ikon Office Sol.,*
    513 F.3d 1038 (9th Cir. 2008) ....................................................................... 15, 16, 18

*Opperman v. Path, Inc.,*
    87 F. Supp. 3d 1018 (Tigar, J.) ............................................................................... 23

*Pirozzi v. Apple Inc.,*
    913 F.Supp.2d 840 (N.D. Cal. 2012) (Gonzalez Rogers J.) ................................................ 23

*Prager Univ. v. Google LLC,*
    2019 Cal. Super. LEXIS 2034 (Cal. Super. Ct. Nov. 19, 2019) ............................................. 4

*Prager Univ. v. Google LLC,*
    951 F.3d 991 (9th Cir. 2020) .......................................................................... *passim*

*Prager Univ. v. Google LLC,*
    No. 17-CV-06064-LHK, 2018 WL 1471939 (N.D. Cal. Mar. 26, 2018) ..............3, 16, 17, 21

*Prakashpalan v. Engstrom, Lipscomb & Lack,*
    223 Cal. App. 4th 1105 (2014) ................................................................................... 8

*Ralphs Grocery Co. v. Victory Consultants, Inc.,*
    17 Cal. App. 5th 245 (Cal. Ct. App. Oct. 24, 2017) ........................................................ 28

*Ramadan v. Keisler,*
    504 F.3d 973 (9th Cir. 2007) (O'Scannlain, J., dissenting) ................................................. 20

1735083.1

-vi-

Case No. 5:20-cv-04011-LHK

PLAINTIFFS' FURTHER REVISED AND CORRECTED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

1

2

**TABLE OF AUTHORITIES**
**(Continued)**

**Page**

3       *Robins v. Pruneyard Shopping Center*,
4           23 Cal.3d 899 (1979).................................................................................. 26, 27, 28

5       *Sandford v. R.L. Coleman Realty Co., Inc.*,
            573 F.2d 173 (4th Cir. 1978) ................................................................................. 12

6       *Sherman v. Yahoo! Inc.*,
7           997 F. Supp.2d 1129 (S.D. Cal. 2014) ...........................................20, 21, 22, 23

8       *Signature Transportation Grp., LLC v. Jacobs*,
            No. 18 C 6896, 2020 WL 1663124 (N.D. Ill. Apr. 3, 2020) ...................... 2, 16, 18
9

10      *Skinner v. Ry. Labor Executives' Ass'n*,
            489 U.S. 602 (1989) ........................................................................................ 3, 29

11      *Snatchko v. Westfield, LLC*,
12          187 Cal. App. 4th 469 (2010) ............................................................................. 28

13      *Spy Phone Labs LLC v. Google, Inc.*,
            2016 WL 6025469 (N.D. Cal. Oct. 14, 2016) ..................................................... 24
14

15      *Trader Joe's Co. v. Progressive Campaigns, Inc.*,
            73 Cal. App. 4th 425 (1997) ............................................................................... 27

16      *Turner Broad. Sys., Inc. v. F.C.C.*,
17          512 U.S. 622 (1994) ........................................................................................... 25

18      *United Indus. Corp. v. Clorox Co.*,
            140 F.3d 1175 (8th Cir. 1998) ............................................................................ 15
19

20      *United States v. Wenner*,
            351 F.3d 969 (9th Cir. 2003) .............................................................................. 20

21      *Ward v. Rock Against Racism*,
22          491 U.S. 781 (1989) ........................................................................................... 25

23      *Weinberg v. Feisel*,
            110 Cal. App. 4th at 1131, n.4 (2003)................................................................. 28
24

25      *William H. Morris Co. v. Grp. W, Inc.*,
            66 F.3d 255 (9th Cir. 1995) ................................................................................ 15

26      *Worldwide, LLC v. Google, Inc.*,
27          188 F. Supp. 3d 1265 (M.D. Fla. 2016) ............................................................. 20

28

PLAINTIFFS' FURTHER REVISED AND CORRECTED OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

**TABLE OF AUTHORITIES**
(Continued)

Page

*Zango, Inc. v. Kaspersky Lab, Inc.*,
568 F.3d 1169 (9th Cir. 2009) (Fisher, J., concurring) ........................................ 20

**Statutes**

28 U.S.C. §1331 ...................................................................................................... 19

28 U.S.C. §1332(d) ............................................................................................. 4, 30

42 U.S.C. §1981 ............................................................................................... *passim*

47 U.S.C. §230 ........................................................................................... 2, 25, 29

47 U.S.C. § 230(b)(3)–(4) ................................................................................. 24, 25

47 U.S.C. §230(e) ................................................................................................... 21

47 U.S.C. §230(f)(3) ............................................................................................... 22

Section 10c of the Cable Act .................................................................................. 24

Cal. Bus. & Prof. Code § 17200 ............................................................................. 18

Cal. Civ. Code § 51 *et seq.* ..................................................................................... 13

Cal. Code of Civ. Pro. §425.16 ......................................................................... 27, 28

California's Unfair Competition Laws ....................................................................... 2

Lanham Act ......................................................................................... 14, 16, 17, 18

Unruh Act ................................................................................................................ 13

**Other Authorities**

73 Ops. Cal. Atty. Gen. 213 (1990) .................................................................. 26, 27

California Constitution ......................................................................................... 2, 28

Article 1, Section 2 of the California Constitution .................................................... 2

California Rules of Court, Rule 8.1115 ..................................................................... 4

Local Rules, Rule 3-4(3) ........................................................................................... 4

Metz & Wakabayahi, *Google Researcher Says She Was Fired Over Paper
Highlighting Bias in A.I.*, The New York Times (Dec. 3, 2020) ............................ 1

# TABLE OF AUTHORITIES
### (Continued)

**Page**

Federal Rules of Civil Procedure, Rule 8 ..........................................................................4

Rule 8(a) ............................................................................................................................4

Rule 8(a)(2) .......................................................................................................................4

Rule 12(b)(6) ...............................................................................................................*passim*

First Amendment to the United States Constitution ....................................................*passim*

1735083.1

-ix-

Case No. 5:20-cv-04011-LHK

PLAINTIFFS' FURTHER REVISED AND CORRECTED OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiffs Kimberly Carleste Newman, Lisa Cabrera, Catherine Jones, Denotra Nicole Lewis, Andrew Hepkins, Harvey Stubbs, Khalif Muhammad, Keu Reyes and Osiris Ley (collectively the "Plaintiffs") respectfully submit their Opposition to Defendants' Motion to Dismiss the Second Amended Class Action Complaint (the "MTD").

## I.   **INTRODUCTION**

This case turns on a factual claim: Defendants profile and use Plaintiffs' race to filter and block Plaintiffs' content and access to the global video social media platform, YouTube.  Second Amended Complaint ("SAC") ¶¶34-36, 48-55, 470-474.  The SAC alleges in detail how Defendants' race based discrimination is a "but for" cause of the harms suffered by Plaintiffs and the other members of the class protected by federal and state anti-discrimination laws.  *Id.*  And those allegations are based on Defendants' admissions that they are and have been engaged knowingly in racial and other identity or discriminatory based filtering and blocking of "third party" content since at least 2017.  *Id.*  Thus, whatever legal limitations may or may not exist for remedying Defendants' intentional, knowing, and systematic use of Plaintiffs' race to filter and block content and access on YouTube under Rule 12(b)(6), Defendants may not deny, and the Court must accept as true, that Defendants are profiling and using Plaintiffs' racial identities to restrict Plaintiffs' content and access to YouTube.  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

If Defendants want to argue that they don't use or consider Plaintiffs' race or other identity traits to filter or block content on YouTube, they may do so, but only after the parties have had a full and fair opportunity to conduct discovery on that purely factual claim.  *See* MTD 7:2-4; 9:16-11:16.[1]  At this juncture, however, the Court may only consider Defendants' legal arguments as to

---

[1] This includes: (i) having experts examine  Defendants' filtering and blocking tools; (ii) deposing Defendants and those who admitted that Defendants are engaged in race and identity based filtering and blocking, including those who attended the September 2017 meeting with Stephanie Frosch, the supervising content curator in Bangalore, India, who admitted that Defendants have a policy of designating gay creators' content as "shocking" because of the "gay thing," and Timnit Gebru, former co-leader of Google's Ethical A.I. team, fired by Defendants as "an angry black woman" because she wrote about racial bias embedded in Defendants' A.I. and filtering tools.  *See* Metz & Wakabayahi, *Google Researcher Says She Was Fired Over Paper Highlighting Bias in A.I.*, The New York Times (Dec. 3, 2020), https://nyti.ms/2I8oves.

whether Plaintiffs have cognizable legal and/or equitable remedies for Defendants' knowing use of racial or other personal or commercial identity based discriminatory content filtering and blocking on YouTube.

*First*, Defendants' knowing use of Plaintiffs' race or other personal identity traits to filter and block Plaintiffs' content and access violates 42 U.S.C. §1981, the Unruh Act, Defendants' own terms of service, California's Unfair Competition Laws and/or results in conversion and other harms to Plaintiffs' intellectual and other property based rights.  *Second*, Defendants' use of Plaintiffs' racial and other identity traits to deceive viewers that Plaintiffs' content has been "RESTRICTED" or blocked because it contains "nudity, vulgarity, violence, hate, shocking or sexually explicit material" in violation of YouTube's viewpoint neutral content based rules is a false statement that Defendants tell viewers and advertisers that they and Plaintiffs compete for on YouTube.  The false statement has a tendency to deceive or confuse those viewers and advertisers in a manner that harms Plaintiffs' ability to compete for viewer reach, advertising, and other monetization opportunities on YouTube under *Grubbs v. Sheakley Group, Inc.*, 807 F.3d 785, 800–801 (2015) and *Signature Transportation Grp., LLC v. Jacobs*, No. 18 C 6896, 2020 WL 1663124, at *3 (N.D. Ill. Apr. 3, 2020).  *Third*, Defendants' use of race or any other identity or viewpoint of Plaintiffs to block and filter content violates Article 1, Section 2 of the California Constitution because Defendants characterize, invite the public to use, and operate YouTube as a forum for free speech, subject only to viewpoint neutral content based rules.  *Fourth*, Defendants' invocation and request that this Court enforce 47 U.S.C. §230, a federal permissive speech law, to bar antidiscrimination, legal and equitable contractual claims, UCL and false advertising, and free speech claims under the California Constitution that are based on party admissions of knowing, intentional, and systemic race and other discrimination on YouTube violates the express language and purpose of §230 and/or renders the application of that federal law to this case as unconstitutional under *Denver Area Educ. Telecommunications Consortium, Inc. v. F.C.C.*, 518 U.S. 727, 737, 766–67 (1996) ("*Denver Area*").[2]

---

[2] Plaintiffs also seek to preserve for appeal that Defendants' race based filtering and blocking

## II.     PROCEDURAL BACKGROUND

Defendants rely on three recent decisions in asking the Court to rule that race discrimination by an ISP is not actionable under the law.  First, Defendants argue that the decisions in *Prager Univ. v. Google LLC*, No. 17-CV-06064-LHK, 2018 WL 1471939 (N.D. Cal. Mar. 26, 2018) ("*Prager I*") and *Prager Univ. v. Google LLC*, 951 F.3d 991 (9th Cir. 2020) ("*Prager III*") are "identical" discrimination claims.  *See*, *e.g.*, MTD 1:16-28.  But there were no allegations that intentional and systematic race and identity discrimination were embedded in Defendants' filtering and blocking tools because the admissions of that conduct only came to light after this Court had issued a final, appealable order, and only after March 26, 2020, when Defendants released Stephanie Frosch from a Nondisclosure Agreement.  Declaration of Debi Ramos ("Ramos Dec.") Ex.E. Consequently, this Court and the Ninth Circuit found only that (i) Defendants' use of their "discretion" to restrict some of Prager's videos did not state a claim for state action under "an opt in" theory under the First Amendment, and (ii) Defendants' policies and statements about restricted mode were true and thus not false advertising under the Lanham Act. *Prager III*, 951 F.3d at 999.  *Prager I* and *III* did not involve party admissions that Defendants were and are engaged in intentional racial and sex based identity profiling.  And the Ninth Circuit made very clear at oral argument that it found Defendants' alleged conduct "deeply disturbing" and had concerns about "the ubiquity of YouTube, and the dominance in terms of a video platform, and the fact that it's operating with no borders."  Transcript of Oral Argument at 12, 27, *Prager III* (No. 18-15712).  The Ninth Circuit voiced concerns about Defendants having "almost the equivalent of a state power when it decides who can and cannot be hosted on [their] platform," and there being no available remedy to the plaintiffs.  *Id.* at 27 (posing the question, "So what is their remedy?").

---

affects the rights of users to services and obligations traditionally reserved for the government, including elections, law enforcement, and health services, and Defendants assert that the federal government has endorsed that unconstitutional discriminatory conduct under §230(c), so as to plead that Google/YouTube are state actors in compliance with the pleading standards set forth under *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921 (2019) ("*Halleck*"); *Prager Univ. v. Google LLC*, 951 F.3d 991 (9th Cir. 2020); *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602 (1989).

Second, in *Divino Grp. LLC v. Google LLC*, No. 19-CV-04749-VKD, 2021 WL 51715 (N.D. Cal. Jan. 6, 2021) Magistrate Judge DeMarchi applied the ruling in *Prager III* to dismiss the federal state action claim with prejudice.  As to all other claims, Plaintiffs were granted leave to amend and to allege facts sufficient to establish the exercise of supplemental jurisdiction and/or to amend the jurisdictional allegations under 28 U.S.C. §1332(d).  Subject to the filing of those amendments, the Court declined to make any ruling on the scope or constitutionality of §230(c) or the merits of Plaintiffs' state law claims.  In short, other than the federal state action claim, *Divino* left it to this Court to decide all of the other issues.

## III.    ARGUMENT: PLAINTIFFS HAVE STATED CLAIMS FOR RELIEF

### A.    Plaintiffs Have Complied With Rule 8

Defendants' contention that Plaintiffs violate Rule 8 because the "SAC contains very few cognizable facts, much less facts sufficient to describe with any plausibility Plaintiffs' core allegation that YouTube is discriminating against Plaintiffs or anyone else on the basis of race" does not implicate Rule 8.  MTD 7:12-15.[3]  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  The Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs' allegations could not be clearer: Defendants breached their contractual and legal obligations not to discriminate against their users based on race.  Plaintiffs are Black and Hispanic content creators who contracted with Defendants for YouTube access and services under viewpoint neutral content based rules that apply equally to all.  *See* SAC ¶¶13, 16, 35, 41, 57-58,

---

[3]  Plaintiff will file a Motion to Strike all of Defendants' Exhibits, factual assertions based thereon, and their reliance on *Prager Univ. v. Google LLC*, 2019 Cal. Super. LEXIS 2034 (Cal. Super. Ct. Nov. 19, 2019) ("*Prager II*") in violation of California Rules of Court, Rule 8.1115, and Civil Local Rules, Rule 3-4(3).  Plaintiffs are meeting and conferring with Defendants on January 18, 2020 and will obtain a hearing date from the Court thereafter in conformity with the applicable Rules of Court.

69, 79-81, 92.  The contract governs the commercial relationship between the parties, including granting YouTube limited license rights to use, copy, and share Plaintiffs' videos, the right to place advertisements, and the right to collect, use, and sell the online data generated by Plaintiffs, subscribers, and viewers in exchange for viewpoint neutral content curation and equal access to services.  SAC ¶¶ 91,105.

### B.  Plaintiffs State A Claim For Breach Of Contract

YouTube's Terms of Service ("TOS") and Community Guidelines ("CG") obligate Defendants to filter and block content "equally to all" without regard to the user's identity under neutral content based rules.  SAC ¶¶35, 41, 57, 80-81, 91, 93, 122; *see also* SAC ¶¶92-93. Plaintiffs adequately plead a cause of action for breach of contract under California law, the elements of which are: "(1) existence of a valid contract between Plaintiffs and Defendants; (2) Plaintiffs' performance (or excuse for non-performance) under the contract; (3) Defendants' breach of the contract; and (4) proof of harm or financial injury as a result of the breach."  SAC ¶442; *see Cutting Fruit Packing Co. v. Canty* (1904) 141 C. 692, 695.

### 1.  The SAC Alleges Eleven Categories Of Contract Breaches

Plaintiffs have alleged that Defendants breach their contractual and other promises to treat Plaintiffs equally and without reference to their race in at least eleven ways:  Using software and algorithms to "to digitally profile, redline, and target Plaintiffs" and to impose "access restrictions, blocking, demonetization, suspensions and removals from the platform based on the racial identity or viewpoint of the video creator, her subscribers, and/or the viewers."  SAC ¶¶65.a, 183, 188-189, 215-218, 228, 244, 253-256, 285-289, 302-303, 305, 332-330.  Using software and algorithms to demonetize or limit monetization of videos based on race.[4]  SAC ¶¶65.b, 207, 230-231, 258, 299-301, 332, 340-342.  Misapplying Restricted Mode based on metadata that relates to subjects of interest to Black and Hispanic communities.  SAC ¶¶65.c, 183, 215-218, 254-256, 285-

---

[4] The TOS authorize the use of "automated systems that analyze your Content **to help detect [intellectual property] infringement and abuse**."  Ex.1 p.4/6 (emphasis added).  They do not authorize "automated systems" such as software and algorithms to make decisions regarding video curation, filtering or monetization.  *See* Ex.1, 3, 8 p.1/3.

289, 305, 322-327, 338-339, *see also* SAC ¶¶340-342.  Shadow banning channels and/or individual videos.  SAC ¶¶65.d, 184, 196, 223, 259, 269, 285, 292, 328.  "Deputizing other YouTube users to flag channels and videos for YouTube to restrict, block, and/or censor."  SAC ¶¶65.e, 186, 229, 232-235, 263-264.  "Interfering with livestream broadcasts and viewer video," "disrupting audio and/or pixelating, blacking out, or rendering blurry visual displays," "deleting positive viewer comments," and "promoting, sponsoring, allowing and/or inserting offensive, misogynistic, racist, or obscene comments or engagement."  SAC ¶¶65.f, 193, 212-213, 266, 306-309.  Ad Bombing videos "by interrupting new videos as viewers watch them with multiple and repeated streaming and banner ads played at intervals of every 2, 3, or 4 minutes."  SAC ¶¶65.g, 207, 310.  Excluding Black and Hispanic creators from 'Trending' and 'Up Next' YouTube video recommendations.  SAC ¶¶65.h, 209-210, 267-268, 290-291, 300, 310-311.  "'Up Next' flooding with hostile, irrelevant or extraneous YouTube video recommendations."  SAC ¶¶65.i, 174-174, 209-211, 268, 290-291, 311.  "Promoting and Profiting from hate speech."  SAC ¶¶65.j, 185, 195, 236-240.  "Preventing effective appeals."  SAC ¶¶65.k, 245, 265, 282, 304, 320.

### 2.    The Contract Does Not Authorize Unfettered Discretion To Filter And Block Content And Access

Defendants' Rule 12(b)(6) defense to all of those breaches is that Defendants are contractually authorized to use their discretion and do precisely what Plaintiffs accuse them of: use Plaintiffs' race, identity or viewpoints to filter and block their content and access to YouTube under neutral content based rules.  The express language of the TOS and CG disproves Defendants' assertion.

The express and implied contractual promises that Defendants will use their discretion to apply viewpoint neutral content based blocking and filtering equally to all is, therefore, not unlimited.  Defendants' exercise of discretion to filter, restrict, remove, suspend and terminate is limited to situations where video content or users violate the Contract.  *See* Ex.2 3/5 ("YouTube may at any time, without prior notice and in its sole discretion, remove such Content [e.g., pornography, obscenity, or excessive length] and/or terminate a user's account for submitting such material in violation of these Terms of Service.").  Defendants may address a "breach of this

Agreement" or conduct that "may cause harm to YouTube, [its] users, or third parties" by restricting or removing content, or suspending or terminating a channel or user. *See* Ex.1 pp.4/6-5/6; *see also* Ex.1 p.5/6 (termination for material or repeated breaches of contract, failure to comply with the law, or to limit liability or harm), Ex.4 p.2/3 (removal of content and penalties for encouraging abusive behavior, repeated targeting, insulting, or abusing identifiable individuals, or exposing an individual to risk of harm), Ex.4 p.3/3 (removal of content that violates the cyberbullying policy), Ex.5 p.3/3 (removal of content that violates the violent/graphic content policy), Ex.6 p.1/3 (removal of content for violating the hate speech policy). Defendants have unfettered discretion to remove and terminate channels only for a legitimate *commercial* reason.[5] To the extent that the Defendants assert that "YouTube reserves the right, at its discretion, to not show ads on videos and watch pages," this language appears at the bottom of page 11 of Exhibit 7, "Rate Your Content with Self-Certification" which is not a TOS or CG. *See* Ramos Dec. ¶¶6.d, 7.

 Defendants also suggest that the wrongful conduct alleged is normal publishing activity. MTD 22:19-25, n.9. How ludicrous: many of the allegations reflect conduct that violates the TOS and/or CG. *See* SAC ¶¶185, 195, 236-240 (promoting hate speech and allowing threats and doxxing); SAC ¶¶245, 265, 282, 304, 320 (ignoring, delaying, obstructing appeals). The conduct is commercially unjustifiable because it reduces revenue. Shadow Banning (SAC ¶65.d), Interfering with livestream and viewer videos (SAC ¶65.f), Ad Bombing (SAC ¶65.g), and "Up Next" flooding (SAC ¶65.i-j) are annoying, irritating and downright offensive to viewers who turn off, change the channel or walk away from the screen.

 Should the Court find that Defendants have unfettered and absolute discretion to engage in race based filtering and blocking content and access to services based at least in part on race, then the licensing contract violates §1981 on its face. Section 1981 guarantees all persons "the same right . . . to make and enforce contracts," including "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship" §1981(a), (b). Thus, to the extent that

---

[5] Ex.1 p.5/6 ("YouTube may terminate your access . . . if YouTube believes, in its sole discretion, that provision of the Services . . . is no longer commercially viable.").

Defendants contend that they have absolute discretion under the contract to deny Plaintiffs' equal access to the content and other services offered on YouTube on account of their race, their conduct violates §1981.  *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 668–69 (1987) (in refusing to file race discrimination grievances by Black members, the union violated §1981); *Hall v. Pennsylvania State Police* 570 F.2d 86, 92 (3rd Cir. 1978) (bank's photographing of Black patrons pursuant to a race based surveillance scheme violated §1981).

### 3.    Plaintiffs State Claims For Equitable Relief

The SAC also sufficiently pleads three claims for equitable relief.  The Second Cause of Action seeks an equitable accounting concerning numbers of views, view times and subscribers that Defendants inaccurately reported for individual videos and channels.  SAC ¶¶413-421.  A claim for an equitable accounting requires: (1) a contractual relationship exists between the plaintiffs and defendants under which monetary consideration is owed to the plaintiff; (2) the amount due and owing cannot be determined or ascertained without an examination of the debts and credits recorded and kept on the "books" of the defendant to determine what the precise amount that is due and owing; (3) the defendant has engaged in misconduct; and (4) no adequate remedy at law exists.  *Green Valley Landowners Assn. v. City of Vallejo*, 241 Cal. App. 4th 425, 443 (2015); *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1136–1137 (2014); *see also* SAC ¶416.

Defendants contest only the third element, asserting that the claim is "entirely derivative of Plaintiffs' breach of contract claims."  MTD 17:23-18:4.  That is incorrect.  Plaintiffs' accounting claim is based on inaccurate reporting of data, and is entirely separate from any of the eleven categories of contractual breaches related to race based discrimination.  *See* SAC ¶65.  As with most consumer contracts, Plaintiffs rely on Defendants to provide accurate data that they need to qualify for specific services and to calculate the revenue that Defendants owe under the contract. *See* Ex.14 p.2/4; SAC ¶¶198, 205-206, 242, 276-277,  298-299, 301, 317-319.  Payments to Plaintiffs are based on the accounting data Defendants provide.  Ex.14 pp.1/4-2/4.  Defendants are not authorized to alter reports of "valid clicks" or "valid impressions of Ads" (*see* Ex.14 pp.1/4-2/4), much less to unilaterally alter reports of the numbers of views, view times, or subscribers

1   without giving any notice or justification.  *See* Ex.1-2.

2        If Defendants are manipulating accounting data (as the facts alleged suggest), not only is

3   an accounting warranted but Defendants have a revenue recognition issue of global proportions.

4   For the past three years, the numbers of views and subscribers for Plaintiffs Newman and Cabrera

5   varied from month to month by an unusually narrow range of plus or minus 100 to 200.  SAC

6   ¶¶197, 201.  The numbers for Plaintiff Hepkins' channel repeatedly fell over a period of weeks

7   without notice or explanation.  SAC ¶¶273-275.  The number of views for Plaintiff Stubbs's

8   videos were outstripped by the numbers of different people who left comments on the video.  SAC

9   ¶297.  The view numbers for Plaintiff Muhammad's channel, "Dr.Syn-Q," were downright wrong:

10  after having in excess of 900,000 total views for several years, the number dropped to 899,717

11  views on June 26, 2020, dropped to 388,997 on August 9, 2020, then rose to 643,780 views, and

12  thereafter remained below 900,000, without notice or explanation.  SAC ¶¶316.  Defendants even

13  reported inaccurate view numbers for some of Plaintiff Cabrera's "unpublished" (not available to

14  the public for viewing) videos.  *See* SAC ¶¶202-203.

15       **C.**     <u>**Plaintiffs State A Claim For Race Discrimination In Contract Under §1981**</u>

16       As discussed above, §1981 prohibits racial discrimination in the making and enforcement

17  of contracts.  §1981(a).  The statute broadly defines 'make and enforce contracts' to cover all

18  aspects of the contractual relationship.  *See* §1981(b).  Section 1981 prohibits private parties from

19  race based discrimination in the "performance" of their contracts, while guaranteeing that all

20  persons have the same rights as White citizens to "enjoy[] all benefits, privileges, terms, and

21  conditions of the contractual relationship[s]."  §1981(b), (c).

22       "To state a claim pursuant to §1981, a plaintiff must allege (1) the plaintiff is a member of

23  a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the

24  discrimination concerns one or more of the activities enumerated in the statute."  *Keum v. Virgin*

25  *Am. Inc*., 781 F. Supp. 2d 944, 954 (N.D. Cal. 2011).  "To prevail [on a motion to dismiss], a

26  plaintiff must initially plead . . . that, but for race, it would not have suffered the loss of a legally

27  protected right."  *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009,

28  1015 (2020).  To determine whether but-for causation is present, the Supreme Court "directs [its]

1   attention to the counterfactual—what would have happened if the plaintiff had been white?"  *Id.*

2          Plaintiffs allege Defendants are filtering and blocking Plaintiffs' videos and access based

3   on race.  Under the pretext that Plaintiffs' videos violate the TOS and/or CG, Defendants restrict,

4   block or remove Plaintiffs' videos so that they are not displayed to all viewers or are not displayed

5   at all.  SAC ¶¶65.a, 183, 188-189, 215-218, 228, 244, 253-256, 285-289, 302-303, 305, 330-332.

6   Because Defendants' decisions to filter and block content and access to services are based at least

7   in part on race, Plaintiffs are denied the same "benefits, privileges, terms, and conditions" as

8   White YouTube users.  *See* SAC ¶¶65.a-65.b, 207, 230-231, 258-261, 258, 299-301, 332, 340-

9   342.  As a result, Plaintiffs' videos have been restricted or removed despite having the same or

10  similar content as other unrestricted videos uploaded by creators who are not Black or Hispanic,

11  and Plaintiffs' videos experience audio and visual deficiencies that creators who are not Black or

12  Hispanic suffer.  Plaintiffs are also the subjects of hate speech, threats, and doxxing that are

13  expressly prohibited under the TOS and CG.  SAC ¶¶65.j, 185, 195, 236-240.

14         The allegations of the SAC also satisfy the "plausibility" standard under *Twombly* and

15  *Iqbal*.  The SAC specifically alleges detailed descriptions of Defendants' discriminatory conduct,

16  examples of such conduct as experienced by individual Plaintiffs, and Defendants' party

17  admissions of race based discriminatory conduct.  (1) Plaintiffs specifically allege that

18  Defendants' employees told Stephanie Frosch that their filtering tools made decisions based on the

19  race of creators and viewers.  SAC ¶¶51-52; Ramos Dec. Ex.E.  (2) The SAC also includes a

20  second detailed factual admission from another employee.  The SAC sets forth the transcript of a

21  recorded phone call between Defendants and an LGBTQ+ user that demonstrates that Defendants

22  have a policy of using software, algorithms and metadata tools to filter and block content and

23  access to services based on the identities of YouTube creators and viewers, under the cover of

24  enforcing viewpoint neutral content based rules.  SAC ¶¶54-55.  And, lest there be any doubt, in

25  December 2020, after Plaintiffs filed the SAC, Google fired Timnit Gebru, the co-leader of its

26  Ethical A.I. team, treating her like an "angry black woman" because she complained about

27  Defendants' biased filtering and blocking tools.

28         The SAC allegations establish but-for causation: As a result of Defendants' race based

filtering and blocking, Plaintiffs' videos are not treated the same as videos created by White creators, and Plaintiffs do not enjoy the same YouTube benefits and services as White users. Plaintiffs' TOS and CG compliant videos have been restricted, archived or removed (SAC ¶¶187-189, 228, 244, 245, 253, 272, 294-296, 320); their videos are excluded from "Trending" and "Up Next" recommendations (SAC ¶¶209-210, 267-268, 290-291, 300, 310-311); their videos are interrupted, the streaming is throttled, and audio and visual qualities are poor (SAC ¶¶245, 265, 282, 304, 320); viewers get ad bombed (SAC ¶¶207, 310) and "Up Next" flooded (SAC ¶¶274-275, 209-211, 268, 290-291, 311); Plaintiffs' reports of content violations like hate speech, threats, and doxxing are ignored (SAC ¶¶171-175); and Plaintiffs' appeals are ignored.  SAC ¶¶288-289, 228-230, 233-235, 244, 263-265, 281-282, 303-304, 320, 330.  Under Rule 12(b)(6), the SAC allegations must be accepted as true and construed in the light most favorable to Plaintiffs, especially where the only reasonable inference at this stage of the proceedings is that Defendants "would have responded differently but for the [Plaintiffs'] race."  *Comcast*, 140 S. Ct. at 1015.

Defendants challenge only the "intent" element and argue that Plaintiffs fail to plead facts sufficient to establish Defendants' intent to discriminate on the basis of race.  MTD 8:2-20.  The SAC clearly alleges that Defendants have intentionally and systematically used race to deny Plaintiffs YouTube access and services; moreover, they admitted to doing so in September 2017.  SAC ¶¶ 2–5, 51-52.  The allegation that Defendants knowingly use race to make decisions regarding filtering and blocking content and access to services is neither conclusory nor speculative: it is based on a party admission.  *See* SAC ¶¶ 4, 51, 55, 62; *see also* ¶¶51-52.  Section 1981 prohibits such race based filtering and blocking, whether performed by a human or an algorithm programmed by a human.  Defendants' conduct has impaired, interfered, and eviscerated Plaintiffs' rights under the licensing contracts and, as a direct and proximate result, deprived them of the contractual benefits and services.  SAC ¶¶179–345.

Defendants are not entitled to have the Court dismiss the SAC based on their self-serving denials, or by misconstruing the SAC allegations as "speculative" or conclusory.  *See* MTD 9:16-10:2; s*ee also* MTD 10:3-11:16.  This is especially true here because Plaintiffs allege in detail, including the when, where, and what of Defendants' admissions of targeting users based on their

1    race, sexual orientation and other minority identities or viewpoints.  SAC ¶¶51-52.[6]

2          Defendants' legal arguments fair no better.  *First*, Defendants' contention that Plaintiffs

3    cannot allege that Defendants intend to racially discriminate because YouTube's written policy

4    does not, "by its *terms*, discriminate[] on the basis of race or national origin" is specious.  MTD

5    8:15–16 (emphasis added); *see also* MTD 8:19–20.  Plaintiffs' §1981 claim is based on allegations

6    that Defendants are using race based tools in the application of their TOS and CG.  SAC ¶¶49-62,

7    123, 126-128, 182, 215, 251.  Plaintiffs do not contend, and have never contended, that the TOS,

8    CG or written policies provided to consumers are discriminatory on their face.  Indeed, that is

9    precisely why the admissions of clandestine embedding of racial animus in Google/YouTube give

10   rise to this claim in the first place.

11         *Second*, Defendants contend that the SAC allegations describing Defendants' race based

12   filtering and blocking of content and access to services constitutes, at best, "disparate impact,"

13   which is not actionable under §1981 is false on the face of the SAC.  MTD 9:4–15.  The SAC

14   clearly alleges that Defendants are engaged in intentional race based discrimination, and sets forth

15   Defendants' admission.  The eleven categories of discriminatory conduct (SAC ¶65), and the

16   detailed allegations regarding Plaintiffs' experiences of the conduct and its effects show

17   intentional discrimination – not disparate treatment.  Defendants' reliance on race as a factor for

18   filtering and blocking content and access, when race should *not* be considered at all, is a form of

19   intentional discrimination.  *Cf. Sandford v. R.L. Coleman Realty Co., Inc.*, 573 F.2d 173, 178–79

20   (4th Cir. 1978) (evidence of defendant realty company's "coding" of black applicants coupled

21   with disparate treatment established clear and flagrant case of discrimination).  It is intentional

22   discrimination whether performed by a software program or algorithm designed by a human, or

23   performed by a human who is considering the race of the user.

24         Finally, to the extent that what Defendants are really arguing is that their conduct does not

25   rise to the level of "but-for causation" the argument is unpersuasive, especially under Rule

26   _____

27   [6] Understandably, Defendants seek dismissal of the SAC to avoid discovery regarding filtering
     and blocking content and access.  Discovery concerning their filtering and blocking tools,
     including the computer code and individuals who made the admissions will quickly dispose of that

28   factual dispute.

12(b)(6).  MTD 9:24–27 (citing *Comcast*).  In *Comcast*, the plaintiffs proceeded on a theory that the breakdown of negotiations between Comcast and ESN, a 100% African American-owned media company, resulted from Comcast's racial animus toward African Americans.  *Comcast*, 140 S. Ct. at 1013.  The trial court rejected the plaintiffs' assertion that Comcast's reasons were pre-textual and concluded that their allegations "fell short of plausibly showing that, but for racial animus, Comcast would have contracted with [them]."  The Supreme Court affirmed that but-for causation was the correct test.  *Id.*

Unlike *Comcast* who gave legitimate business reasons for its decision not to carry ESN's channels, Defendants offer no such explanation at this juncture other than to assert that they retain unfettered discretion to discriminate.  *Id.*  Nor can they, because Defendants admit that race and other discrimination is clandestinely "embedded" in the filtering and blocking of content with no disclosure to consumers.  *See* SAC ¶¶49-62.  Thus, at least under Rule 12(b)(6), there is no possible legitimate business reason for considering race when determining whether a video's content violates the TOS or CG, especially where, as here, Defendants are contractually obligated to filter and block using only neutral content based rules.  If Defendants' software, algorithms and metadata evidence that Defendants use Plaintiffs' race to make filtering and blocking decisions, the only reasonable inference that can be drawn on a Rule 12(b)(6) motion is that Defendants' conduct is a "but for" cause of why Defendants treat Plaintiffs differently than Whites on YouTube.[7]

### D.    Plaintiffs State A Claim For Discrimination Under The Unruh Civil Rights Act

The Unruh Act also prohibits intentional discrimination on the basis of race.  Cal. Civ. Code § 51 *et seq.*  As demonstrated above, the SAC alleges sufficient facts for the Court to draw

---

[7] Defendants also assert that Plaintiffs' §1981 claim fails because Plaintiffs don't allege frustration of the enjoyment of any contractual rights. MTD at 11, n. 6. Many such instances are alleged. Here are just three classes of contract benefits which Defendants' race based discrimination deprive Plaintiffs of enjoying: SAC ¶¶187-189, 228, 244, 253, 272, 294-301, 345 (archive or remove compliant videos); SAC ¶¶207, 216-217, 231-236, 263-265, 278-280, 299-301, 321, 330, 332, 343-344 (no monetization for most videos); SAC ¶¶171-175, 219-221, 237-241 (unequal enforcement of TOS and CG).

the reasonable inference that Defendants engage in intentional discrimination.  Defendants argue

that the allegations either evidence disparate impact or are conclusory.  MTD 9:4–10:2.  The heart

of the SAC is the allegation that Defendants filter and block content and access based on race.

SAC ¶¶49-51, 123, 126-130, 215, 251, 281.  Defendants admit they use software, algorithms and

metadata to "target" Blacks, Hispanics and other minorities.  SAC ¶¶51-52; *see also* Ramos Dec.

Ex.E.  The SAC allegations also evidence the effect of Defendants' racial discrimination.  *See*

*Harris v. Capital Growth Inv'rs XIV*, 52 Cal. 3d 1142, 1175 (1991) ("*Harris*") (noting that

evidence of disparate impact may be probative of intentional discrimination).

      Having admitted to race based discrimination in 2017, Defendants cannot now deny it.

Making filtering and blocking decisions based on *race* when reviewing videos for their *content* is

incompatible with Unruh Act's aim to "to create and preserve a nondiscriminatory environment in

California business establishments by 'banishing' or 'eradicating' arbitrary, invidious

discrimination."  *Harris*, 52 Cal. 3d at 1149.  Considering Plaintiffs' race when conducting video

reviews is a form of arbitrary, invidious discrimination.  *See Hankins v. El Torito Restaurants,*

*Inc.*, 63 Cal. App. 4th 510, 518 (1998) (allegations of unlawful discrimination with Defendants'

awareness of such discrimination is sufficient to plead *intentional* discrimination).

### E.    <u>Plaintiffs State A Claim For False Advertising Under The Lanham Act</u>

      A false advertising claim under the Lanham Act requires: "(1) a false statement of fact by

the defendant in a commercial advertisement about its own or another's product; (2) the statement

actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the

deception is material, in that it is likely to influence the purchasing decision; (4) the defendant

caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to

be injured as a result of the false statement, either by direct diversion of sales from itself to

defendant or by lessening of the goodwill associated with its products."  *Wells Fargo & Co. v.*

*ABD Ins. & Fin. Servs.,* Inc., 758 F.3d 1069, 1071 (9th Cir. 2014).  Defendants' false message to

users that Plaintiffs' videos contain obscene or inappropriate content satisfies each of these

elements.

### 1.   Defendants Falsely Imply Plaintiffs' Videos Contain Obscene Or Inappropriate Content

"Statements that are literally true or ambiguous but which nevertheless have a tendency to mislead or deceive the consumer are actionable." *United Indus. Corp. v. Clorox Co*., 140 F.3d 1175, 1182 (8th Cir. 1998).  "Where a statement is not literally false and is only misleading in context, however, proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical." *William H. Morris Co. v. Grp. W, Inc.,* 66 F.3d 255, 258 (9th Cir. 1995).  "Although a false advertising claim may be based on implied statements, those statements must be both specific and communicated as to "deceive[ ] a significant portion of the recipients." *Prager III*, 951 F.3d at 1000.

Plaintiffs allege that Defendants improperly tag their videos for "Restricted Mode." SAC ¶¶ 134-149.  Defendants claim Plaintiffs' videos are 'Restricted" because they contain "nudity, vulgarity, violence, hate, shocking or sexually explicit material."  SAC ¶492.  When users enable Restricted Mode and try to watch a video restricted by Defendants, Defendants send a warning: "This video is unavailable with Restricted Mode enabled.  To view this video, you will need to disable Restricted Mode."  SAC ¶140.  Users who enable Restricted Mode seek to remove the kind of material that Defendants describe as "inappropriate for sensitive viewers" and naturally interpret the warning as an indication that the video restricted by Defendants contains "nudity, vulgarity, violence, hate, shocking or sexually explicit material."  *See* SAC ¶¶137-140.  No other interpretation makes sense.  Defendants dispute the implication of their warning; however, whether an "inference [can] be proved false, or the statement [can] be proved true but misleading" are factual questions that cannot be determined under Rule 12(b)(6).  *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1053–54 (9th Cir. 2008).

Defendants' warning is also misleading because it specifically implies that the videos contain "restricted material" that Defendants tell the public consists of "nudity, vulgarity, violence, hate, shocking or sexually explicit material," when they do not.  SAC ¶¶140–42. Plaintiffs further allege that users who receive this warning (all of the users with "Restricted Mode" enabled) are deceived into believing that Plaintiffs' videos contain restricted content.  *Id.*

"For purposes of § 1125(a)(1)(B), a representation by a defendant amounts to 'commercial advertising or promotion' if it was (1) commercial speech; (2) made 'for the purpose of influencing consumers to buy defendant's goods or services'; and (3) 'disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.'" *Prager I*, 2018 WL 1471939, at *9. While the representation "need not be made in a 'classic advertising campaign,' but may consist instead of more informal types of 'promotion,'" *ibid.*, "'the touchstone of whether a defendant's actions may be considered "commercial advertising or promotion" under the Lanham Act'" is when they are "'part of an organized campaign to penetrate the relevant market.'" *Id.* at *10. Disparaging misrepresentations about a competitor may be actionable under the Lanham Act if they are "[not] isolated," "designed to reach the public," and "reach a substantial number of competitor's potential customers." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57–58 (2d Cir. 2002).

Plaintiffs allege Defendants' implied message about the content of their videos was made "for the purpose of influencing [users] to [watch] defendant's [videos]" instead of Plaintiffs' videos. *Prager I* at *9; SAC ¶¶146-147. Specifically, Plaintiffs allege Defendants' implied message was made to "penetrate the market of YouTube users and [has] the effect of limiting or steering viewers away from Plaintiffs' channels and videos." SAC ¶494.

Additionally, the SAC alleges sufficient facts to show that Defendants' implied message is systematically disseminated to all users who enable Restricted Mode, users who make up a substantial portion of Plaintiffs' potential viewers. Because users who enable Restricted Mode do so precisely to filter out restricted material, the implication that Plaintiffs' videos contain restricted material is a form of disparagement as it deters those users from watching Plaintiffs' videos. SAC ¶¶492-497. Any suggestion by Defendants to the contrary is a question of fact that should be decided at trial or on a motion for summary judgment. *See Newcal*, 513 F.3d at 1054 ("Whether the relevant statements were 'disseminated sufficiently to the relevant purchasing public,' [cite], may turn out to be true or false, but the allegation suffices for purposes of stating a claim.") (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999)); *see also Grubbs*, 807 F.3d at 800-801; *Signature Transportation Grp.*, 2020 WL 1663124,

at *3.

**2.** **Plaintiffs' False Advertising Claim Is Not "Identical" To The Claim in *Prager***

Defendants' core argument is that Plaintiffs' claims are "identical" to those in *Prager* and thus fail for the same reasons. MTD at 19:12–14. That is not only incorrect with respect to the differences in specific allegations, but once those differences are acknowledged, each of Defendants arguments that the SAC fails to state a false advertising claim falls away one by one.

In *Prager*, this Court found that "the section of Plaintiff's complaint dedicated to the Lanham Act [did] not identify any specific representations made by Defendants." *Prager I*, 2018 WL 1471939 at *9. In the SAC, the §1981 Plaintiffs specifically identify the statement and implied message that forms the basis for their claim, as well as Defendants' express assertions and the context that give rise to the implication. In *Prager*, the plaintiff made the vague assertion that by excluding its videos, Defendants implied its videos were "inappropriate." *Prager I*, 2018 WL 1471939, at *9–10. As this Court correctly observed, the plaintiff "[had] not 'pointed to anything that YouTube said publicly about its classification of those videos.'" *Id.* at *10 (quoting the defendants' reply brief). In the SAC, however, Plaintiffs allege that Defendants' message specifically implies that Plaintiffs' videos contain restricted content when they do not. Thus, unlike *Prager*, Plaintiffs here are not challenging Defendants' policies and guidelines, their statements about its viewpoint neutrality, nor their TOS. *See id.* at *10–13.

Furthermore, the *Prager* plaintiff challenged Defendants' statements about how Restricted Mode was supposed to work because there was no evidence at that time that Defendants were using their filtering and blocking powers to profile and use the identity, including the commercial identity, of the user to falsely tell or imply to the public that the plaintiff's videos contained inappropriate content. Consequently, the *Prager* plaintiff could not allege facts "that Defendants restricted access to Plaintiff's videos for any 'promotional purpose.'" *Prager III*, 951 F.3d at 1000. By contrast, the §1981 Plaintiffs have pleaded specific facts as to how Defendants' implied message is intended to steer Restricted Mode Users away from Plaintiffs' videos and toward Defendants' videos. SAC ¶494.

1    Thus, if Defendants want to argue that the allegations in the SAC are insufficient to state a

2    claim for relief, they may do so, but they may not use the allegations in *Prager* to evaluate the

3    anti-competitive use and consequences of using Plaintiffs' race or identity to falsely tell or imply

4    that Plaintiffs' videos contain "nudity, vulgarity, violence, hate, shocking or sexually explicit

5    material" in violation of YouTube's viewpoint neutral content based rules.  And that can only

6    occur after the parties have had an opportunity to engage in lay and expert discovery can the Court

7    determine whether those factual allegations are true.  *Newcal*, 513 F.3d at 1053; *see also Grubbs*,

8    807 F.3d at 800-801; *Signature Transportation Grp.*, 2020 WL 1663124, at *3.

9    **F.    Plaintiffs State A Claim Under Section 17200 For Unfair Competition**

10    California's unfair competition law (UCL) "*broadly* prohibits 'any unlawful, unfair or

11    fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising.'"

12    *Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 251–52 (2011) (quoting Cal. Bus. &

13    Prof. Code § 17200) (emphasis added).  "An unlawful business practice under the UCL is

14    anything that can properly be called a business practice and that at the same time is forbidden by

15    law."  *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009) (citations and

16    internal quotation marks omitted).

17    Plaintiffs have pleaded sufficient facts to show Defendants violated §1981, the Unruh Act,

18    and the Lanham Act.  The unlawful use of Plaintiffs' race and other personal identity traits or

19    viewpoint to discriminate against Plaintiffs and to falsely imply that their content is inappropriate

20    for sensitive viewers constitutes an "unlawful" business practice under the UCL.[8]

21    In addition, Defendants' conduct is also a fraudulent business practice because it is conduct

22    "in which members of the public are likely to be deceived."  *Ibid.*  As alleged throughout the SAC,

23    Defendants deceive Plaintiffs and the public at large that their filtering process is purely content-

24    based when in fact they account for the identities of content creators and discriminate on the basis

25

26    ───────────────────
[8] The Ninth Circuit "has consistently held that state common law claims of unfair competition and
27    actions pursuant to California Business and Professions Code § 17200 are 'substantially
congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63
28    (9th Cir. 1994).

of race, sexual orientation, and political viewpoint.  SAC ¶¶43, 47, 63.  These fraudulent representations affect the "purchasing" decisions of YouTube's viewers and advertisers.  SAC ¶¶ 495–496.

Lastly, Defendants' conduct is also an "unfair" practice under the UCL.  An "unfair" practice is one in which the defendant engages in anticompetitive practices and conduct that are tethered to "proof of some actual or threatened impact on competition."  *Morgan*, 177 Cal. App. 4th at 1254.  Defendants directly compete with Plaintiffs for viewership and by discriminating against Plaintiffs on the basis of race, Defendants gain an unfair advantage of them.  SAC ¶¶40, 119, 147, 529, 575.  When drawing all reasonable inferences in favor of Plaintiffs, the detailed allegations in the SAC sufficiently state a plausible claim for relief under the UCL.  *See, e.g., In re Adobe Sys., Inc. Privacy Litig.*, 66 F. Supp. 3d 1197, 1224 (N.D. Cal. 2014) (Koh, J.) (denying defendants' motion to dismiss as to plaintiffs who plausibly pleaded standing under the UCL).

## G.    <u>Defendants Are Not Entitled To Immunity Under Section 230(c)</u>

In the First Claim for Relief, Plaintiffs' seek a declaratory judgment on the threshold legal issue in this case: whether §230(c) provides a complete defense to each and every claim in the SAC. MTD 21:22-23:14.  Specifically, Plaintiffs seek a declaratory judgment as to §230(c)'s application as "complete defense" to each of Plaintiffs' claims and, if so, whether that application is unconstitutional under *Denver Area*, 518 U.S. at 737, 766.  That is an independent claim for relief because it raises both statutory and constitutional issues under federal law that govern every claim in this case and thus qualifies as one of the "special and small" exceptions to the well pleaded complaint rule that creates an independent federal question under 28 U.S.C. §1331.  *Gunn v Minton*, 568 U.S. 251, 258 (2013) (claim raising dispositive federal issue with constitutional implications will give rise to a federal question if the federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress").  There is a "special and small category of cases" that originate in state law yet still arise under federal law for purposes of federal question jurisdiction.  *See Atl. Richfield Co. v. Christian*, 140 S. Ct. 1335, 1350 (2020) (reaffirming "special exception" federal question jurisdiction in *Gunn*).

1.   **Defendants Are Not Immune For Discriminatory Filtering and Blocking By Interchanging Sections 230(c)(1) And (c)(2)(B)**

Defendants contend that (c)(1) and (c)(2)(B) are interchangeable provisions that functionally operate as identical immunities for unlawfully filtering and blocking Plaintiffs' content and access to YouTube.  MTD 21:27-22:12.  That is incorrect and renders one of the two provisions meaningless surplusage that violates the "fundamental cannon of statutory construction that a statute should not be construed so as to render any of its provisions mere surplusage." *United States v. Wenner*, 351 F.3d 969, 975 (9th Cir. 2003); *see also Indep. Training & Apprenticeship Program v. California Dep't of Indus. Relations ex rel. Baker*, No. 2:11-CV-01047-GEB, 2011 WL 3584719, at *7 (E.D. Cal. Aug. 15, 2011), aff'd sub nom. 730 F.3d 1024 (9th Cir. 2013); *Ramadan v. Keisler*, 504 F.3d 973, 976 (9th Cir. 2007) (O'Scannlain, J., dissenting) (court must "give effect, if possible, to every clause and word" in construing a law or regulation).  Strict adherence to that basic rule is particularly applicable here because there is a clear and plain textual distinction between the two provisions that the federal courts have gone to great lengths to preserve.  *See, e.g.*, *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC,* 521 F.3d 1157, 1174-75 (9th Cir. 2008) ("*Roommates*"); *Doe v. GTE Corp.*, 347 F.3d 655, 659–60 (7th Cir. 2003); *Johnson v. Arden*, 614 F.3d 785, 791 (8th Cir. 2010); *Almeida v. Amazon, Inc.*, 456 F.3d 1316, 1321 n.3 (11th Cir. 2006).  Thus, whatever differences that the federal courts may have about the construction of §230(c), Defendants' construction of §230(c)(1) publishing immunity as swallowing or completely interchangeable with §230(c)(2)'s provision governing the affirmative filtering, restriction, and/or blocking of Plaintiffs' content renders §230(c)(2) (A) and (B) meaningless, and vice versa.  *See e-ventures Worldwide, LLC v. Google, Inc.*, 188 F. Supp. 3d 1265 (M.D. Fla. 2016); *Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 884 (N.D. Cal. 2015); s*ee also Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1178 (9th Cir. 2009) (Fisher, J., concurring) (noting that an "unbounded" reading of "otherwise objectionable" would enable content providers to "block content for anticompetitive purposes or merely at its malicious whim, under the cover of considering such material 'otherwise objectionable.'"); *Sherman v. Yahoo! Inc.*, 997 F. Supp.2d 1129, 1138 (S.D. Cal. 2014) (the

Court expressly "declined to broadly interpret 'otherwise objectionable' material to include any or all information or content").

**2.** **Defendants Are Not Immune For Breach of Contract, Discrimination, And Anticompetitive Conduct Under Section 230(c)(1)**

Defendants cannot establish that they are entitled to publishing immunity under any construction of §230(c)(1) based on the claims and allegations in the SAC.  In short, §230(c)(1) does not apply, has never been applied, and can never apply to equitable or legal license or contract claims, claims for intentional discrimination in contract or business transactions, unfair competition or false advertising, and free speech claims as a matter of law.  *See Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040, 1047 (9th Cir. 2019) ("*Enigma II*"); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1108-1109 (9th Cir. 2009); *Sherman*, 997 F. Supp. 2d at 1138.

**Contracts and License Agreements.**  Section 230(c) does not apply to contract or equitable promissory claims.  *See* 47 U.S.C. §230(e) (exempting intellectual property claims); *Barnes*, 570 F.3d at 1108-1109.  In *Barnes*, the Ninth Circuit held that an internet service provider who expressly or implicitly breaches an enforceable promise or contract is not entitled to immunity under §230(c)(1).  "Liability for breach of promise is different from, and not merely a rephrasing of, liability for negligent undertaking [by a publisher]."  *Id*. at 1106.  "Contract liability," therefore "would come not from [Defendants'] publishing conduct, but from [their] manifest intention to be legally obligated to do something."  That includes Defendants' obligation to provide Plaintiffs' identity and viewpoint neutral, discriminatory and animus free, access to YouTube.  *See id*. at 1107.  Thus, while §230(c)(1) "creates a baseline rule" of "no liability for publishing . . . the content of other information service providers, . . . [i]nsofar as [Defendants] made a promise with the constructive intent that it be enforceable, it has implicitly agreed to an alteration in such baseline" rule.  *Id*. at 1108-1109.  And that is precisely what the Ninth Circuit warned Defendants in *Prager I*: notwithstanding the state action issue, Plaintiffs' claims "sound in contract" because they are based on Defendants' failure to abide by their express and implied promises to grant Plaintiffs equal access to YouTube under identity and viewpoint neutral terms that apply equally to all in exchange for the right to license and monetize Plaintiffs' content and

personal data.  Transcript of Oral Argument at 12, *Prager III* (No. 18-15712).

**Anticompetitive Conduct.**  The Ninth Circuit has squarely held that "[p]roviders do not have unfettered discretion to declare online content 'objectionable' and blocking and filtering decisions that are driven by anticompetitive animus are not entitled to immunity" under §230(c). *Enigma II*, 946 F.3d at 1047.  Section 230(c) is founded upon strong public policies *favoring* competition:  In enacting the CDA, "Congress took the rather unusual step of setting forth policy goals," such as (a) encouraging "the development of technologies which maximize *user* control"; (b) empowering "parents to restrict their children's access to objectionable or inappropriate online *content*"; and (c) preserving "the vibrant and competitive free market that presently exists."  Thus, when an ISP engages in blocking, filtering, or content moderation, there is no immunity under §230(c) for anti-competitive filtering or blocking of user content whether under the publisher immunity under (c)(1) or filtering immunity under (c)(2).  *Id.*[9]

**Discrimination.**  Defendants' assertion that §230(c)(1) permits an ISP to knowingly, intentionally, and systematically use and discriminate based on a person's race or identity, rather than content is not only wrong as a matter of law, it is repugnant and dangerous.  In *Enigma*, that was clear to the Ninth Circuit: "from the statutory language, history and case law is that the criteria for blocking online material must be based on the characteristics of the online material, *i.e.*, its content, and ***not*** on the identity of the entity that produced it."  *Enigma*, 938 F.3d 1026, 1032–33 (9th Cir. 2019) (emphasis added), *opinion withdrawn and superseded on denial of reh'g, Enigma II*; *see also Sherman*, 997 F. Supp.2d at 1138; *Holomaxx Techs. v. Microsoft Corp.*, 783 F.Supp.2d 1097, 1104 (N.D. Cal. Mar. 11, 2011).

**ISP Content.**  Defendants cannot avoid liability as a publisher when they are acting as an information content provider "responsible, in whole or in part, for the creation . . . of information provided through the Internet."  47 U.S.C. §230(f)(3).  The Ninth Circuit has held that internet service providers who wear both the publisher hat and the "information content provider" hat,

---

[9] Defendants' reliance on *Enigma II* is entirely misplaced. Whether the parties are direct competitors constitutes a pure factual dispute that cannot be resolved under Rule 12(b)(6). *See* MTD 23:14, n.11.

1  remain liable as content providers under §230(c)(1).  *Roommates*, 521 F.3d at 1174-75.  In

2  *Roommates*, the Ninth Circuit rejected en banc a similar claim of §230(c)(1) immunity because the

3  defendant was "undoubtedly the 'information content provider' as to the [registration] questions

4  and can claim no immunity for posting them on its website, or for forcing subscribers to answer

5  them as a condition of using its services."  *Id*. at 1164.  Defendants "materially contribute" to the

6  illegal conduct of those and "are not entitled to CDA immunity for the operation of its search

7  system, which filters listings, or of its email notification system, which directs emails to

8  subscribers according to discriminatory criteria."  *Id.*; *see* SAC ¶¶44, 49-52, 65.a-c, 65.l, 131-132,

9  134, 139, 181-182, 190, 214-215, 248-251, 261, 505.

### 3.      Defendants Are Not Immune For Racial Profiling, Blocking, And Filtering Under Section 230(c)(2)

11       Under the plain language of §230(c)(2)(B), affirmative acts of blocking and filtering

12  decisions are immune if, and only if, they are based on "offensive material" in the underlying

13  content.  "[T]he majority holds that the criteria for blocking online material may not be based on

14  the identity of the entity that produced it."  *See, e.g.*, *Enigma II*, 946 F.3d at 1052; *id.* at 1054

15  (Rawlinson, J. dissenting).  Consequently, Defendants cannot, invoke a federal immunity law to

16  block and filter people based on their race or other personal identity traits or viewpoint; they may

17  only filter and block based on content.  *Id.*; *see also Sherman*, 997 F. Supp.2d at 1138; *Holomaxx*

18  *Techs.*, 783 F.Supp.2d at 1104.

19       As a result, CDA immunity does not extend bad faith censorship or conduct, such as that

20  alleged against YouTube here.  *See, e.g.*, *Fair Housing*, 521 F.3d at 1157 (contributing to illegality

21  precludes CDA immunity); *Pirozzi v. Apple Inc*., 913 F.Supp.2d 840, 849 (N.D. Cal. 2012)

22  (Gonzalez Rogers J.); *Mazur v. eBay Inc.*, No. C 07-3967 MHP, 2008 WL 618988, at *10–11

23  (N.D. Cal. Mar. 4, 2008) (Patel, J.); *Levitt v. Yelp! Inc.*, No. C-10-1321 EMC, 2011 WL 5079526,

24  at *9 (N.D. Cal. Oct. 26, 2011) (misrepresentations and omissions preclude CDA immunity);

25  *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1044 (Tigar, J.); *Song fi Inc.*, 108 F. Supp. 3d at

26  883–84; *Darnaa LLC v. Google, Inc.*, 2016 WL 6540452, at *8 (N.D. Cal. Nov. 2, 2016);

27  *Demetriades v. Yelp, Inc.*, 228 Cal. App. 4th 294, 313 (2014); *Anthony v. Yahoo Inc.*, 421 F. Supp.

28

2d 1257, 1263 (N.D. Cal. 2006) (Whyte, J.) (misrepresentations accompanying third party content preclude CDA immunity); *Spy Phone Labs LLC v. Google, Inc.*, 2016 WL 6025469, at *8 (N.D. Cal. Oct. 14, 2016); *Hy Cite Corp. v. badbusinessbureau.com, L.L.C.*, 418 F. Supp. 2d 1142, 1147–49 (D. Ariz. 2005). And any enforcement of §230(c) to the contrary, as asserted by Defendants in this case, subjects the law to an almost certain death under *Denver Area*.

    **4.**    **Applying Section 230(c) To Immunize Race Based Discrimination Is Unconstitutional**

       Section 230(c) if applied to the allegations in this case would render the statute an unconstitutional permissive speech law under the First Amendment. In *Denver Area*, six justices, on an otherwise divided Supreme Court, set forth a three part test for evaluating the constitutionality of a permissive, private party speech law under the First Amendment. Applying that three part test to a challenge to Section 10c of the Cable Act, the Supreme Court, agreed that this permissive private party content blocking law failed "close" and "careful" scrutiny under the First Amendment because: (1) even assuming the statute was "coupled with view-point neutral application;" (2) the provisions did not serve or further the purpose of protecting minors from "offensive" online  material through narrowly tailored means that do not present a "risk that the [Defendants'] veto itself may be mistaken," or that "its use, or threatened use, could prevent the presentation of programming, that, though borderline, is not 'patently offensive' to its targeted audience"; and (3) when balanced against the speaker's competing legal interests, the provisions interfered or altered the established legal relationships and obligations between the parties, including rights and obligations governed by existing federal, state, and contract based laws. *Denver Area*, 518 U.S. at 737,763-766.

       Section 230(c) is no exception. The statute was expressly enacted as a permissive regulation of speech that allowed and encouraged Defendants to regulate, restrict, and block offensive online material to protect children and other sensitive audiences. *See* 47 U.S.C. § 230(b)(3)–(4). Congress chose to achieve that object by granting immunity to ISPs for any unlawful conduct associated with any ISPs like Defendants who affirmatively regulate, block, and restrict third party speech.

**PLAINTIFFS' FURTHER REVISED AND CORRECTED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**

1    In this case, however, Defendants seek to enforce §230 as a complete defense to
2  intentional, systematic, and profit driven race, gender and other identity based discrimination.  By
3  definition, such an application is not (i) viewpoint-neutral, (ii) sufficiently and narrowly tailored to
4  serve the interest of protecting minors from "offensive" online content, and (iii) it interferes with
5  existing legal relationships based on contract and intellectual property law, creating the risk of an
6  erroneous "veto," and blocks appropriate and compliant video content and including Plaintiffs'
7  license and terms of service agreements and related rights under longstanding state and federal
8  anti-discrimination, unlawful or deceptive business practices, and false advertising laws.  *See*
9  *Denver Area*, 518 U.S. at 763-67.  "The upshot," according to *Denver Area*, is that §230(c)
10  "violates the First Amendment" because it "radical[ly] changes" the access and neutral content
11  based relationships that were established through municipal law, regulation, and contract." *Id.* at
12  766-767.

13    Finally, Defendants' argument that §230(c)(1) is not a content based speech law only
14  makes the constitutional problem worse.  MTD 25:8-12.  Congress enacted §230(c) for the express
15  purpose of allowing ISPs to regulate online speech to "protect minors from offensive material on
16  the internet."  *See* §230(b)(3)–(4). Thus, whether Defendants seek to meet that statutory purpose
17  that under (c)(2)'s content based provisions or (c)(1)'s function based rules, filtering, blocking, or
18  otherwise regulating a user's speech based in any way on race, gender or other identity in direct
19  violation of license and other contractual and legal obligations does not remove the application
20  and enforcement of a federal law from First Amendment scrutiny.  *Ward v. Rock Against Racism*,
21  491 U.S. 781, 791–92 (1989); *see also Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 645
22  (1994) ("[E]ven a regulation neutral on its face may be content based if its manifest purpose is to
23  regulate speech because of the message it conveys."); *Madsen v. Women's Health Ctr., Inc.*, 512
24  U.S. 753, 763–64 (1994).

25    **H.      Plaintiffs State A Claim For Liberty Of Speech**

26    The Liberty of Speech "provision of our state Constitution grants broader rights to free
27  expression than does the First Amendment to the United States Constitution."  *Fashion Valley Mall,*
28  *LLC v. Nat'l Labor Relations Bd.*, 42 Cal. 4th 850, 862–63 (2007) (citing Cal. Const. art. I, § 2;

1    *Robins v. Pruneyard Shopping Center*, 23 Cal.3d 899, 902 (1979) ("*Pruneyard*")).  It enshrines the

2    fundamental "idea that private property can constitute a public forum for free speech if it is open to

3    the public in a manner similar to that of public streets and sidewalks." *Id.* at 858–59.

4            A claim for violation of free speech and expression under California law still requires "state

5    action" by a defendant.  *See Golden Gateway Ctr. v. Golden Gateway Tenants Assn.*, 26 Cal. 4th

6    1013, 1032 (2001).  But what constitutes "state action" under California's more expansive

7    definition of state action is not constrained in any way by the requirement under federal law that a

8    private property owner can only be a state actor if it is a company town that performs essential and

9    exclusive governmental functions like running elections.  *See Manhattan Cmty. Access Corp. v.*

10   *Halleck*, 139 S. Ct. 1921, 1928 (2019) ("*Halleck*") (quoted and cited in *Prager III*, 951 F.3d at 997-

11   99).  Thus, under California law, a private property owner can and does "opt in" to the public forum

12   doctrine under the Liberty of Speech Clause if the property owner invites the public to use its

13   property as a public place for speech: "the more an owner, for his advantage, opens up his property

14   for use by the public in general, the more do his rights become circumscribed by the statutory and

15   constitutional rights of those who use it." *Fashion Valley Mall*, 42 Cal. 4th at 858–59 (discussing

16   *Pruneyard*).

17           Under Rule 12(b)(6), therefore, Court must give due consideration to Defendants'

18   representations and admissions about YouTube's (i) purpose, nature, and use; (ii) the extent and

19   nature of the invitation; and (iii) the relationship between its users speech and the purpose of

20   Defendants' business for operating YouTube.  *Albertson's, Inc. v. Young*, 107 Cal. App. 4th 106,

21   119 (2003); *Allred v. Shawley,* 232 Cal. App. 3d 1489, 1501 (1991); 73 Ops. Cal. Atty. Gen. 213,

22   222–223 (1990). The SAC contains specific allegations that Defendants are state actors when they

23   regulate speech on YouTube.  Defendants openly solicit the public worldwide by inviting people

24   like Plaintiffs to use YouTube as a public forum for free speech, communication, and expression

25   intended to "give everyone a voice."  SAC ¶¶39-45, 80-81, 91-94.  The invitation to use YouTube

26   as a forum for free speech is not only express and direct, but it promises substantive free speech

27   protections that are the foundation a public forum for free speech: use of YouTube as a forum for

28   speech is subject to and governed by viewpoint neutral content based rules that apply equally to all

like every other public forum.  SAC ¶¶91-94.  Thus, Defendants' representations, operation, and administration of YouTube constitute a traditional forum for public speech whose character, nature, invitation to use, purpose, and relationship between its users, meet all the specific criteria for a state action opt in under California law.

This quasi-public forum doctrine of implying "state action" by a private party is not limited only to commercial shopping centers as Defendants contend.[10]  MTD 14:15-16:4.  The sole focus is "on whether the property owner has so opened up his or her property for public use as to make it the functional equivalent of a traditional public forum."  *See, e.g.*, *Trader Joe's Co. v. Progressive Campaigns, Inc.*, 73 Cal. App. 4th 425, 433-434 (1997); *Bank of Stockton v. Church of Soldiers,* 44 Cal. App. 4th 1623, 1630 (1996); *Allred v. Harris*, 14 Cal. App. 4th 1386, 1390-1391 (1993); *Allred v. Shawley,* 232 Cal. App. 3d at 1501-1502.  And the established criteria for that evaluation is settled: "Whether private property is to be considered **quasi-public** property subject to the exercise of constitutional rights of free speech and assembly depends" on the factual circumstances, including: "(i) the nature, purpose, and primary use of the property; (ii) the extent and nature of the public invitation to use the property; and (iii) the relationship between the ideas sought to be presented and the purpose of the property's occupants." *Albertson's, Inc. v. Young*, 107 Cal. App. 4th at 119; *Allred v. Shawley*, 232 Cal. App. 3d at 1501; 73 Ops. Cal. Atty. Gen. 213, 222–223 (1990).

And the only controlling California case law holds that "[w]eb sites accessible to the public, where public may post speech are 'public forums' for purposes of the anti-SLAPP statute." *Barrett v. Rosenthal*, 40 Cal.4th 33, 41, n. 4 (2006).  And while this Court was correct in pointing out that Cal. Code of Civ. Pro. §425.16 does not expressly define a "public forum" for purposes of anti-SLAPP law (*see hiQ Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099 (N.D. Cal. 2017)

---

[10] Defendants rely on *Accord Domen v. Vimeo, Inc.*, 433 F. Supp. 592, 606-07 (S.D.N.Y. Jan. 14, 2020), *appeal docketed*, No. 20-616 (2d Cir. Feb. 18, 2020).  In *Vimeo*, a New York district court preempted the Liberty of Speech claims because they were barred under §230(c).  Vimeo then went to state "arguendo" that it was not aware of any controlling authority to extend it beyond shopping centers.  Although Defendants suggest that the Second Circuit held the same, no such ruling exists: the case is pending on appeal.  Absent any controlling authority that *Pruneyard* is categorically limited to shopping centers, the state law authority cited by Plaintiffs holding otherwise governs.

(Chen, J.), *aff'd*, 938 F.3d 985 (9th Cir. 2019)), the Court did not consider that California law always determines the "public forum issue" under the anti-SLAPP laws with "sole reference to [] First Amendment cases" and the public function doctrine under *Pruneyard* and its progeny. *Weinberg v. Feisel*, 110 Cal. App. 4th at 1131, n.4 (2003); *see also Ralphs Grocery Co. v. Victory Consultants, Inc.*, 17 Cal. App. 5th 245 (Cal. Ct. App. Oct. 24, 2017). A "public forum" under §425.16 is by definition a public forum under *Pruneyard* and the California constitution. *See Weinberg*, 110 Cal. App. 4th at 1131, n.4; *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal.4th 1106, 1123 (1999). The Court of Appeals holding that social media sites are public forums for purposes of §425.16 is strong evidence, if not dispositive of, the public forum analysis under California, as well as federal law. *Id.*; *see also Ralphs Grocery Co.*, 17 Cal. App. 5th at 257–58 (noting that §425.16 requires a threshold finding that moving party owns and operates a public forum under *Pruneyard* and progeny).

Lastly, Defendants claim that their First Amendment right "not to speak" that supersedes Plaintiffs' rights to be free from identity or viewpoint discrimination under the Liberty of Speech Clause was tried and rejected. In *Pruneyard*, the U.S. Supreme Court affirmed the California Supreme Court's decision holding that to the extent private property owners have a First Amendment right "not to speak," those rights are limited to "publicly dissociating [themselves] from the views of the speakers," not by resorting to animus-based filtering and discriminatory unlawful restraints on the right to free speech. 447 U.S. at 88; *see also Snatchko v. Westfield, LLC*, 187 Cal. App. 4th 469, 491–92 (2010).

## I. Plaintiffs Allege That Defendants Are State Actors Under The First Amendment Under Halleck and *Prager III*

The recent decisions in *Halleck* and *Prager III* foreclose a First Amendment Claim based "on th[e] fact alone" that a private party declares or designates its property as a forum for speech. *Halleck*, 139 S. Ct. at 1930. But *Halleck*, and by extension *Prager III*, stop short of overruling *Marsh v. State of Ala.*, 326 U.S. 501 (1946) or eliminating the "public function" test for private state action. And in *Prager III*, the Ninth Circuit acknowledged that Defendants' power on YouTube was "ubiquitous." *Prager III*, 951 F.3d at 998. Accordingly, Plaintiffs seek to preserve

their First Amendment Claim for adjudication, to allow the federal court to clarify two issues regarding state action.

First, have Plaintiffs pleaded facts sufficient to establish under Rule 12(b)(6) that Defendants' "ubiquitous"  power over public video content, in conjunction with other services offered by Google, is sufficient to establish at the pleading stage that they operate as a private government that administers elections, performs surveillance and national security on behalf of law enforcement and other agencies, and provides substantial data services that allow government agencies to perform their functions?  Yes, because a content violation on YouTube gives Defendants the right to curtail and interfere with the public the administration of online services traditionally reserved for government, including elections, law enforcement, national security, and public safety, the SAC is sufficient to establish state action under *Halleck* and *Marsh*.  SAC ¶¶85-87, 91-93, 541-542,

Second, neither *Halleck* nor *Prager III* were presented with or considered the theory of whether Defendants' use of §230(c), a permissive speech regulation law, to engage in intentional and systematic race and sex based discrimination that would otherwise be unlawful, is sufficient to plead state action under the endorsement test set forth in *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 615– 16 (1989) (use of non-neutral encouragement command or impetus under a federal regulation to engage in drug testing makes private parties).  Defendants' discriminatory regulation of speech is "state action" under the "endorsement test," in which a private party invokes or applies a federal statute (in this case §230 immunity under the CDA), to permit overt race and sex based discrimination that would otherwise be unlawful.  *See*, *e.g. Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 615–16 (1989) (use of non-neutral encouragement command or impetus under a federal regulation to engage in drug testing makes private parties). Whether Defendants are engaged in state action here, where a private "internet service provider" invokes §230(c) in such a way as to render that statute a non-neutral, non-passive sanctioning of Defendants' discriminatory or unconstitutional conduct, is an issue which no appellate court has

1  *ever* considered in the context of applying §230(c).[11]

2  ## IV.      REQUEST FOR LEAVE TO AMEND

3          In the event that the Court is inclined to grant Defendants' Motion in whole or in part,

4  Plaintiffs respectfully request that the Court grant Plaintiffs leave to file a further amended

5  complaint to address any deficiencies the Court may find, and to further allege additional

6  jurisdictional facts to support the exercise of federal jurisdiction, including allegations to support

7  jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d).

8  ## V.      CONCLUSION

9          Plaintiffs are in the unusual position of having evidence that Defendants are intentionally

10  discriminating against Plaintiffs based on race.  After repeatedly admitting that they were

11  engaging in identity based filtering and blocking content and access to YouTube services, on

12  September 14, 2017, Defendants admitted that those decisions were based on race, as well as

13  gender, sexual orientation and handicap status.  Defendants cannot deny these allegations in the

14  confines of a Rule 12(b)(6) motion; instead, they ignore their admissions and misconstrue the

15  detailed factual allegations regarding how Plaintiffs are deprived of the same contractual benefits

16  and services Whites get.

17          For the reasons set forth above, Plaintiffs respectfully request that the Court deny

18  Defendants' Motion to Dismiss and give Plaintiffs a full and fair opportunity to prove their case

19  that Defendants used their race to unlawfully filter and block their access to YouTube.

20

21

22

23

24

25

26

27

28

---

[11] Plaintiffs acknowledge that Judge DeMarchi has ruled on these issues.  Plaintiffs seek to preserve their right to appeal those issues in this race discrimination case as well.

PLAINTIFFS' FURTHER REVISED AND CORRECTED OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

1 | DATED:  January 25, 2021

Respectfully submitted,

BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
    Peter Obstler

By: _____
        Peter Obstler
Attorneys for Plaintiffs Kimberly Carleste Newman,
Lisa Cabrera, Catherine Jones, Denotra Nicole Lewis,
Andrew Hepkins, Harvey Stubbs, Khalif Muhammad,
Keu Reyes and Osiris Ley