1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12

KIMBERLY CARLESTE NEWMAN, et al.,

Plaintiffs,

v.

GOOGLE LLC, et al.,

Defendants.

Case No. 20-CV-04011-LHK

**ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS; DENYING PLAINTIFFS' MOTION TO STRIKE**

18

Plaintiffs Kimberly Carleste Newman, Lisa Cabrera, Catherine Jones, Denotra Nicole

19

Lewis, Andrew Hepkins, Harvey Stubbs, Khalif Muhammad, Keu Reyes, and Osiris Ley

20

(collectively, "Plaintiffs") bring the instant case against Defendants Google LLC and YouTube,

21

LLC (collectively, "Defendants"),[1] alleging claims for equitable conversion, replevin, equitable

22

accounting of revenue, breach of contract, implied breach of covenant of good faith and fair

23

dealing, promissory estoppel, violation of the Unruh Civil Rights Act; violation of 42 U.S.C. §

24

1981, unlawful, deceptive, and unfair business practices in violation of Business & Professions

25

Code § 17200 ("UCL"), false advertising in violation of the Lanham Act, 15 U.S.C. § 1125,

26

[1] On November 2, 2020, the parties voluntarily dismissed Defendant Alphabet Inc.  ECF No. 28.

27

1

28

United States District Court
Northern District of California

violation of Article I, Section 2 of the California Constitution, and violation of the First

Amendment of the United States Constitution.  *See* Revised Second Amended Class Action

Complaint, ECF No. 27 ("SAC").  Plaintiffs also seek a declaratory judgment that Section 230 of

the Communications Decency Act ("CDA") either does not immunize Defendants' alleged

misconduct or is unconstitutional.  *Id.*  Before the Court is Defendants' motion to dismiss

Plaintiffs' SAC in its entirety, ECF No. 29 ("Mot."), and Plaintiffs' motion to strike, or in the

alternative to convert Defendants' motion to dismiss into a Rule 56 motion.  ECF No. 39

("MTS").  Having considered the parties' submissions, the relevant law, and the record in this

case, the Court GRANTS with leave to amend Defendants' motion to dismiss and DENIES

Plaintiffs' motion to strike.

## I.     BACKGROUND

### A.  Factual Background

#### 1.  The Parties

YouTube, LLC ("YouTube"), a subsidiary of Google LLC ("Google"), is the largest and

most popular online video hosting platform with approximately 2.3 billion users worldwide.  SAC

at ¶ 27, 75.  YouTube's principle place of business is in Mountain View, California.  *Id.*

Plaintiffs are each YouTube creators and operators of various YouTube channels.  *Id.* at ¶¶

18–26.  Each Plaintiff is African American or of Mexican or Puerto Rican descent.  *Id.*  Each

Plaintiff operates at least one channel on YouTube.  *Id.*  A YouTube channel allows content

creators, such as Plaintiffs, to upload videos into a centralized location that other users can follow

and be alerted when new videos are posted.  Some Plaintiffs have "monetized" their videos by

participating in YouTube's advertising program, whereby content creators are compensated for

advertisements that run on their videos.  *Id.*

#### 2.  YouTube's Terms of Service

Content creators, including Plaintiffs, upload videos to YouTube free of charge.  YouTube

users may then view, share, and comment on those videos.  *Id.* at ¶ 519.  Uploading a video to

2

YouTube or creating a YouTube channel requires that a user agree to YouTube's Terms of Service ("TOS"), which in turn incorporate YouTube's Community Guidelines. *Id.* at ¶ 7 n.2. Among other provisions, YouTube's TOS state that YouTube has the right to remove content from its site "including, but not limited to, pornography, obscenity, or [content that is] excessive length." *Id.* at ¶ 105. Videos may also violate YouTube's TOS and be removed if those videos contain "hate speech, obscene, misogynistic, violent, threatening, or disparaging content." *Id.* at ¶ 164.

### 3. YouTube's Restricted Mode

YouTube offers a setting called Restricted Mode. Restricted Mode is an opt-in setting on the service that allows users or institutions to screen out content that has been flagged as age-restricted or "potentially adult." SAC at ¶¶ 135–137. This setting allows system administrators at schools and other institutions to restrict potentially adult content from being accessed by users, including children. *Id.* Although Restricted Mode primarily affects users who turn on Restricted Mode themselves, Plaintiffs allege that users without YouTube accounts are occasionally blocked by Restricted Mode from viewing potentially adult content when those users visit YouTube. *Id.*

Videos can be tagged for exclusion in Restricted Mode in one of two ways. First, YouTube algorithms look for particular "signals," such as "the video's metadata, title, and tag words associated with the video." *Id.* at ¶ 139. Based on those signals, YouTube's algorithms will automatically tag a video to be excluded in Restricted Mode. *Id.* Second, videos can be flagged by YouTube users as potentially inappropriate. Flagged videos are then reviewed by a team of human reviewers and excluded in Restricted Mode if a video includes content that is age-restricted or potentially adult. *Id.*

Plaintiffs allege that there are multiple criteria that can lead to YouTube deeming a video to be inappropriate, including videos that contain the following content:

> (1) talking about drug use or abuse, or drinking alcohol in videos; (2) overly detailed conversations about or depictions of sex or sexual activity; (3) graphic descriptions of violence, violent acts, natural disasters and tragedies, or even violence in the news; (4) videos that cover specific details about events related to terrorism, war, crime, and political conflicts that resulted in death or serious injury, even if

United States District Court
Northern District of California

no graphic imagery is shown; (5) inappropriate language, including profanity; and (6) video content that is gratuitously incendiary, inflammatory, or demeaning towards an individual or group.

*Id.* at ¶ 139.

Videos that are blocked in Restricted Mode remain viewable to users who do not have Restricted Mode activated, as long as those videos otherwise meet YouTube's TOS.  A user whose video has been blocked in Restricted Mode may appeal to YouTube if that user believes that the video was incorrectly flagged for exclusion in Restricted Mode.  *Id.* at ¶ 146.

### 4. Advertising Policies on YouTube

YouTube content creators whose channels meet certain criteria are allowed to "monetize" their videos by allowing YouTube to run advertisements before and during videos.  This allows content creators to earn revenue from their qualifying videos.  *See, e.g.*, *id.* at ¶ 18–26, 65.  YouTube calls this the YouTube Partner Program.  *Id.* at ¶ 7 n.2.  Before content creators can run advertisements on their videos, content creators must agree to supplemental terms of service, including the Partner Program Terms of Service and the Google AdSense Terms of Service.  *Id.*  These terms are intended to ensure that YouTube advertisements do not appear on videos with objectionable content, and YouTube uses automated software to identify content that is inappropriate for advertising.  *Id.* at ¶ 65.  If a content creator believes that their video has been incorrectly flagged as inappropriate, the content creator may appeal that decision for manual review.  *Id.* at ¶ 176.

### 5. Plaintiffs' Allegations of YouTube's Misconduct

Plaintiffs allege that despite Defendants' statements that YouTube's moderation policies are race-neutral, Defendants have targeted Plaintiffs because of Plaintiffs' race and viewpoints.  *Id.* at ¶ 36.  Specifically, Defendants "profile, use, and consider Plaintiffs' race, personal identity, or viewpoints, in order to interfere with, restrict, or block video uploading, viewing, promotion, advertising, engagement, and/or monetization services because Plaintiffs are African American and/or possess personal characteristics or viewpoints that Defendants dislike."  *Id.*

Defendants allegedly discriminate against Plaintiffs in several ways.  First, Defendants'

4

filtering and reviewing tools profile the racial identity of Plaintiffs and impose restrictions on Plaintiffs' videos by blocking access to those videos in Restricted Mode. *Id.* at ¶ 47–48. Plaintiffs' videos allegedly do not contain content that meets YouTube's qualification for inappropriate or potentially adult content. *Id.* at ¶¶ 65, 143. Rather, Plaintiffs' videos are allegedly included in Restricted Mode because of Plaintiffs' racial identity or viewpoint. *Id.*

Second, Defendants "demonetize" Plaintiffs' videos by preventing advertisements from running on those videos. *Id.* at ¶ 65. Defendants contractually reserve the right to remove advertising from users' videos, but Plaintiffs allege that Defendants remove advertising from Plaintiffs' videos on account of Plaintiffs' race or viewpoint, rather than inappropriate content. *Id.* By demonetizing Plaintiffs' videos, Defendants allegedly deprive Plaintiffs of advertising revenue that Plaintiffs would otherwise receive. *Id.* at ¶ 64.

Third, Defendants allegedly engage in several other practices that discriminate against Plaintiffs on the basis of their race and viewpoints. These practices include "shadow banning" videos and channels (i.e. removing videos or channels from search results); excluding Plaintiffs' videos from the "Up Next" or "Trending" feature on YouTube; interfering with Plaintiffs' livestream broadcasts by throttling, pixelating, or otherwise disrupting the broadcast; "ad bombing" Plaintiffs' videos by interrupting Plaintiffs' videos with constant streaming or banner ads; recommending hostile, irrelevant, or extraneous videos in the "Up Next" feature on Plaintiffs' videos; permitting hate speech on Plaintiffs' videos; and ignoring and obstructing Plaintiffs' internal appeals of YouTube's decisions to suspend or restrict Plaintiffs' channels and videos. *Id.* at ¶ 65. Plaintiffs allege that Defendants' conduct "creates censorship, restraint of speech, and discrimination based on the race, identity, and/or viewpoint of Plaintiffs and all other persons similarly situated." *Id.* at ¶ 121.

Furthermore, Plaintiffs allege that Defendants are motivated to act in an anticompetitive manner towards Plaintiffs because Defendants produce their own content and distribute it on YouTube. *Id.* at ¶ 40. Thus, Plaintiffs allege, Defendants act in ways that harm Plaintiffs' videos

Case No. 20-CV-04011-LHK
ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS; DENYING PLAINTIFFS' MOTION TO STRIKE

and favor Defendants' own content.  *Id.* at ¶ 42.  These actions include the conduct described above, such as tagging videos for Restricted Mode, restricting monetization, shadow banning videos and channels, throttling livestream videos, and excluding Plaintiffs' videos from the "Up Next" feature on YouTube.  *Id.* at ¶ 65.  These actions were taken, Plaintiffs allege, in order to favor Defendants' own content and push users to view Defendants' content.  *Id.* at ¶ 42–43.

**B.  Procedural History**

On June 16, 2020, Plaintiffs filed a complaint in the instant case.  ECF No. 1.  On August 17, 2020, Plaintiffs filed an amended complaint.  ECF No. 21.

On August 26, 2020, the Court granted the parties' stipulation to allow Plaintiffs to file a Second Amended Complaint.  ECF No. 25.

On September 21, 2020, Plaintiffs filed a Second Amended Complaint.  ECF No. 26.  The same day, Plaintiffs filed a Revised Second Amended Complaint ("SAC").  ECF No. 27.  Plaintiffs' SAC alleges the following causes of action: (1) request for a declaratory judgment regarding the scope and constitutionality of Section 230 of the CDA; (2) equitable claim for an accounting of debts; (3) conversion; (4) replevin; (5) breach of contract; (6) breach of implied covenant of good faith and fair dealing; (7) promissory estoppel; (8) discrimination in contract in violation of 42 U.S.C. § 1981; (9) discrimination in violation of the Unruh Civil Rights Act; (10) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125; (11) unlawful, deceptive, and unfair business practices in violation of California Business & Professions Code § 17200, *et seq*. ("UCL"); (12) violation of Article I, Section 2 of the California Constitution; and (13) violation of the First Amendment of the United States Constitution.  *Id.* at ¶¶ 366–583.

Plaintiffs also seek to certify a "a putative class of similarly situated persons who use or have used YouTube or any of the services that Defendants offer in connection with YouTube and who come within the definition or classification of a protected class of persons under 42 U.S.C. 1981."  *Id.* at ¶ 346.

On November 2, 2020, Defendants filed a motion to dismiss.  ECF No. 29 ("Mot.").  On

6

1    January 19, 2021, Plaintiffs filed an opposition to Defendants' motion to dismiss.  ECF No. 38.

2        On January 20, 2021, Plaintiffs filed a motion to strike.  ECF No. 39 ("MTS").

3        On January 25, 2021, Plaintiffs filed a corrected opposition to Defendants' motion to

4    dismiss.  ECF No. 42.  The same day, Plaintiffs filed a further revised and corrected opposition to

5    Defendants' motion to dismiss.  ECF No. 43 ("Opp.").

6        On February 3, 2021, the United States filed a motion to set a time for intervention.  ECF

7    No. 45.  On February 9, 2021, the Court granted the United States' motion.  ECF No. 49.

8        On February 10, 2021, Defendants filed an opposition to Plaintiffs' motion to strike.  ECF

9    No. 50.  On February 24, 2021, Plaintiffs filed a reply to the motion to strike.  ECF No. 51.

10       On February 24, 2021, Defendants' filed a reply to the motion to dismiss.  ECF No. 52

11   ("reply").

12       On March 22, 2021, the United States filed a notice of intervention and a brief regarding

13   the constitutionality of Section 230 of the CDA.  ECF Nos. 53, 54.  On March 29, 2021, Plaintiffs

14   filed a response to the United States' brief.  ECF No. 55.

15       On April 7, 2021, Defendants filed an administrative motion for leave to file a response to

16   Plaintiffs' March 29, 2021 response.  ECF No. 56.  Specifically, Defendants seek to address

17   several issues raised by Plaintiffs regarding the scope and constitutionality of Section 230 of the

18   CDA.  *Id.* at 2.  On April 11, 2021, Plaintiffs filed an opposition to Defendants' administrative

19   motion.  ECF No. 57.  The Court does not reach the scope or constitutionality of Section 230, and

20   therefore DENIES Defendants' administrative motion as moot.

21       On May 19, 2021, the United States filed a notice regarding a recent executive order.  ECF

22   No. 62.

23   **II.    LEGAL STANDARD**

24       **A.  Motion to Dismiss Pursuant to 12(b)(6)**

25       Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an

26   action for failure to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell*

27

28
     Case No. 20-CV-04011-LHK
     ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS; DENYING
     PLAINTIFFS' MOTION TO STRIKE

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, a court need not accept as true allegations contradicted by judicially noticeable facts. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**B. Leave to Amend**

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted). Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). Whether to grant leave to amend a pleading under Rule 15(a) is a procedural matter governed by the law of the regional circuit. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009).

**III.     DISCUSSION**

In their motion to dismiss, Defendants argue that Plaintiffs' SAC should be dismissed for the following reasons: (1) Plaintiffs' SAC fails to adequately plead any cause of action; (2)

8

United States District Court
Northern District of California

Plaintiffs' SAC fails to include a short and plain statement of claims in violation of Federal Rule of Civil Procedure 8; and (3) Section 230 of the CDA bars Plaintiffs' causes of action because Plaintiffs seek to hold Defendants liable for editorial decisions.  The Court finds that Plaintiffs' SAC should be dismissed for failure to state any federal claim, and therefore the Court does not reach Defendants' further arguments for dismissal.  The Court first addresses Plaintiffs' federal causes of action, and then turns to Plaintiffs' state law causes of action.

### A.  Claim for Racial Discrimination in Contract in Violation of Section 1981

First, Plaintiffs allege that Defendants have engaged in racial discrimination in the making and enforcement of contracts in violation of 42 U.S.C. § 1981.  SAC at ¶¶ 467–476.  Defendants argue that Plaintiffs have failed to state a claim under Section 1981 and therefore Plaintiffs' claim should be dismissed.

Section 1981 states that all persons within the United States "shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  This right includes "the right to the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship . . ." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1122 (9th Cir. 2008).  To state a claim under Section 1981, a plaintiff must establish three elements: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute." *Keum v. Virgin America Inc.*, 781 F. Supp. 2d 944, 954 (N.D. Cal. 2011); *see also Lenk v. Sacks, Ricketts, & Case LLP*, 2020 WL 2793480, at *4 (N.D. Cal. May 29, 2020) (same).  The Ninth Circuit has made clear that Plaintiffs must "allege facts that would support an inference that defendants intentionally and purposefully discriminated against them." *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1313 (9th Cir. 1992), *abrogated on other grounds by Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1055 (9th Cir. 2008).  Importantly, a plaintiff must "plead and then prove that its injury would not have occurred 'but for' the defendant's unlawful conduct." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1013

9

1    (2020).

2         In the instant case, Plaintiffs allege that Defendants have restricted and demonetized

3    Plaintiffs' videos on YouTube on account of Plaintiffs' race, and that "Plaintiffs are denied the

4    same 'benefits, privileges, terms, and conditions' as White YouTube users."  Opp. at 10 (quoting

5    42 U.S.C. § 1981(b)); *see also* SAC at ¶¶ 467–476.  Thus, Plaintiffs allege that "[w]hile

6    Defendants have impaired and denied, and continue to impair and deny, Plaintiffs' contractual

7    benefits under the TOS and related agreement(s), similarly situated persons who are not protected

8    under the section 1981 protected class were not similarly treated."  *Id.* at ¶ 475.

9         Defendants argue that these allegations are insufficient to state a claim for racial

10   discrimination in the making or enforcement of contracts under Section 1981 because Plaintiffs

11   have failed to adequately allege intentional racial discrimination.  Mot. at 8.  Specifically,

12   Defendants argue that Plaintiffs have failed to (1) identify any YouTube policy that discriminates

13   on its face against Plaintiffs on the basis of race; or (2) allege facts that establish that defendants

14   intentionally discriminated against Plaintiffs on the basis of race.  *Id.* at 8–9.  Furthermore,

15   Defendants point out that Plaintiffs admit that only a portion of Plaintiffs' videos have been

16   restricted or demonetized, and "YouTube often re-monetized or removed restrictions from

17   [Plaintiffs'] videos (when appropriate under YouTube's policies) in response to their appeals."  *Id.*

18   at 10 (citing SAC at ¶¶ 233–235, 265, 320).

19        For the reasons stated below, the Court agrees with Defendants that Plaintiffs have failed

20   to state a claim under Section 1981 because Plaintiffs' SAC does not "allege facts that would

21   support an inference that defendants intentionally and purposefully discriminated against them."

22   *Imagineering*, 976 F.2d at 1313; *see also Brignac v. Yelp Inc.*, 2019 WL 2372251, at *5 (N.D. Cal.

23   June 5, 2019) (same).

24        Plaintiffs argue that they have provided sufficient factual allegations to state a claim under

25   Section 1981 for two reasons: (1) Plaintiffs allege that Defendants have restricted and

26   demonetized Plaintiffs' videos on the basis of race, and Defendants do not restrict and demonetize

27

28   Case No. 20-CV-04011-LHK
     ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS; DENYING
     PLAINTIFFS' MOTION TO STRIKE

white content creators' videos; (2) Defendants have admitted that they discriminate against Plaintiffs and other content creators on the basis of race.  Opp. at 10.  The Court addresses each argument in turn.

First, Plaintiffs allege that YouTube has restricted and demonetized Plaintiffs' videos despite the fact that these videos comply with YouTube's TOS and other regulations.  *See* SAC at ¶¶ 134–144.  Plaintiffs further allege that Defendants do not restrict and demonetize the videos of white content creators that violate YouTube's TOS and guidelines.  *Id.* at ¶ 475.  Thus, Plaintiffs allege that Defendants discriminate against Plaintiffs because of Plaintiffs' race.  *Id.*  at ¶ 474.

However, in order to state a Section 1981 claim under Ninth Circuit law, Plaintiffs must allege sufficient facts to support an inference that "defendants intentionally and purposefully discriminated against them." *Imagineering*, 976 F.2d at 1313.  Plaintiffs have failed to meet that standard here based on Plaintiffs' allegations regarding Defendants' moderation decisions. Specifically, Plaintiffs' only factual allegation in support of an inference that Defendants intentionally and purposefully discrimination against Plaintiffs is Plaintiffs' belief that Defendants' moderation decisions were made because of Plaintiffs' race.

Plaintiffs' "personal belief of discrimination, without any factual support, is insufficient to satisfy federal pleading standards." *Moralez v. Whole Foods Mkt. California, Inc.*, 2016 WL 845291, at * 2 (N.D. Cal. Mar. 4, 2016).  "Rather, plaintiff must allege some facts that demonstrate that race was the reason for defendant's actions." *Williams v. Tobener*, 2016 WL 5235039, at *2 (N.D. Cal. Sept. 22, 2016) (internal quotation marks and citation omitted).  As such, Plaintiffs must provide further factual allegations that support an inference that Defendants "intentionally and purposefully discriminated against them" on the basis of race.  *Imagineering*, 976 F.2d at 1313.

The Court notes that Plaintiffs do not allege that they have been removed from YouTube or prevented from posting their videos on YouTube.  Furthermore, Plaintiffs' own allegations suggest that a large percentage of Plaintiffs' videos remain available in Restricted Mode and

United States District Court
Northern District of California

eligible for monetization on YouTube.  For example, Plaintiffs allege that their videos have received tens of millions of views and some Plaintiffs have received thousands of dollars in advertising revenue.  SAC at ¶¶ 18–26 (providing allegations regarding Plaintiffs' success on YouTube).  The fact that so many of Plaintiffs' videos remain freely available on YouTube and capable of receiving advertising revenue weighs against an inference that Defendants have intentionally and purposefully discriminated against Plaintiffs on the basis of race.  Were race the motivating factor behind Defendants' moderation decisions, the Court would expect that Plaintiffs' videos would be largely unavailable and demonetized.  For many Plaintiffs, the opposite appears to be true.  *See, e.g., id.* at 248 (169 out of 178 of Plaintiff Lewis' videos are viewable in Restricted More).  Thus, Plaintiffs must provide further factual allegations in order to support their claim for intentional racial discrimination under Section 1981.

Plaintiffs argue that they have provided further allegations in support of an inference of intentional and purposeful discrimination through allegations that Defendants have admitted to discriminating against Plaintiffs and other content creators on the basis of race.  Opp. at 10.  For the reasons below, Plaintiffs further allegations are insufficient to support an inference that Defendants "intentionally and purposefully discriminated" against Plaintiffs because of race.

First, Plaintiffs allege that on March 19, 2017, Defendants admitted that they improperly censored videos made by LGBTQ+ users through Restricted Mode because of the identity of the speaker.  SAC at ¶ 49.  Second, Plaintiffs allege that during a call between a YouTube user and Google employee in Bangalore, India in January of 2018, the Google employee told the YouTube user that the user's video was not eligible for advertising services because filtering tools had identified the user as being involved with the "gay thing."  *Id.* at ¶ 54.  However, neither of these allegations regarding Defendants' treatment of LGBTQ+ YouTube users provide any support to Plaintiffs' allegation that Defendants intentionally and purposefully discriminated against Plaintiffs because of Plaintiffs' race.  Indeed, neither allegation involves Plaintiffs or racial discrimination of any kind.

Case No. 20-CV-04011-LHK
ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS; DENYING
PLAINTIFFS' MOTION TO STRIKE

1     Plaintiffs further allege that on September 14, 2017, Defendants invited YouTube content

2 creators to a meeting and admitted that the content filtering algorithm used by YouTube targeted

3 African American, LGBTQ+, and other minority users.  SAC at ¶ 51.  Plaintiffs allege that

4 Defendants "admitted that this resulted in the application of erroneous or unwarranted blocking

5 restrictions and access denials for users that were based, at least in part, on the user's racial or

6 sexual identity or viewpoints."  *Id.*  Defendants dispute that any such admission was made at this

7 meeting.  Reply at 3.

8     However, even accepting Plaintiffs' allegations as true, these allegations do not support

9 Plaintiffs' argument that Defendants intentionally and purposefully discriminated against Plaintiffs

10 on the basis of race by intentionally restricting and demonetizing Plaintiffs' videos.  First,

11 Plaintiffs' own description of the meeting indicates that Defendants stated that any restrictions

12 placed on users' content was an error caused by the YouTube algorithm used to filter content,

13 rather than an attempt by Defendants to intentionally discriminate against content creators on the

14 basis of race.  SAC at ¶¶ 51–52.  Moreover, Plaintiffs' allegations regarding what was said to

15 content creators at this meeting are vague.  *Id.*  In order to show that Defendants "intentionally and

16 purposefully" discriminated against Plaintiffs on the basis of race, Plaintiffs must provide more

17 clarity as to what admissions Defendants allegedly made regarding any intentional racial bias in

18 the filtering and demonetization of content creators' videos.

19     Finally, Plaintiffs argue in the opposition brief that in December of 2020, Google fired

20 Timnit Gebru ("Gebru"), the co-leader of Google's Ethical A.I. team, because Gebru complained

21 about Defendants' "biased filtering and blocking tools."  Opp. at 10.  Plaintiffs argue that this

22 action demonstrates that Defendants discriminated against Plaintiffs because of race.  *Id.*  First,

23 this allegation is not contained in or incorporated by reference into Plaintiffs' SAC and Plaintiffs

24 have raised it for the first time in their opposition brief.  *Id.*  Therefore, the Court may not rely

25 upon it to decide the instant motion to dismiss.  *See Schneider v. California Dept. of Corrections*,

26 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6)

27

28
Case No. 20-CV-04011-LHK
ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS; DENYING
PLAINTIFFS' MOTION TO STRIKE

1     dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a

2     memorandum in opposition to a defendant's motion to dismiss."). Thus, although the Court

3     "accepts factual allegations in the complaint as true," *Manzarek*, 519 F.3d at 1031, Plaintiffs'

4     allegation regarding Timnit Gebru is not contained in the complaint, incorporated by reference

5     into the complaint, or subject to judicial notice. The Court therefore may not rely upon this

6     allegation "when ruling on a motion to dismiss." *Id.* at 1030–31.

7          Moreover, even if the Court could rely on this allegation, it would be insufficient to

8     support an inference that Defendants intentionally and purposefully discriminated against

9     Plaintiffs because of race. Specifically, Plaintiffs allege only that Gebru was fired because she

10    "complained about Defendants' biased filtering and blocking tools" and "wrote about racial bias

11    embedded in Defendants' A.I. and filtering tools." Opp. at 10, 1 n.1. However, Plaintiffs do not

12    allege any further details about this alleged bias. As such, the Court has no basis to know what

13    form of racial bias Gebru allegedly complained of, and if that biased had any discriminatory effect

14    on Plaintiffs.

15         Furthermore, Plaintiffs do not allege that the filtering and blocking tools were used by

16    YouTube. Plaintiffs only allege that Gebru led the Ethical A.I. team at Google. *Id.* The Court has

17    no way of knowing if the filtering and blocking tools in question were used only at Google, or if

18    they were also used at YouTube. Plaintiffs have thus omitted any allegations that clarify the

19    connection between these filtering and blocking tools and Defendants' alleged moderation

20    decisions on YouTube. *See id.* Accordingly, even if the Court could rely on Plaintiffs' allegation

21    regarding Gebru, which it cannot, that allegation would be insufficient to support an inference that

22    Defendants intentionally and purposefully discriminated against Plaintiffs on the basis of race.

23         In sum, to state a claim under Section 1981, Plaintiffs must adequately plead "an intent to

24    discriminate on the basis of race by the defendant." *Keum*, 781 F. Supp. 2d at 954. Under Ninth

25    Circuit law, this requires Plaintiffs to "allege facts that would support an inference that defendants

26    intentionally and purposefully discriminated against [Plaintiffs]" on the basis of race.

27

28    Case No. 20-CV-04011-LHK
      ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS; DENYING
      PLAINTIFFS' MOTION TO STRIKE

United States District Court
Northern District of California

*Imagineering*, 976 F.2d at 1313.  Although Plaintiffs allege that Defendants restricted and demonetized Plaintiffs' videos because of race, Plaintiffs have failed to allege facts that support an inference that Defendants intentionally and purposefully discriminated against Plaintiffs on the basis of race.  As such, Plaintiffs have failed to state a claim under 42 U.S.C. § 1981 for racial discrimination in the making and enforcement of contracts.

Accordingly, the Court dismisses Plaintiffs' Section 1981 claim.  Because granting Plaintiffs leave to amend would not be futile, cause undue delay, or unduly prejudice Defendants, and Plaintiffs have not acted in bad faith, the Court grants leave to amend Plaintiffs' Section 1981 claim.  *See Leadsinger*, 512 F.3d at 532.

### B. First Amendment Claim

Plaintiffs next allege that Defendants violated their free speech rights under the First Amendment of the United States Constitution.  SAC at ¶ 571.  Defendants, in turn, argue that Plaintiffs' First Amendment claim must be dismissed because the Ninth Circuit has expressly held that Defendants are not state actors and therefore Defendants may not be sued under the First Amendment for their editorial decisions.  Mot. at 12.  Plaintiffs acknowledge that Defendants are private entities, but Plaintiffs argue in opposition that Defendants are liable for violations of the First Amendment because Defendants are engaged in state action to restrict speech in a manner that violates the First Amendment.  Opp. at 29.  The Court agrees with Defendants that Plaintiffs' First Amendment claim is squarely precluded by controlling precedent of the United States Supreme Court and the Ninth Circuit.

"It is, of course, a commonplace that the constitutional guarantee of free speech is a guarantee only against abridgment by government, federal or state."  *Hudgens v. N.L.R.B.*, 424 U.S. 507, 513 (1976).  However, in a limited set of circumstances, "a private entity can be a state actor for constitutional purposes."  *Prager Univ. v. Google LLC*, 2018 WL 1471939, at *5 (N.D. Cal. Mar. 26, 2018) (*Prager I*).  Specifically, "[t]he Supreme Court has articulated four tests for determining whether a private party's actions amount to state action: (1) the public function test;

15

United States District Court
Northern District of California

1   (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Tsao*

2   *v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (alteration adopted) (internal quotation

3   marks and citations omitted).  Plaintiffs argue that Defendants are engaged in state action for two

4   reasons.

5   First, Plaintiffs argue that the Ninth Circuit "acknowledged [in *Prager v. Google*] that

6   Defendants' power on YouTube was 'ubiquitous,'" and therefore Plaintiffs' allegations are

7   "sufficient to establish at the pleading stage that [Defendants] operate as a private government that

8   administers elections, performs surveillance and national security on behalf of law enforcement

9   and other agencies, and provides substantial data services that allow government agencies to

10  perform their functions."  Opp. at 28–29.  Accordingly, Plaintiffs argue that they have met their

11  burden to demonstrate state action.  *Id.*  The Court presumes that Plaintiffs allege that this conduct

12  meets the public function test for state action.  Regardless, this argument lacks merit.

13  Contrary to Plaintiffs' argument, the Ninth Circuit stated in *Prager v. Google* that the fact

14  "[t]hat YouTube is ubiquitous does not alter our public function analysis."  *Prager Univ. v.*

15  *Google LLC*, 951 F.3d 991, 998 (9th Cir. 2020) (*Prager III*).  Moreover, the Ninth Circuit made

16  clear that Defendants' actions with respect to editorial decisions on YouTube do not meet the

17  Ninth Circuit's test for a public function.  *Id.* ("YouTube also does not conduct a quintessential

18  public function through regulation of speech on a *public forum*." (emphasis in original)).  As such,

19  Defendants' publishing decisions do not qualify as state action.  *Id.*  Plaintiffs would have the

20  Court ignore the Ninth Circuit's clear holding that Defendants' challenged conduct on YouTube

21  does not qualify as state action under the First Amendment.  The Court will not do so.

22  Second, Plaintiffs argue that Defendants' invocation of Section 230(c) as an affirmative

23  defense is sufficient to create state action under the state compulsion test.  Opp. at 29.  Plaintiffs

24  point specifically to the United States Supreme Court's holding in *Skinner v. Railway Labor*

25  *Executives' Association*, 489 U.S. 602, 615 (1989), to argue that Defendants' invocation of

26  Section 230(c) constitutes state action.  However, *Skinner* is inapposite.

27

28  Case No. 20-CV-04011-LHK
ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS; DENYING
PLAINTIFFS' MOTION TO STRIKE

United States District Court
Northern District of California

1    In *Skinner*, a federal regulation required private railroad companies to subject railroad

2    employees to drug and alcohol tests after accidents, and authorized private railroad companies to

3    subject railroad employees to drug and alcohol tests after other safety violations. *Id.* at 606.

4    These tests were then required to be shipped directly to the Federal Railroad Administration. *Id.* at

5    610. The United States Supreme Court held that the mandatory tests constituted state action under

6    the Fourth Amendment because railroads were required to test employees by "compulsion of

7    sovereign authority," and then provide those tests to the Federal Railroad Administration. *Id.* at

8    614. Furthermore, the United States Supreme Court held that the authorized but not mandatory

9    tests also qualified as state action because the federal government "did more than adopt a passive

10   position toward the underlying private conduct." *Id.* at 615. Rather, the federal government

11   "encourage[ed], endors[ed], and participat[ed]" in the testing of railroad employees in order to

12   obtain drug and alcohol test after railroad safety violations. *Id.* at 615–16.

13   Plaintiffs argue that by passing Section 230, the federal government has engaged in "a non-

14   neutral, non-passive sanctioning of Defendants' discriminatory or unconstitutional conduct." Opp.

15   at 29. However, this argument lacks merit for two reasons. First, as another court in this district

16   recently observed, "nothing about Section 230 is coercive." *Divino Group LLC v. Google LLC*,

17   2021 WL 51715, at *6 (N.D. Cal. Jan. 6, 2021). Unlike the federal regulation at issue in *Skinner*,

18   Section 230 does not compel Defendants or any other private entity to take any action on behalf of

19   the federal government. Rather, "Section 230 was enacted, in part, to maintain the robust nature

20   of Internet communication, and accordingly, to keep government interference in the medium to a

21   minimum." *Batzel v. Smith*, 333 F.3d 1018, 1027 (9th Cir. 2003). Thus, Section 230 does not

22   coerce private entities like Defendants to take any action, including any action that violates

23   Plaintiffs' First Amendment rights.

24   Second, unlike the federal regulation at issue in *Skinner*, the federal government does not

25   "encourage, endorse, and participate" in the challenged editorial decisions of Defendants through

26   Section 230. Nor does Section 230 "give the government a right to supervise or obtain

27

28   Case No. 20-CV-04011-LHK
     ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS; DENYING
     PLAINTIFFS' MOTION TO STRIKE

United States District Court
Northern District of California

information about private activity," unlike the federal regulation at issue in *Skinner*.  *Divino*, 2021

WL 51715, at *6.  Rather, Section 230 is designed to keep the federal government removed from

the editorial decision-making process of internet companies like YouTube and Google.  *See*

*Batzel*, 333 F.3d 1018 at 1027 (explaining that the aim of Section 230 was "to keep government

interference in the medium to a minimum").  Thus, Section 230 lacks the necessary coercive

features that the United States Supreme Court has identified as the hallmark of coerced private

state action.  *See, e.g.*, *Skinner*, 489 U.S. at 615–16 (explaining how federal regulation coerced

private railroad companies to act on behalf of the federal government).

      Accordingly, Plaintiffs have failed to adequately plead that Defendants' conduct

constitutes state action.  As such, Plaintiffs have failed to state a claim for violation of the First

Amendment, and the Court therefore dismisses Plaintiffs' First Amendment claim.   Because

granting Plaintiffs leave to amend would not be futile, cause undue delay, or unduly prejudice

Defendants, and Plaintiffs have not acted in bad faith, the Court grants leave to amend Plaintiffs'

First Amendment claim.  *See Leadsinger*, 512 F.3d at 532.

    **C.  Lanham Act Claim**

      Defendants next argue that Plaintiffs have failed to state a claim for false advertising under

the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).  Mot. at 19.  Section 1125(a)(1)(B) forbids a person

from making any false or misleading statements of fact "in commercial advertising or promotion"

that "misrepresent[] the nature, characteristics, qualities or geographic origin of his or her or

another person's goods, services, or commercial activities."  15 U.S.C. § 1125(a)(1)(B); *see also*

*Prager III*, 951 F.3d at 999 (same).  Thus, to state a claim under Section 1125(a)(1)(B), Plaintiffs

must adequately allege: "(1) false statement of fact by the defendant in a commercial

advertisement about its own or another's product; (2) the statement actually deceived or has the

tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is

likely to influence the purchasing decision; (4) the defendant caused its false statement to enter

interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false

Case No. 20-CV-04011-LHK
ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS; DENYING
PLAINTIFFS' MOTION TO STRIKE

1    statement, either by direct diversion of sales from itself to defendant or by a lessening of the

2    goodwill associated with its products."  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134,

3    1139 (9th Cir. 1997) (citations omitted).

4         Plaintiffs allege that Defendants' restriction of some of Plaintiffs' videos in Restricted

5    Mode constitutes false advertising because it likely conveys to users that there is something

6    inappropriate in Plaintiffs' videos.  SAC at ¶ 492.  When a YouTube user enables Restricted Mode

7    and attempts to watch a video unavailable in Restricted Mode, the users see a statement that reads:

8    "This video is unavailable with Restricted Mode enabled.  To view this video, you will need to

9    disable Restricted Mode."  *Id.* at ¶ 140.  Plaintiffs allege that this statement is false because there

10   is no restricted material in Plaintiffs' videos.  *Id.* at ¶ 492.  Plaintiffs further allege that this

11   statement is misleading because it implies that Plaintiffs' videos violate YouTube's guidelines

12   concerning "nudity, vulgarity, violence, hate, [or] shocking or sexually explicit material."  *Id.* at ¶

13   492.  Plaintiffs argue that these implied statements are false because there is nothing inappropriate

14   in Plaintiffs' videos.  Instead, Defendants restrict Plaintiffs' videos based on race, identity, or

15   viewpoint, rather than for violation of Defendants' content guidelines.  *Id.* at ¶ 492–493.

16        Defendants argue that Plaintiffs have failed to state a claim for false advertising under the

17   Lanham Act because (1) the content described in the Restricted Mode guidelines is not

18   "commercial advertising or promotion"; (2) any implied statement from the inclusion of a video in

19   Restricted Mode has no "tendency to mislead, confuse or deceive" the public regarding Plaintiffs'

20   videos; and (3) Plaintiffs have not adequately alleged that Defendants' allegedly false

21   misrepresentations caused Plaintiffs harm.  Mot. at 19–20.

22        As Defendants correctly point out, Plaintiffs' claim for false advertising under the Lanham

23   Act has already been squarely rejected by the Ninth Circuit in *Prager III*.[2]  In *Prager III*, the Ninth

24

25   _____

26   [2] Defendants argue that Plaintiffs' claim fails for the same reason the identical claim failed in
     *Prager I* and *Prager III*.  Plaintiffs then proceed to explain at great length in their opposition brief
27   why *Prager I* is distinguishable, but Plaintiffs ignore that the Ninth Circuit addressed an identical
     claim in *Prager III*.  *See* Opp. at 17–18.

                                                        19
28   Case No. 20-CV-04011-LHK
     ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS; DENYING
     PLAINTIFFS' MOTION TO STRIKE

United States District Court
Northern District of California

Circuit explained that YouTube's statements as part of Restricted Mode are not actionable under the Lanham Act for three reasons.  First, the Ninth Circuit explained that "YouTube's statements concerning its content moderation policies do not constitute 'commercial advertising or promotion' as the Lanham Act requires.  The statements about Restricted Mode were made to explain a user tool, not for a promotional purpose to 'penetrate the relevant market' of the viewing public."  *Prager III*, 951 F.3d at 999–1000 (internal citation omitted).

Second, the Ninth Circuit explained that "designation of certain [] videos for Restricted Mode [was not] part of an advertising or promotion or a misrepresentation as to the videos.  The designation and the reason for tagging videos to be unavailable in Restricted Mode are not made available to the public."  *Id.* at 1000.

Finally, the Ninth Circuit explained that the fact that a video was unavailable under Restricted Mode did not imply a specific representation from YouTube regarding that video.  *Id.* "Although a false advertising claim may be based on implied statements, those statements must be both specific and communicated as to 'deceive[] a significant portion of the recipients.'"  *Id.* (quoting *William H. Morris Co. v. Grp. W, Inc.*, 66 F.3d 255, 258 (9th Cir. 1995)).  The only representation that a user sees when that user tries to view a video unavailable in Restricted Mode is a statement that the video is "unavailable with Restricted Mode enabled."  *Id.*  The Ninth Circuit concluded that this notice does not have a "a tendency to mislead, confuse or deceive" YouTube users.  *Id.*

Plaintiffs challenge allegedly false statements by Defendants that are identical to those considered by the Ninth Circuit in *Prager III*.  Specifically, Plaintiffs challenge the statement that appears when a Restricted Mode user attempts to access a video that is unavailable.  That statement provides only that "This video is unavailable with Restricted Mode enabled.  To view this video, you will need to disable Restricted Mode."  SAC at ¶ 140.  This is the exact statement that the Ninth Circuit found not actionable under the Lanham Act in *Prager III*.

Plaintiffs attempt to distinguish *Prager III* by arguing that Plaintiffs have now pled

20

1    allegations that Defendants are in direct competition with Plaintiffs for viewers and advertising

2    revenue, and that Defendants use Restricted Mode to steer users away from Plaintiffs' videos for

3    anticompetitive purposes.  Opp. at 17.  Moreover, Plaintiffs argue that they have adequately

4    alleged that by tagging Plaintiffs' videos for Restricted Mode, Defendants are specifically

5    communicating that "Plaintiffs' videos contain restricted content when they do not."  *Id.*

6           However, even if Plaintiffs had adequately pled allegations to establish both of these

7    claims, Plaintiffs' allegations are still precluded by the Ninth Circuit's holding in *Prager III*.

8    Specifically, Plaintiffs' allegations still do not adequately plead that Defendants' "statements

9    concerning [their] content moderation policies . . . constitute 'commercial advertising or

10   promotion' as the Lanham Act requires."  *Prager III*, 951 F.3d at 999–1000.  As the Ninth Circuit

11   made clear, Defendants' statements regarding Restricted Mode's "terms of service, community

12   guidelines, and contracts are not advertisements or a promotional campaign," but rather simply

13   explain to YouTube users the nature of the Restricted Mode tool.  *Id; see also First Health Grp.*

14   *Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 804 (7th Cir. 2001) (explaining that statements found

15   in a "contract" are not "commercial advertising or promotion" for purposes of a false advertising

16   claim under the Lanham Act).

17          Plaintiffs' allegations regarding Defendants' competition with Plaintiffs for viewers do not

18   transform Defendants' statements regarding YouTube's moderation policies into "commercial

19   advertising or promotion."  Thus, following the Ninth Circuit's clear guidance in *Prager III*, the

20   Court finds that Plaintiffs have failed to adequately allege that Defendants engaged in a "false or

21   misleading representation of fact" "in commercial advertising or promotion."  *Id.* at 999 (quoting

22   15 U.S.C. § 1125(a)(1)(B)).

23          Finally, even if Plaintiffs had adequately alleged that Defendants' policies and statements

24   regarding Restricted Mode constituted "commercial advertising or promotion," Plaintiffs have

25   additionally failed to sufficiently allege that Plaintiffs "ha[ve] been or [are] likely to be injured as

26   a result of" Defendants' allegedly false statements regarding Restricted Mode.  *Southland*, 108

27

28   Case No. 20-CV-04011-LHK
     ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS; DENYING
     PLAINTIFFS' MOTION TO STRIKE

United States District Court
Northern District of California

United States District Court
Northern District of California

1    F.3d at 1139.  Plaintiffs allege that Defendants' statements "influence and affect" a user's or

2    advertiser's viewing and purchasing decisions, and "categorically control every user or

3    advertiser's purchasing decisions because the statement results blocking [sic] of a user or

4    advertisers access to the video on YouTube and precludes the user or advertiser from ever

5    accessing, viewing and purchasing the video or purchasing and placing [sic] ad for the video."

6    SAC at ¶¶ 497–498.  Plaintiffs therefore appear to argue that Plaintiffs have been injured by

7    Defendants' allegedly false statements because some users will be unable to view Plaintiffs'

8    videos in Restricted Mode and some advertisers may not be able to place advertisements on

9    Plaintiffs' restricted videos.

10          However, neither of these injuries flows from Defendants' allegedly false statements

11   regarding Restricted Mode.  Rather, both harms flow from the fact that Defendants have limited

12   access to Plaintiffs' videos in Restricted Mode.  The statements regarding Restricted Mode do not

13   cause this harm.  Rather, it is the unavailability of the video itself that harms Plaintiffs.  Thus,

14   Plaintiffs have failed to allege that they "ha[ve] been or [are] likely to be injured as a result of"

15   Defendants' allegedly false statements.  *Southland*, 108 F.3d at 1139.

16          As such, Plaintiffs have failed to state a claim for false advertising under the Lanham Act.

17   Accordingly, the Court dismisses Plaintiffs' Lanham Act claim.  Because granting Plaintiffs leave

18   to amend would not be futile, cause undue delay, or unduly prejudice Defendants, and Plaintiffs

19   have not acted in bad faith, the Court grants leave to amend Plaintiffs' Lanham Act claim.  *See*

20   *Leadsinger*, 512 F.3d at 532.

21          **D.  State Law Claims**

22          Plaintiffs' remaining claims are based on state law.  Specifically, Plaintiffs assert nine

23   substantive state law causes of action for: (1) violation of Article I, Section 2 of the California

24   Constitution; (2) violation of the Unruh Civil Rights Act; (3) violation of the UCL; (4) breach of

25   the implied covenant of good faith and fair dealing; (5) equitable claim for an accounting of debts;

26   (6) conversion; (7) replevin; (8) breach of contract; and (9) promissory estoppel.  *See* SAC at ¶¶

27

28   Case No. 20-CV-04011-LHK
     ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS; DENYING
     PLAINTIFFS' MOTION TO STRIKE

1  366–583.

2       A federal court may exercise supplemental jurisdiction over state law claims "that are so

3  related to claims in the action within [the Court's] original jurisdiction that they form part of the

4  same case or controversy under Article III of the United States Constitution."  28 U.S.C. §

5  1367(a).  Conversely, a court may decline to exercise supplemental jurisdiction where it "has

6  dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); *see also*

7  *Albingia Versicherungs A.G. v. Schenker Int'l, Inc.*, 344 F.3d 931, 937–38 (9th Cir. 2003) (as

8  amended) (holding that Section 1367(c) grants federal courts the discretion to dismiss state law

9  claims if all federal claims in the case have been dismissed).  In considering whether to retain

10  supplemental jurisdiction, a district court should consider factors such as "economy, convenience,

11  fairness, and comity."  *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc)

12  (citations and internal quotation marks omitted).  However, "in the usual case in which all federal-

13  law claims are eliminated before trial, the balance of factors . . . will point toward declining to

14  exercise jurisdiction over the remaining state law claims."  *Exec. Software N. Am., Inc. v. U.S.*

15  *Dist. Court*, 24 F.3d 1545, 1553 n.4 (9th Cir. 1994) (emphasis omitted), *overruled on other*

16  *grounds by Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

17       Here, the factors of economy, convenience, fairness, and comity support dismissal of

18  Plaintiffs' remaining state law claims.  This case is still at the pleading stage and federal judicial

19  resources are conserved by dismissing the state law claims at this stage.  Furthermore, the Court

20  finds that dismissal promotes comity as it enables California courts to interpret questions of state

21  law.  This is an important consideration in the instant case because Plaintiffs assert a claim that

22  demands an analysis of the intersection of Article I, Section 2 of the California Constitution and

23  complex and quickly changing social media technologies.

24       Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state

25  law claims, and instead dismisses those claims.  However, the Court provides leave to amend

26  because Plaintiffs may be able to plead a federal cause of action that warrants the Court's exercise

27

28  Case No. 20-CV-04011-LHK
ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS; DENYING
PLAINTIFFS' MOTION TO STRIKE

1   of supplemental jurisdiction over Plaintiffs' state law claims.

2   **E. Claim for Declaratory Relief Regarding Section 230 of the CDA**

3          Finally, Plaintiffs seek a declaration that Section 230 either does not immunize

4   Defendants' conduct or is unconstitutional.  *See* SAC at ¶¶ 367–412.  Plaintiffs appear to seek this

5   declaration in anticipation that Defendants will assert Section 230 immunity as an affirmative

6   defense to Plaintiffs' claims in the instant case.  Plaintiffs argue that Section 230 either (1) does

7   not apply to Defendants' conduct challenged in this case, or (2) immunize constitutional violations

8   and therefore is unconstitutional.  Opp. at 24.

9          Section 230 "immunizes providers of interactive computer services against liability arising

10  from content created by third parties . . ."  *Fair Hous. Council of San Fernando Valley v.*

11  *Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc).  Accordingly, "any activity

12  that can be boiled down to deciding whether to exclude material that third parties seek to post

13  online is perforce immune under section 230." *Id.* at 1170–71.  In the instant case, Defendants

14  have asserted Section 230 as an affirmative defense, but the Court declines to reach Defendants'

15  affirmative defense because the Court dismisses Plaintiffs' federal claims and declines to exercise

16  supplemental jurisdictional over Plaintiffs' state claims.  For the reasons explained below, the

17  Court therefore dismisses Plaintiffs' claim for declaratory relief.

18         The Court's jurisdiction under the Declaratory Judgment Act is discretionary, and the

19  Court has an obligation to exercise caution in deciding whether to exercise that discretion.  *See* 28

20  U.S.C. § 2201(a) (stating that under the Declaratory Judgment Act, a court "may declare the rights

21  and other legal relations of any interested party"); *see also MedImmune, Inc. v. Genentech, Inc.*,

22  549 U.S. 118, 136 (2007) (explaining that Section 2201 "confer[s] on federal courts unique and

23  substantial discretion in deciding whether to declare the rights of litigants." (internal citation

24  omitted)).  As such, the Court may consider equitable, prudential, and policy arguments when

25  deciding whether to exercise its discretionary jurisdiction.  *Id.*  The Court dismisses Plaintiffs'

26  declaratory judgment claim for two reasons.

27

28  Case No. 20-CV-04011-LHK
    ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS; DENYING
    PLAINTIFFS' MOTION TO STRIKE

United States District Court
Northern District of California

First, Plaintiffs appear to seek declaratory relief in anticipation that Defendants will assert Section 230 as an affirmative defense to Plaintiffs' claims.  However, "using the Declaratory Judgment Act to anticipate an affirmative defense is not ordinarily proper."  *Divino*, 2021 WL 51715, at *11 (quoting *Veoh Networks, Inc. v. UMG Recordings, Inc.*, 522 F. Supp. 2d 1265, 1271 (S.D. Cal. 2007)).  Thus, dismissal of a claim under the Declaratory Judgment Act is appropriate where a claim is intended to anticipate an affirmative defense.  This principle is particularly relevant where, as is the case here, the Court does not consider Defendants' affirmative defense in granting Defendants' motion to dismiss.  *Id.*

Second, the Court is mindful of the doctrine of constitutional avoidance.  As the United States Supreme Court has made clear, "[i]f there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable."  *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944); *see also Dep't of Com. v. U.S. House of Representatives*, 525 U.S. 316, 343 (1999) (same).  The Court does not reach Defendants' affirmative defense that relies on Section 230.  Moreover, the Court has already dismissed Plaintiffs' federal claims and declined supplemental jurisdiction over Plaintiffs' state claims.  As such, the Court finds that it would be inappropriate to adjudicate the constitutionality of Section 230 at this stage in the instant case because such adjudication is avoidable and unnecessary to decide Defendants' motion to dismiss.

Accordingly, the Court dismisses Plaintiffs' claim for declaratory relief.  Because granting Plaintiffs leave to amend would not be futile, cause undue delay, or unduly prejudice Defendants, and Plaintiffs have not acted in bad faith, the Court grants leave to amend Plaintiffs' claim for declaratory relief.  *See Leadsinger*, 512 F.3d at 532.

**F. Motion to Strike, or in the Alternative Convert the Motion to Dismiss into a Rule 56 Motion**

Plaintiffs have filed a separate motion to strike numerous portions of Defendants' motion to dismiss and 14 exhibits attached to Defendants' motion to dismiss.  MTS at 2–3.  Plaintiffs

25

Case No. 20-CV-04011-LHK
ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS; DENYING PLAINTIFFS' MOTION TO STRIKE

1   argue that the challenged exhibits and sections of the motion to dismiss are not relevant to the

2   motion to dismiss because they concern documents not contained within the SAC and lack

3   "foundation facts." *Id.* at 2.  Plaintiffs also argue that if the Court does not strike these exhibits

4   and sections of the motion to dismiss, the Court should convert Defendants' motion to dismiss into

5   a motion for summary judgment. *Id.* at 11.  Defendants argue in opposition that Plaintiffs' motion

6   to strike is both procedurally deficient and lacks merit.  ECF No. 50, at 1.  The Court agrees with

7   Defendants.

8        First, Plaintiffs' motion to strike violates Civil Local Rule 7-3(a).  Civil Local Rule 7-3(a)

9   states that "[a]ny evidentiary and procedural objections to the motion must be contained within the

10  brief or memorandum."  Plaintiffs' objection to Defendants' motion to dismiss and attached

11  exhibits was filed separately from Plaintiffs' opposition brief, despite the fact that the Court

12  granted the parties' request to extend the page limit of the opposition brief by five pages.  *See* ECF

13  No. 25, at 2.  Plaintiffs essentially gave themselves 15 additional pages to attack Defendants'

14  motion to dismiss without leave from the Court, in violation of Civil Local Rule 7-3(a).  "Denial

15  of a motion as the result of a failure to comply with local rules is well within a district court's

16  discretion." *Tri-Valley CAREs v. U.S. Dep't of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012).  As

17  such, the Court may deny Plaintiffs' motion to strike on this basis alone.  *See, e.g., Nevarez v.*

18  *Forty Niners Football Co., LLC*, 326 F.R.D. 562, 591 (N.D. Cal. 2018) (striking defendants'

19  separately filed objections for failing to comply with Civil Local Rule 7-3(a)).

20       Second, Federal Rule of Civil Procedure 12(f) provides that a court may "strike from a

21  pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."

22  Fed. R. Civ. P. 12(f).  A motion to dismiss is not a pleading.  Thus, the Court will not grant a

23  motion to strike Defendants' motion to dismiss and attached exhibits.  *See Dei Gratia v. Stafford*,

24  2015 WL 332633, at *2 n.1 (N.D. Cal. Jan. 23, 2015) ("A motion to dismiss is not a 'pleading'

25  within the meaning of the Rule. . . . Plaintiff's motions to strike are denied in their entirety.");

26  *Powell v. Fid. Nat. Fin., Inc.*, 2003 WL 22134854, at *2 (N.D. Cal. Sept. 9, 2003) ("[A] motion to

27

28  Case No. 20-CV-04011-LHK
    ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS; DENYING
    PLAINTIFFS' MOTION TO STRIKE

United States District Court
Northern District of California

1    dismiss is not a 'pleading.'").  Accordingly, the Court may deny Plaintiffs' motion to strike on this

2    independent basis.

3           Finally, Plaintiffs argue that if the Court declines to strike portions of Defendants' motion

4    to dismiss and attached exhibits, the Court should convert the motion to dismiss into a motion for

5    summary judgment.  "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court

6    considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule

7    56 motion for summary judgment, and it must give the nonmoving party an opportunity to

8    respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).  However, a court may

9    "consider certain materials—documents attached to the complaint, documents incorporated by

10   reference in the complaint, or matters of judicial notice—without converting the motion to dismiss

11   into a motion for summary judgment." *Id.* at 908.

12          In the instant case, the majority of, if not all, exhibits that Plaintiffs move to strike fall into

13   the category of documents that are incorporated by reference into the complaint.  Specifically,

14   many of the challenged exhibits are the various terms of service that form the basis of Plaintiffs'

15   breach of contract and Section 1981 claims, and which Plaintiffs quote throughout the SAC.  *See,*

16   *e.g.*, YouTube Terms of Service, ECF No. 29-3 ("Exhibit 1"); YouTube Community Guidelines,

17   ECF No. 29-5 ("Exhibit 3"); and YouTube Partner Program Terms, ECF No. 29-12 ("Exhibit

18   10").  In fact, Plaintiffs admit that only Exhibits 7, 11, and 13 "do not constitute contract

19   documents and were not incorporated by reference or quoted in the SAC."  MTS at 13.

20          Plaintiffs may not bring multiple claims on the basis of the parties' contracts and quote

21   from those contracts in the SAC, but then object to Defendants' reliance on those same contracts

22   in the motion to dismiss.  The incorporation by reference doctrine "prevents plaintiffs from

23   selecting only portions of documents that support their claims, while omitting portions of those

24   very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899

25   F.3d 988, 1002 (9th Cir. 2018).  Plaintiffs are attempting to engage in just this form of selective

26   reliance in their motion to strike, or in the alternative motion to convert the motion to dismiss into

27

28   Case No. 20-CV-04011-LHK
     ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS; DENYING
     PLAINTIFFS' MOTION TO STRIKE

United States District Court
Northern District of California

1  a motion for summary judgment.

2        Moreover, several courts in this district that have considered similar claims to those at

3  issue in the instant case have incorporated by reference YouTube's terms of service and other

4  agreements when deciding a motion to dismiss. *See, e.g., Divino*, 2021 WL 51715, at *1 n.2

5  (finding that YouTube's terms of service, community guidelines, and other agreements are

6  incorporated by reference into the complaint); *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 960

7  (N.D. Cal. 2020) (same).

8        Finally, the Court does not rely on any challenged exhibit attached to Defendants' motion

9  to dismiss to decide the instant motion.  As such, the Court declines to convert Defendants'

10  motion to dismiss into a motion for summary judgment.

11        For the reasons discussed above, the Court therefore DENIES Plaintiffs' motion to strike,

12  or in the alternative to convert the motion to dismiss into to a motion for summary motion.

13  **IV.**    **CONCLUSION**

14        For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' SAC in its entirety is

15  GRANTED with leave to amend and Plaintiffs' motion to strike is DENIED.

16        Should Plaintiffs choose to file an amended complaint, Plaintiffs must do so within 30 days

17  of this Order.  Failure to do so, or failure to cure the deficiencies identified in this Order and in

18  Defendants' motion to dismiss, will result in dismissal of Plaintiffs' deficient claims with

19  prejudice.  Plaintiffs may not add new claims or parties without a stipulation or leave of the Court.

20  If Plaintiffs choose to file an amended complaint, Plaintiffs must attach a redlined copy comparing

21  the Third Amended Complaint with the Second Amended Complaint.

22  **IT IS SO ORDERED.**

23  Dated: June 25, 2021

24   

25  *Lucy H. Koh*
                         LUCY H. KOH
                         United States District Judge

26   

27   

28  Case No. 20-CV-04011-LHK
ORDER GRANTING WITH LEAVE TO AMEND DEFENDANTS' MOTION TO DISMISS; DENYING
PLAINTIFFS' MOTION TO STRIKE

*United States District Court*
*Northern District of California*