1   DAVID H. KRAMER, SBN 168452               BRIAN M. WILLEN (*Pro Hac Vice*)
    LAUREN GALLO WHITE, SBN 309075            WILSON SONSINI GOODRICH & ROSATI
2   KELLY M. KNOLL, SBN 305579                Professional Corporation
    WILSON SONSINI GOODRICH & ROSATI          1301 Avenue of the Americas, 40th Floor
3   Professional Corporation                  New York, NY 10019-6022
    650 Page Mill Road                        Telephone: (212) 999-5800
4   Palo Alto, CA 94304-1050                  Facsimile: (212) 999-5801
    Telephone: (650) 493-9300                 Email: bwillen@wsgr.com
5   Facsimile: (650) 565-5100
    Email: dkramer@wsgr.com
6   Email: lwhite@wsgr.com
7   Email: kknoll@wsgr.com

8   Attorneys for Defendants
9   GOOGLE LLC and YOUTUBE, LLC

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                        SAN JOSE DIVISION

13

14  KIMBERLY CARLESTE NEWMAN, LISA      )   CASE NO.: 5:20-cv-04011-LHK
    CABRERA, CATHERINE JONES, DENOTRA   )
15  NICOLE LEWIS, ANDREW HEPKINS,       )   **DEFENDANTS' NOTICE OF**
    HARVEY STUBBS, KHALIF MUHAMMAD,     )   **MOTION AND MOTION TO**
16  KEU REYES, and OSIRIS LEY,          )   **DISMISS PLAINTIFFS' THIRD**
                                        )   **AMENDED CLASS**
17          Plaintiffs,                 )   **ACTION COMPLAINT;**
                                        )   **MEMORANDUM OF POINTS AND**
18       v.                             )   **AUTHORITIES IN SUPPORT**
                                        )   **THEREOF**
19  GOOGLE LLC, YOUTUBE, LLC, and DOES 1 )
20  through 100, inclusive,             )   Before: Hon. Lucy H. Koh
                                        )   Place:  Crtrm. 8
21          Defendants.                 )   Date:   March 3, 2022
                                        )   Time:   1:30 p.m.
22                                      )
                                        )
23                                      )
                                        )
24  ─────────────────────────────────────

25

26

27

28

────────────────────────────────────────────────────────────

1

**TABLE OF CONTENTS**

2

**Page**

3   NOTICE OF MOTION AND MOTION ...................................................................................1

4   STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED ...........................1

5   MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

6   FACTUAL BACKGROUND ..................................................................................................2

7          A.      YouTube's Terms Of Service And The Operative Agreements ............................2

8          B.      The Court's Dismissal Of Plaintiffs' Second Amended Complaint ......................3

9          C.      Plaintiffs' Third Amended Complaint...................................................................4

10   ARGUMENT ..........................................................................................................................5

11
     I.     THE TAC VIOLATES RULE 8'S PLAIN STATEMENT REQUIREMENT .................5
12
     II.    PLAINTIFFS FAIL TO STATE A VIABLE CAUSE OF ACTION ..............................6
13
            A.      Plaintiffs Have No Viable Constitutional Claim...................................................7
14
            B.      Plaintiffs Fail To State A Claim Under The Lanham Act......................................9
15
            C.      Plaintiffs Again Fail To State An Intentional Discrimination Claim...................10
16
            D.      Plaintiffs Cannot Obtain A Declaratory Judgment Challenging Section 230.......15
17
            E.      Plaintiffs Fail To State A Contract-Based Claim ................................................15
18
            F.      Plaintiffs Fail To State An Equitable Claim........................................................18
19
            G.      Plaintiffs Fail To State A Claim Under The UCL................................................21
20
21   III.   GOOGLE IS PROTECTED FROM PLAINTIFFS' CLAIMS BY SECTION 230 .........22

22          A.      Google Is Protected By Two Separate Provisions Of Section 230 ......................22

23          B.      Section 230 Is Not Unconstitutional ...................................................................23

24   CONCLUSION ......................................................................................................................25

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aguilar v. Int'l Longshoremen's Union Local #10*,
966 F.2d 443 (9th Cir. 1992) ............................................................................. 19

*Ali v. Intel Corp.*,
2019 U.S. Dist. LEXIS 50925 (N.D. Cal. Mar. 26, 2019) ...................................... 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................. 6

*Avago Techs. United States Inc. v. NanoPrecision Prods.*,
2017 U.S. Dist. LEXIS 13484 (N.D. Cal. Jan. 31, 2017) ..................................... 20

*Bank of N.Y. v. Fremont Gen. Corp.*,
523 F.3d 902 (9th Cir. 2008) ............................................................................... 20

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) ............................................................................. 22

*Bartholomew v. YouTube, LLC*,
17 Cal. App. 5th 1217 (2017) .............................................................................. 10

*Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*,
688 F. Supp. 2d 940 (N.D. Cal. 2010) ................................................................. 19

*Brignac v. Yelp Inc.*,
2019 U.S. Dist. LEXIS 94581 (N.D. Cal. June 5, 2019) ................................. 11, 14

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ........................................................................................ 21

*Daniels v. Alphabet Inc.*,
2021 U.S. Dist. LEXIS 64385 (N.D. Cal. Mar. 31, 2021) ..................................... 23

*DeHoog v. Anheuser-Busch InBev SA/NV*,
899 F.3d 758 (9th Cir. 2018) ............................................................................... 16

*Denver Area Educ. Telecomms. Consortium, Inc. v. FCC*,
518 U.S. 727 (1996) ....................................................................................... 25, 26

*Divino Grp. LLC v. Google LLC*,
2021 U.S. Dist. LEXIS 3245 (N.D. Cal. Jan. 6, 2021) ................................. *passim*

*Doe One v. CVS Pharmacy, Inc.*,
348 F. Supp. 3d 967 (N.D. Cal. 2018) ............................................................. 6, 11

*Doe v. Google LLC*,
    2021 U.S. Dist. LEXIS 201377 (N.D. Cal. Oct. 19, 2021) ................................................. 7

*Domen v. Vimeo, Inc.*,
    2021 U.S. App. LEXIS 28995 (2d Cir. Sept. 24, 2021) ............................................... 8, 14

*Domen v. Vimeo, Inc.*,
    433 F. Supp. 3d 592 (S.D.N.Y. 2020) ........................................................................... 8

*Ebeid v. Facebook, Inc.*,
    2019 U.S. Dist. LEXIS 78876 (N.D. Cal. May 9, 2019) ................................................. 17

*Englert v. IVAC Corp.*,
    92 Cal. App. 3d 178 (1979) ........................................................................................ 21

*Farmearl v. Storopack, Inc.*,
    2005 U.S. Dist. LEXIS 34293 (N.D. Cal. Sept. 12, 2005) ............................................. 16

*Fed. Agency of News LLC v. Facebook, Inc.*,
    432 F. Supp. 3d 1107 (N.D. Cal. 2020) ....................................................................... 22

*Flores v. EMC Mortg. Co.*,
    997 F. Supp. 2d 1088 (E.D. Cal. 2014) ......................................................................... 6

*Fuhu, Inc. v. Toys "R" Us, Inc.*,
    2013 U.S. Dist. LEXIS 196563 (S.D. Cal. Mar. 1, 2013) ............................................... 21

*Golden Gateway Ctr. v. Golden Gateway Tenants Ass'n*,
    26 Cal. 4th 1013 (2001) .............................................................................................. 7

*Gonzalez v. Google LLC*,
    2 F.4th 871 (9th Cir. 2021) ......................................................................................... 23

*Gray v. Apple Inc.*,
    2017 U.S. Dist. LEXIS 67805 (N.D. Cal. May 3, 2017) ........................................ 11, 12, 13

*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc. (CNN)*,
    742 F.3d 414 (9th Cir. 2014) ...................................................................................... 11

*Green v. Am. Online (AOL)*,
    318 F.3d 465 (3d Cir. 2003) ........................................................................................ 24

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    273 F. Supp. 3d 1099 (N.D. Cal. 2017) ......................................................................... 8

*Imagineering, Inc. v. Kiewit Pac. Co.*,
    976 F.2d 1303 (9th Cir. 1992) ..................................................................................... 11

*Jackson v. Fischer*,
    931 F. Supp. 2d 1049 (N.D. Cal. 2013) ....................................................................... 19

*Kinderstart.com, LLC v. Google, Inc.*,
2007 U.S. Dist. LEXIS 22637 (N.D. Cal. Mar. 16, 2007) ................................. 21

*Knapp v. Hogan*,
738 F.3d 1106 (9th Cir. 2013) ....................................................................... 6

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ....................................................................... 3

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) ................................................................................. 22

*La'Tiejira v. Facebook, Inc.*,
272 F. Supp. 3d 981 (S.D. Tex. 2017) ........................................................... 24

*Levitt v. Yelp! Inc.*,
2011 U.S. Dist. LEXIS 124082 (N.D. Cal. Oct. 26, 2011) ............................. 23

*Levitt v. Yelp! Inc.*,
765 F.3d 1123 (9th Cir. 2014) .................................................................. 21, 23

*Lewis v. Google LLC*,
2020 U.S. Dist. LEXIS 150603 (N.D. Cal. May 20, 2020) ............................. 17

*Lewis v. Google LLC*,
851 F. App'x 723 (9th Cir. 2021)............................................................... 15, 24

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ..................................................................................... 10

*Lugar v. Edmondson Oil Co., Inc.*,
457 U.S. 922 (1982) ..................................................................................... 24

*Mahaffa v. McGraw*,
Cal. App. Unpub. LEXIS 4310 (June 30, 2021) ............................................. 18

*Manhattan Cmty. Access Corp. v. Halleck*,
139 S. Ct. 1921 (2019) ................................................................................... 7

*McHenry v. Renne*,
84 F.3d 1172 (9th Cir. 1996)........................................................................... 5

*Media.net Advert. FZ-LLC v. NetSeer, Inc.*,
156 F. Supp. 3d 1052 (N.D. Cal. 2016) ......................................................... 20

*Melendez v. Emmett*,
2014 U.S. Dist. LEXIS 140511 (N.D. Cal. Sept. 30, 2014)............................. 14

*Merritt v. JP Morgan*,
2018 U.S. Dist. LEXIS 69006 (N.D. Cal. Apr. 24, 2018)................................. 19

*Miami Herald Publ'g Co., Div. of Knight Newspapers, Inc. v. Tornillo*,
    418 U.S. 241 (1974) ............................................................................................... 25

*Mishiyev v. Alphabet, Inc.*,
    444 F. Supp. 3d 1154 (N.D. Cal. 2020) ............................................................. 17, 18

*Moralez v. Whole Foods Mkt. California, Inc.*,
    2016 WL 845291 (N.D. Cal. Mar. 4, 2016) ............................................................. 11

*Murphy v. Twitter, Inc.*,
    60 Cal. App. 5th 12 (2021) ....................................................................................... 23

*NetChoice, LLC v. Moody*,
    2021 U.S. Dist. LEXIS 121951 (N.D. Fla. June 30, 2021) ....................................... 25

*Oracle Am., Inc. v. Cedarcrestone, Inc.*,
    938 F. Supp. 2d 895 (N.D. Cal. 2013) ...................................................................... 21

*Park Mgmt. Corp. v. In Def. of Animals*,
    36 Cal. App. 5th 649 (2019) ........................................................................................ 8

*Pasadena Live v. City of Pasadena*,
    114 Cal. App. 4th 1089 (2004) .................................................................................. 17

*Prager Univ. v. Google LLC*,
    951 F.3d 991 (9th Cir. 2020) .................................................................................. 7, 9

*Prager Univ. v. Google LLC*,
    2018 U.S. Dist. LEXIS 51000 (N.D. Cal. Mar. 26, 2018) ......................................... 25

*Prager Univ. v. Google LLC*,
    2019 Cal. Super. LEXIS 2034 (Super. Ct. Cal. Nov. 19, 2019) ............................... *passim*

*Roberts v. AT&T Mobility LLC*,
    877 F.3d 833 (9th Cir. 2017) ............................................................................... 24, 25

*Robins v. Pruneyard Shopping Ctr.*,
    23 Cal. 3d 899 (1979) .................................................................................................. 8

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015) .................................................................... 22

*Silvaco Data Sys. v. Intel Corp.*,
    184 Cal. App. 4th 210 (2010) .................................................................................... 20

*Skinner v. Ry. Labor Execs.' Ass'n*,
    489 U.S. 602 (1989) ..................................................................................................... 7

*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*,
    100 Cal. App. 4th 44 (2002) ...................................................................................... 17

*Sweet v. Google Inc.*,
 2018 U.S. Dist. LEXIS 37591 (N.D. Cal. Mar. 7, 2018) ............................... 18

*UCAR Tech. (USA) Inc. v. Li*,
 2018 U.S. Dist. LEXIS 93817 (N.D. Cal. June 4, 2018) ............................... 20

*Vallarta v. United Airlines, Inc.*,
 497 F. Supp. 3d 790 (N.D. Cal. 2020) ............................................................. 20

*Walker v. KFC Corp.*,
 728 F.2d 1215 (9th Cir. 1984) ......................................................................... 19

*White v. J.P. Morgan Chase, Inc.*,
 167 F. Supp. 3d 1108 (E.D. Cal. 2016) .......................................................... 19

*Youngman v. Nev. Irrigation Dist.*,
 70 Cal. 2d 240 (1969) ...................................................................................... 19

*Zango, Inc. v. Kaspersky Lab, Inc.*,
 568 F.3d 1169 (9th Cir. 2009) ......................................................................... 23

*Zepeda v. PayPal, Inc.*,
 777 F. Supp. 2d 1215 (N.D. Cal. 2011) ........................................................... 19

*Zeran v. Am. Online, Inc.*,
 129 F.3d 327 (4th Cir. 1997) ........................................................................... 22

*Zimmerman v. Facebook, Inc.*,
 2020 U.S. Dist. LEXIS 183323 (N.D. Cal. Oct. 2, 2020) ............................... 8

**STATUTES**

15 U.S.C. § 1125 ..................................................................................... 3, 9, 10

17 U.S.C. §§ 101 et seq. ................................................................................ 20

28 U.S.C. § 1332(d) ......................................................................................... 7

28 U.S.C. § 2201 ............................................................................................ 15

42 U.S.C. § 1981 ..................................................................................... *passim*

47 U.S.C. § 230(b) ......................................................................................... 23

47 U.S.C. § 230(c) ................................................................................... *passim*

47 U.S.C. § 230(e) ......................................................................................... 22

Cal. Bus. & Prof. Code § 17200 ............................................................... 21, 22

Cal. Civ. Code § 51 ................................................................................. *passim*

Cal. Civ. Code § 1689(b) ...................................................................................... 18

**RULES**

Fed. R. Civ. P. 8 ............................................................................................. 5, 6

Fed. R. Civ. P. 9(b) ............................................................................................ 22

Fed. R. Civ. P. 12(b)(6) .................................................................................... 1, 6

**MISCELLANEOUS**

Safiya Umoja Noble, *Algorithms of Oppression* (2018) ........................................ 5, 12

1

**NOTICE OF MOTION AND MOTION**

2      TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE

3    that on March 3, 2022, at 1:30 p.m., before the Honorable Lucy H. Koh of the United States

4    District Court for the Northern District of California, Defendants Google LLC ("Google") and

5    YouTube, LLC ("YouTube") (collectively "Defendants") shall and hereby do move for an order

6    dismissing with prejudice Plaintiffs' Third Amended Class Action Complaint (Dkt. No. 77,

7    "TAC"). The motion is based upon this Notice of Motion; the supporting Memorandum of Points

8    and Authorities; the pleadings, records, and papers on file in this action; oral argument of counsel;

9    and any other matters properly before the Court.

10

**STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED**

11      Pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure and Section 230

12    of the Communications Decency Act, 47 U.S.C. § 230(c) ("Section 230"), Defendants seek

13    dismissal of Plaintiffs' TAC without further leave to amend.

14

**MEMORANDUM OF POINTS AND AUTHORITIES**

15      The TAC represents Plaintiffs' fourth effort to allege claims against YouTube based on

16    unsupported theories of discrimination and a hodgepodge of related grievances about YouTube's

17    content-moderation policies. But the TAC makes only token efforts to address the serious

18    deficiencies that this Court identified in dismissing their prior complaint. Rather than come

19    forward with new facts that plausibly suggest that these particular Plaintiffs were the target of

20    intentional racial discrimination (or false advertising or unconstitutional state action) by

21    YouTube—a showing they cannot make—the TAC adds over one hundred paragraphs of

22    weightless bulk, including a host of conclusory assertions, a seemingly random grab-bag of

23    unrelated grievances, and extended discussions of a three-year-old book that has nothing to do

24    with YouTube's content-moderation decisions. The result is an unwieldy 2,984-page complaint

25    that, for all its prolixity, still offers nothing to plausibly suggest that Defendants are state actors,

26    violated the Lanham Act, or intentionally discriminated against Plaintiffs because of their race.

27    Despite having been put on clear notice of these pleading deficiencies, the TAC suffers from the

28    same problems as its predecessor and should be dismissed for the same reasons—and more.

---

1

**FACTUAL BACKGROUND**

Apart from decorative allegations that make no legal difference and loads of conclusory rhetoric, the TAC is functionally no different from the previous version of Plaintiffs' complaint.

**A.      YouTube's Terms Of Service And The Operative Agreements**

YouTube's service is governed by terms and content policies. *See, e.g.*, TAC ¶¶ 24 n.2, 88-89, 129, 136. Before creating channels and uploading their content, Plaintiffs acknowledge they agreed to YouTube's Terms of Service and the incorporated Community Guidelines. *See* TAC ¶¶ 24 n.2, 125, 127, 129, 401, 522. Those Terms provide that YouTube reserves the right to remove content from its service, including videos uploaded by content creators. TAC, Exs. G-H; *see also* TAC ¶¶ 136.h, 138.a.[1] The Community Guidelines prohibit certain kinds of content, including "[v]iolent or gory content," "hate speech," "harassment," and "name calling or malicious insults." TAC, Ex. D at 141-142, 158-159, 204-207, 551-554, 655-658. Google and YouTube reserve the right to remove any content that they believe to be contrary to these rules. TAC, Exs. G-H; *see also* TAC ¶ 136.h. None of YouTube's terms or content policies make distinctions among creators or content on the basis of race; Plaintiffs do not allege otherwise.

YouTube allows content creators whose channels meet certain minimum viewership (and other) requirements to earn revenue from (or "monetize") their videos by running advertisements with them as part of the YouTube Partner Program. *See* TAC, Ex. D at 148-149, 616. To be eligible for monetization, Plaintiffs agreed to certain additional written contracts, including YouTube's Partner Program Terms and the AdSense Online Terms of Service. *See* TAC ¶¶ 24 n.2, 522, 572, 642; Declaration of Brian Willen ISO MTD ("Willen Decl."), Exs. 1-3.[2] The YouTube

---

[1] Effective December 10, 2019, YouTube replaced this reservation with a functionally identical one: "YouTube is under no obligation to host or serve Content." TAC, Exs. D-F; *see also id.* ("If we reasonably believe that any Content is in breach of this Agreement or may cause harm to YouTube, our users, or third parties, we may remove or take down that Content in our discretion.").

[2] The TAC alleges that "Plaintiffs entered into binding and legally enforceable contracts with Defendants including the TOS and related agreement(s) under California and controlling federal law." TAC ¶ 522; *see also* TAC ¶ 24 n.2 (defining "TOS" as including "the terms of service for YouTube partnership, Google Search, Google Gmail, Google Adworks, and Google Adsense").

Partner Program Terms expressly provide that "YouTube is not obligated to display any advertisements alongside your videos and may determine the type and format of ads available on the YouTube Service." Willen Decl., Ex. 2. In addition, Plaintiffs agreed to comply with YouTube's monetization policies, including the Advertiser-friendly content guidelines, which are designed to ensure that ads do not appear alongside videos that content advertisers might find objectionable. TAC ¶¶ 24 n.2, 401; TAC, Ex. D at 223-263, 619-629; Willen Decl., Exs. 1-4. YouTube uses automated software to identify content as inappropriate for advertising, and creators may appeal demonetization decisions for manual review. TAC, ¶ 226; TAC, Ex. D at 223-263.

### B.    The Court's Dismissal Of Plaintiffs' Second Amended Complaint

In Plaintiffs' Second Amended Complaint ("SAC"), Plaintiffs broadly alleged that Google and YouTube wrongly excluded some of their videos from Restricted Mode, disqualified some of their videos from advertising, and restricted or moderated their content in various other ways. Plaintiffs asserted, without plausible support, that these decisions were motivated by racial bias. Plaintiffs brought claims under the U.S. and California Constitutions, federal and state statutes, and the common law. Defendants moved to dismiss the SAC in its entirety. Dkt. No. 29.

The Court granted Defendants' motion. Dkt. 68 ("Order"). The Court dismissed Plaintiffs' claim under Section 1981 because Plaintiffs failed to plausibly allege that Defendants intentionally discriminated against them. *Id.* at 11. The Court dismissed Plaintiffs' First Amendment claim because it was "squarely precluded by controlling precedent of the United States Supreme Court and the Ninth Circuit." *Id.* at 15, 18. The Court dismissed Plaintiffs' Lanham Act claim, because Defendants' statements about Restricted Mode did not amount to a "false or misleading representation of fact" "in commercial advertising or promotion" and because Plaintiffs did not

---

The Court may consider those documents incorporated by reference in the TAC and attached as exhibits to the Willen Declaration—YouTube's advertising and monetization terms (*see, e.g.*, TAC ¶¶ 24 & n.2, 616; *see also* ¶ 136.i (quoting AdSense Online Terms of Service), ¶ 138.c (quoting YouTube Partner Program Terms and AdSense Online Terms of Service)), documents setting out the policies and guidelines incorporated therein, and YouTube's Help Center page titled "Your Content & Restricted Mode" (TAC ¶¶ 186, 193). *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Alternatively, the Court may take judicial notice of Defendants' exhibits.

---

plausibly allege that those statements caused them commercial harm. *Id.* at 20-22. Finally, the Court rejected Plaintiffs' request for a declaratory judgment that Section 230 is unconstitutional. *Id.* at 25. After dismissing Plaintiffs' federal claims, the Court declined to exercise supplemental jurisdiction over the state-law claims. *Id.* at 23. The Court granted Plaintiffs leave to amend, but not to "add new claims or parties." *Id.* at 28.

### C.    Plaintiffs' Third Amended Complaint

The TAC tracks the SAC in all material respects. Plaintiffs provide no new facts or allegations in support of their (baseless) theory that YouTube discriminates against Black or Hispanic creators and their content in YouTube's content moderation decisions, or Plaintiffs' claim that YouTube has engaged in false advertising. Plaintiffs have added a handful of largely duplicative allegations as to how YouTube purportedly took actions that made it harder for viewers to find or access certain of Plaintiffs' videos and channels. *See, e.g.*, TAC ¶ 103 (YouTube applies Restricted Mode improperly), ¶ 168 (YouTube uses automated means to filter content), ¶ 179 (YouTube hires "moonlighters" who increase views to some profiles at the expense of others), ¶¶ 207-209 (YouTube limits or "muzzles" users' comments on videos). These allegations restate Plaintiffs' supposed harms from the SAC and go no further.[3] Plaintiffs have also gathered thousands of pages of documents from around Defendants' websites in support of

---

[3] *See* TAC ¶¶ 175, 194, 201, 385-386 (alleged difficulties in qualifying for or accessing "special programs and perks," such as the YouTube Partner Program); *id.* ¶¶ 213, 256 (too many YouTube advertisements placed in videos); *id.* ¶ 258 (alleged delays between Plaintiffs' video uploads, user notifications, and users' access to videos); *id.* ¶ 383 (custom "thumbnail" images allegedly deleted); *id.* ¶¶ 214, 224-225, 228, 324.a (videos allegedly excluded from a window that recommends videos); *id.* ¶¶ 215-220, 224-225, 228, 259, 261, 317-319, 324.a, 341, 351, 361-363 (other creators' "[h]ostile" or "[i]rrelevant" videos allegedly included too often in a window that recommends videos); *id.* ¶¶ 10, 16-17, 81, 95, 99, 101, 123-124, 137-138, 174-176, 183-184, 188, 198, 211 (videos reviewed and filtered using automated means); *id.* ¶¶ 179.b, 181, 208, 212, 242, 263 (users allegedly unable to post comments or having their comments removed); *id.* ¶¶ 175, 181, 240, 242-243, 263, 316 ("livestream" broadcast videos allegedly experiencing bandwidth issues, blurry or unclear visuals, and other temporary accessibility issues); *id.* ¶¶ 204-205, 226-227, 282-285 (user-flagged content removed or restricted, and delays in appeals of such decisions); *id.* ¶¶ 197, 201-206, 273-276, 297, 316-319 (alleged reductions in subscribers and view counts); *id.* ¶¶ 200-203, 234, 245, 273, 309, 320, 336-337, 343, 380 (videos and channels allegedly prevented from appearing in search results); *id.* ¶¶ 276, 384 (other users allegedly copying Plaintiffs' videos or branding to their own channels).

---

their contract claims, though Plaintiffs ultimately ignore most of those documents and rely on substantially the same arguments from the SAC. *See* TAC ¶¶ 126-135.

And what is new in the TAC changes little. For example, the TAC repeatedly quotes excerpts of a book titled *Algorithms of Oppression*, which was published in 2018 (years prior to Plaintiffs' original complaint), as purported support for their claim that Defendants "embed [user data] in computer code . . . result[ing] in racial bias and discrimination" against Defendants' users. *Id.* ¶¶ 4-7, 99(g), 103, 212, 525(c), 526, 533, 536. But that book in fact says nothing about "access to the YouTube platform and services." TAC ¶ 5. It focuses on the author's experiences as a Google search (rather than a YouTube) user. Indeed, the excerpts that Plaintiffs provide (however selectively quoted) do not address YouTube's algorithms or automated content-moderation practices at all. Nor do they have anything to do with Plaintiffs, their videos, or their claims.

Beyond that, the TAC reasserts allegations of disparate impact that this Court has already rejected—namely, that some of their videos were restricted while similar videos by other content creators were not. TAC ¶¶ 225, 269-271, 394, 396, 530. To that end, Plaintiffs have shuffled around the SAC's allegations to form a chart of 33 hand-picked videos that were allegedly "restricted" by YouTube—ignoring countless others that were *not* restricted. TAC ¶¶ 13-14, 107. Plaintiffs do not purport to describe the actual content of these videos or provide any information about them other than their titles (and URLs). The TAC then purports to compare those titles to allegedly similar ones uploaded by other users, including NBC Sports and Saturday Night Live, which Plaintiffs identify as "not restricted." ¶ 14. Based on no more than that, Plaintiffs offer their belief that the third-party videos were not restricted by YouTube solely because of their creators' supposedly "white and other preferred" status (TAC ¶ 107), while Plaintiffs' videos were restricted "based on their race" (*id.*).

## **ARGUMENT**

## I.    THE TAC VIOLATES RULE 8'S PLAIN STATEMENT REQUIREMENT

The Court may dismiss a complaint as violative of Rule 8 where it lacks a "short and plain" statement of plaintiffs' claims, and instead "mixes allegations of relevant facts, irrelevant facts, political argument, and legal argument in a confusing way." *McHenry v. Renne*, 84 F.3d

1172, 1174, 1179-80 (9th Cir. 1996). The TAC's 684 paragraphs and attachments span almost 3,000 pages. Rather than clarify Plaintiffs' claims, the TAC simply contributes to the confusion— adding over a hundred paragraphs of rhetoric and thousands of pages of largely irrelevant material—in ways that are fundamentally at odds with Rule 8.

Plaintiffs again accuse Defendants of indiscernible harms—for example, that they supposedly can deny members of the public access to "the purchase and use of hand held smart phone[s], email, search engines, applications, and information or other services that are essential for public health, safety, law enforcement, election administration, taxation, and any other service performed by governments" (TAC ¶ 501); and that Defendants "irritate, annoy, and/or discourage African American subscribers" via ad placement (*id*. ¶ 364). *See also id.* ¶¶ 90-94, 102, 158, 166, 199, 262, 309. These examples illustrate the prolix pleading puzzle that Plaintiffs "incorporate by reference in whole or in part" into their causes of action (*e.g.*, *id*. ¶ 639). *Knapp v. Hogan*, 738 F.3d 1106, 1111 (9th Cir. 2013).

Moreover, the TAC's most incendiary allegations consist of only "passing references and conclusions without supporting facts," *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1103 (E.D. Cal. 2014), such as claims that Defendants facilitate "culturally rampant" bias and discrimination among their employees against African Americans (TAC ¶ 169) and commit "digital redlining" based on users' "race and other protected identity characteristics" (*e.g.*, *id.* ¶¶ 8-9, 14, 22, 80, 166, 178, 525, 648-649). Courts have relied on Rule 8 to toss out similarly conclusory rhetoric offered to support discrimination claims. *E.g.*, *Doe One v. CVS Pharmacy, Inc.*, 348 F. Supp. 3d 967, 989 (N.D. Cal. 2018), *vacated and rev'd on other grounds*, 982 F.3d 1204 (9th Cir. 2020); *Ali v. Intel Corp.*, 2019 U.S. Dist. LEXIS 50925, at *11 (N.D. Cal. Mar. 26, 2019) (Koh, J.). This Court should do likewise.

## II.     PLAINTIFFS FAIL TO STATE A VIABLE CAUSE OF ACTION

The TAC also fails to state a claim under Rule 12(b)(6). As in the SAC, Plaintiffs do not allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A.    Plaintiffs Have No Viable Constitutional Claim

Plaintiffs allege that Defendants unlawfully "censored" Plaintiffs' speech, in violation of the U.S. and California constitutions. TAC ¶¶ 504-508, 665-684.[4] These claims fail because Defendants are private parties, not government actors. *See Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019); *Golden Gateway Ctr. v. Golden Gateway Tenants Ass'n*, 26 Cal. 4th 1013, 1023 (2001).

**First Amendment.** Applying established law, this Court dismissed Plaintiffs' First Amendment claim for lack of state action. Order at 15-18. The TAC offers no meaningful basis for saving this claim, which courts have continued to reject. *See, e.g.*, *Doe v. Google LLC*, 2021 U.S. Dist. LEXIS 201377, at *4 (N.D. Cal. Oct. 19, 2021) (dismissing with prejudice First Amendment claim against YouTube for removing videos).

Plaintiffs' ongoing reliance on a "public function" theory (TAC ¶ 464) defies this Court's order and the Ninth Circuit's decision in *Prager*. *Prager Univ. v. Google LLC*, 951 F.3d 991, 998 (9th Cir. 2020) ("*Prager III*"). There is simply nothing new here. *Compare* TAC ¶¶ 464-474, 500-503, *with* SAC ¶¶ 541-551, 567-570 (same); *accord Doe*, 2021 U.S. Dist. LEXIS 201377, at *5 (rejecting identical theory). Plaintiffs' only other state action argument is equally repetitive and contrary to established law. Plaintiffs again invoke *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602 (1989), to claim that Defendants are state actors insofar as they rely on Section 230. TAC ¶¶ 477-488. But, as this Court has explained, "*Skinner* is inapposite" because Section 230— which "is designed to keep the federal government removed from the editorial decision-making process of internet companies like YouTube and Google"—does not amount to federal coercion or endorsement of Defendants' editorial decisions. Order at 16-18; *accord Divino Grp. LLC v. Google LLC*, 2021 U.S. Dist. LEXIS 3245, at *17 (N.D. Cal. Jan. 6, 2021) (rejecting identical

---

[4] The Court previously dismissed Plaintiffs' state law claims for lack of jurisdiction. Order at 23. In the TAC, Plaintiffs claim additional bases for jurisdiction over their state law claims, including jurisdiction under the Class Action Fairness Act. TAC ¶¶ 48-74. Rather than try to meet the relevant pleading standards, however, they offer only conclusory allegations. TAC ¶ 50 (stating that the amount in controversy simply "exceed[s] One Billion Dollars"). Should the Court choose to exercise supplemental jurisdiction over Plaintiffs' state law claims, they fail as a matter of law.

---

1    state action argument). The TAC offers nothing to evade this Court's ruling.

2        **California Constitution.** Plaintiffs' claim under the California Constitution is based on

3    the theory that YouTube has held itself out as a "public forum," such that its private editorial

4    decisions somehow became state action—a proposition that courts have consistently rejected. *See*

5    *Prager Univ. v. Google LLC*, 2019 Cal. Super. LEXIS 2034, at \*15-17 (Super. Ct. Cal. Nov. 19,

6    2019) ("*Prager II*"); *accord Domen v. Vimeo, Inc.*, 433 F. Supp. 3d 592, 607 (S.D.N.Y. 2020),

7    *aff'd*, 2021 U.S. App. LEXIS 28995, at \*9 (2d Cir. Sept. 24, 2021) (summary order); *Zimmerman*

8    *v. Facebook, Inc.*, 2020 U.S. Dist. LEXIS 183323, at \*4-5 (N.D. Cal. Oct. 2, 2020). The same

9    result is warranted here.

10        Plaintiffs rely on the line of cases applying *Robins v. Pruneyard Shopping Ctr.*, 23 Cal. 3d

11    899 (1979), *aff'd*, 447 U.S. 74 (1980), but those cases address limits on expressive activity on

12    certain real property that is comparable to (for example) public parks. "No court has expressly

13    extended *Pruneyard* to the Internet generally," likely because "there are a host of potential

14    'slippery slope' problems that are likely to surface were *Pruneyard* to apply to the Internet." *hiQ*

15    *Labs, Inc. v. LinkedIn Corp.*, 273 F. Supp. 3d 1099, 1116 (N.D. Cal. 2017), *aff'd on other ground*,

16    938 F.3d 985 (9th Cir. 2019), *cert. granted, judgment vacated, case remanded for reconsideration*,

17    141 S. Ct. 2752 (2021). For that reason, the California court that decided *Prager II* refused to

18    adopt a "dramatic expansion" of *Pruneyard* to the Internet. 2019 Cal. Super. LEXIS 2034, at \*17-

19    18. There is no reason why a federal court should embrace a novel interpretation of the California

20    constitution that no California court has endorsed. That is especially so as Plaintiffs' approach

21    would bring state law into direct conflict with YouTube's own rights under the First Amendment,

22    which protects the right to make editorial judgments about third-party content, including how (and

23    if) that content is paired with advertising. *See infra* at 24-25.

24        Even if the *Pruneyard* line of cases could apply to the Internet, YouTube's services would

25    not qualify as "public forums." Plaintiffs' claims are primarily centered around aspects of

26    YouTube (such as Restricted Mode and advertising services) that by definition are not generally

27    open to the public—to say nothing of being "open to the public in the same manner as public

28    streets or parks." *Park Mgmt. Corp. v. In Def. of Animals*, 36 Cal. App. 5th 649, 659 (2019).

1    Defendants "do not give content creators unrestricted access" to Restricted Mode or advertising

2    services "or suggest that they will do so." *Prager II*, 2019 Cal. Super. LEXIS 2034, at *16.

3    Treating these inherently exclusive spaces as constitutional public forums—from which YouTube,

4    for example, would be prohibited from excluding pornography or depictions of graphic violence—

5    makes no sense and is supported by no authority. Plaintiffs' claim should be dismissed.

6           **B.     Plaintiffs Fail To State A Claim Under The Lanham Act**

7           In dismissing the SAC, this Court explained that "Plaintiffs' claim for false advertising

8    under the Lanham Act has already been squarely rejected by the Ninth Circuit in *Prager III*."

9    Order at 19. The TAC reasserts an essentially identical claim, with only token changes. Plaintiffs

10   again allege that YouTube's exclusion of their videos from Restricted Mode communicates false

11   information to viewers and advertisers. ¶ 534. This claim again fails, for multiple reasons.

12          *First*, as both the Ninth Circuit and this Court have held, "Defendants' statements

13   regarding Restricted Mode[] . . . 'are not advertisements or a promotional campaign,' but rather

14   simply explain to YouTube users the nature of the Restricted Mode tool." Order at 21 (quoting

15   *Prager III*, 951 F.3d at 999–1000); *accord Divino*, 2021 U.S. Dist. LEXIS 3245, at *23. The TAC

16   does not change this reality. Plaintiffs offer more conclusory assertions about "Defendants'

17   competition with Plaintiffs for viewers" (*e.g.*, ¶¶ 538, 542)—but this Court has made clear that

18   such allegations "do not transform Defendants' statements regarding YouTube's moderation

19   policies into 'commercial advertising or promotion.'" Order at 21.

20          *Second*, it is equally settled law that "the fact that a video was unavailable under Restricted

21   Mode d[oes] not imply a specific representation from YouTube regarding that video." Order at 20.

22   This Court has squarely held (again following the Ninth Circuit) that the "representation that a

23   user sees when that user tries to view a video unavailable in Restricted Mode … does not have 'a

24   tendency to mislead, confuse or deceive' YouTube users." *Id.* (quoting *Prager III*, 951 F.3d at

25   1000). The TAC challenges the same informational notices (¶ 189; *see also* ¶¶ 40, 305, 338,

26   543)—the "exact statement that the Ninth Circuit found not actionable under the Lanham Act in

27   *Prager III*." Order at 20. Without pleading new supporting facts, Plaintiffs continue to insist that

28   the exclusion of their videos from Restricted Mode is a specific communication about their

1   contents. *E.g.*, ¶¶ 536, 538, 542, 558. But this Court expressly rejected this very argument as

2   "precluded by the Ninth Circuit's holding." Order at 21. Plaintiffs can keep repeating the same

3   thing in different words, but it does not change what YouTube's statements say or what binding

4   law requires. *Accord Divino*, 2021 U.S. Dist. LEXIS 3245, at *24-26; *cf. Bartholomew v.*

5   *YouTube, LLC*, 17 Cal. App. 5th 1217, 1229 (2017).

6       *Third*, Plaintiffs again fail to allege proximate cause: a sufficiently direct link between

7   YouTube's alleged false advertising and some commercial harm. Order at 21-22; *accord Lexmark*

8   *Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014). Just as in the SAC,

9   Plaintiffs do not meaningfully allege that the injuries they claim to have suffered "flow[] from

10  Defendants' allegedly false statements regarding Restricted Mode"—rather than "the fact that

11  Defendants have limited access to Plaintiffs' videos in Restricted Mode." Order at 22. Here too,

12  the TAC offers more rhetoric, but no new *facts*.

13      This Court, the Ninth Circuit, and Judge DeMarchi in *Divino* have now rejected Plaintiffs'

14  Lanham Act claim (or its equivalent) four separate times. This claim should now be dismissed

15  with prejudice.

16      **C.      Plaintiffs Again Fail To State An Intentional Discrimination Claim**

17      This Court found Plaintiffs "failed to state a claim under 42 U.S.C. § 1981 for racial

18  discrimination" because the SAC failed to "allege facts that support an inference that Defendants

19  intentionally and purposefully discriminated against Plaintiffs on the basis of race." Order at 15.

20  The Court granted Plaintiffs leave to amend to provide "more clarity as to what admissions

21  Defendants allegedly made regarding any intentional racial bias." *Id.* at 13. But Plaintiffs have

22  done the opposite: the TAC simply reiterates the basic allegations found lacking in the SAC, only

23  with more words, new metaphors ("digital ghettoes"), and less clarity. Plaintiffs have not

24  alleged—and, it is now obvious, cannot allege—actual facts showing intentional racial

25  discrimination. The Court should again dismiss Plaintiffs' Section 1981 claim (along with their

26  functionally identical Unruh Act claim), this time with prejudice.

27      The core defects that the Court identified remain in the TAC. As before, Plaintiffs do not

28  point to any YouTube content policy that, by its terms, discriminates on the basis of race or

1    ethnicity. Instead, their claims are (again) premised on the idea that the impact of YouTube's

2    facially neutral policies is felt more heavily by Plaintiffs than other creators, coupled with broad

3    and conclusory assertions that Defendants "refus[e]" to apply their policies "equally to all

4    YouTube users" (TAC ¶ 225); *accord id*. ¶¶ 269-271, 394, 396, 517-531, 639-657. But, as before,

5    there are clear legal and factual problems with this approach.

6         Legally, Plaintiffs' theory remains one of disparate impact, which does not establish an

7    intentional discrimination claim. Order at 14-15 (citing *Imagineering, Inc. v. Kiewit Pac. Co.*, 976

8    F.2d 1303, 1313 (9th Cir. 1992)); *accord Greater L.A. Agency on Deafness, Inc. v. Cable News

9    Network, Inc. (CNN)*, 742 F.3d 414, 426 (9th Cir. 2014); *CVS Pharmacy, Inc.*, 348 F. Supp. 3d at

10   989 (dismissing Unruh Act claim based on application of facially neutral policy). And their

11   support for any intentional discrimination consists of conclusory allegations and their "personal

12   belief of discrimination, without any factual support." Order at 11 (quoting *Moralez v. Whole

13   Foods Mkt. California, Inc.*, 2016 WL 845291, at * 2 (N.D. Cal. Mar. 4, 2016)); *accord Gray v.

14   Apple Inc.*, 2017 U.S. Dist. LEXIS 67805, at *7 (N.D. Cal. May 3, 2017) (dismissing Section 1981

15   claim based on "[m]ere conclusory allegations of intentional discrimination").

16        Factually, the TAC confronts the same threshold difficulty as before: Plaintiffs "do not

17   allege that they have been removed from YouTube or prevented from posting their videos on

18   YouTube." Order at 11. Indeed, Plaintiffs still admit that the restrictions they complain about

19   affected only a limited number of their videos. And it remains undisputed that large numbers of

20   Plaintiffs' videos were allowed to appear in Restricted Mode and to earn advertising revenue.

21   TAC ¶¶ 34-42, 232-233, 266, 296, 301, 329, 338, 356, 377, 381, 390, 396. Plaintiffs further admit

22   that YouTube often re-monetized or removed restrictions from their videos in response to their

23   appeals. *Id.* ¶¶ 283-285, 315, 371. As this Court has explained, "[w]ere race the motivating factor

24   behind Defendants' moderation decisions, the Court would expect that Plaintiffs' videos would be

25   largely unavailable and demonetized. For many Plaintiffs, the opposite appears to be true." Order

26   at 12. That remains the case, and it remains inconsistent with any viable claim. *E.g.*, *Brignac v.

27   Yelp Inc.*, 2019 U.S. Dist. LEXIS 94581, at *17-18 (N.D. Cal. June 5, 2019).

28        What little Plaintiffs do to try to bridge this gap does not work. The TAC mostly just

repeats allegations from the SAC that this Court has already considered and rejected. Plaintiffs

again suggest (erroneously) that Defendants "admitted" that they improperly censored videos

made by LGBTQ+ users through Restricted Mode (*compare* TAC ¶ 96, *with* SAC ¶ 49), and again

refer to a phone call on which a Google support agent supposedly said that a third party's Google

ad could not run because of the "gay thing" (*compare* TAC ¶ 102, *with* SAC ¶ 54). Apart from

being misleading, these allegations run headlong into this Court's ruling, which found these same

allegations were irrelevant to Plaintiffs' claims of racial discrimination. Order at 12.

Equally at odds with this Court's ruling is Plaintiffs' continued reliance on the Frosch

Declaration to claim that Defendants "admitted" that YouTube's algorithms "targeted" minority

users. TAC ¶¶ 98-101, 525.a, 650; *see also id.* ¶¶ 10, 12-14, 82-83, 90, 99, 113, 121. As this Court

has explained, the Frosch Declaration asserts no such thing and, even accepting Plaintiffs'

allegations about that declaration as true, they "do not support Plaintiffs' argument that

Defendants intentionally and purposefully discriminated against Plaintiffs on the basis of race by

intentionally restricting and demonetizing Plaintiffs' videos." Order at 13. The TAC offers nothing

new on this score—just more conclusory and unsupported assertions that Defendants somehow

programmed YouTube's algorithms to "target" or to flag videos based on race (¶¶ 493-495, 525-

527, 648-650). As before, these allegations rest, at best, on Plaintiffs' sheer guess about the

reasons their videos were restricted or demonetized. That is not enough. Order at 11; *accord Gray*,

2017 U.S. Dist. LEXIS 67805, at *7-8 (dismissing 1981 claim where "Plaintiff generically

concludes, without any factual support, that Defendant has 'corporate-wide policies and practices'

that 'requir[e] security personnel [to] target people of color for surveillance as soon as they enter

Apple stores'").

Beyond recycling old allegations, the TAC offers only two things that are arguably new.

Both are facially deficient. *First*, Plaintiffs repeatedly cite *Algorithms of Oppression*—a book

published in 2018 (before their original complaint in this case was filed). As discussed above, this

book simply does not address content-moderation decisions made by YouTube, and it certainly

provides no plausible basis to suggest that YouTube's restriction of Plaintiffs' videos somehow

involved intentional discrimination on the basis of race. Indeed, the TAC (*e.g.*, ¶¶ 4-7) does not

1    include a single quote from the book that actually mentions YouTube (nor could it, as the entire

2    book mentions YouTube as an entity fewer than ten times, and never in a way relevant to the

3    claims here). The book simply does not move the needle, and Plaintiffs' heavy reliance on it only

4    underscores the very deficiencies that this Court identified in Plaintiffs' discrimination claims.

5         *Second*, Plaintiffs cobble together a chart that purports to compare 33 of their videos

6    (identified only by title) that were "restricted" with the titles of allegedly unrestricted videos of

7    various third-party creators plucked from the vast corpus of YouTube videos (many of them

8    videos from major production studios, like NBC). TAC ¶¶ 13-14, 107. This chart does not

9    remotely support a claim of intentional discrimination. For one, it simply ignores all of Plaintiffs'

10   videos that were not restricted—and similarly says nothing about other videos from the third-party

11   creators identified in the chart that might have been restricted by YouTube. But even focusing just

12   on the videos Plaintiffs chose to include, the TAC supplies only their titles and URLs—the chart

13   does not say anything about the actual content of those videos, much less establish that the only

14   meaningful difference between one set of videos and the other is the race of their creators.[5] That

15   alone makes the chart all but useless. But even if this cherry-picked set of videos were actually

16   similar, it would suggest, at most, potentially inconsistent application of YouTube's moderation

17   policies. That is not *intentional* racial discrimination. And neither the chart nor anything else in the

18   TAC provides any remotely plausible basis for believing that the reason these 33 videos were

19   restricted was because of Plaintiffs' race, rather than any number of alternative explanations. *See,*

20   *e.g.*, *Gray*, 2017 U.S. Dist. LEXIS 67805, at *8 ("Plaintiff also points out that a white customer

21

22        [5] How, for example, can there be a remotely plausible inference of intentional racial
23   discrimination based on the fact that YouTube restricted a video called "*It's Just a Chicken
     Sandwich*" (a rant chastizing the Black community for eating fast-food chicken sandwiches),
24   merely because an unrelated video titled "*Harvard Sailing Team - Boys will Be Girls*" (a comedy
     sketch about gender stereotypes) was not restricted? TAC at 30 (comparing https://www.youtube
25   .com/watch?v=bc1e0TLchzU with https://www.youtube.com/watch?v=gspaoaecNAg). Or
     because YouTube restricted "*John Legend Silent*" (a video criticizing John Legend for being
26   "vocal about everybody else's shit" while not taking a stand about George Floyd), but not
     "*Democratic candidates debate: Addressing country's racism*" (an ABC News clip of the 2020
27   Democratic Presidential debate)? *Id.* (comparing https://www.youtube.com/watch?v=a-
     RxP5CBpMM with https://www.youtube.com/watch?v=kAEhKh7eKzw).
28

either returned or purchased Apple merchandise during the same time Plaintiff attempted to return his computer, and that ultimately someone else successfully returned Plaintiff's computer. Yet Plaintiff does not allege sufficient detail about either of these transactions to plausibly support an inference that Plaintiff's race triggered Defendant's treatment of him."); *Domen*, 2021 U.S. App. LEXIS 28995, at *11-12 (affirming dismissal of Unruh Act claim based on online video service's content moderation where plaintiff's allegations about "similar videos" were "vanishingly thin and lack the substance required to support an inference of discriminatory intent").

Indeed, the TAC itself acknowledges a far more plausible reason that some of Plaintiffs' videos were moderated: those specific videos were "found to violate one of YouTube's content based rules governing user content and access to the platform." TAC ¶ 523.e; *accord Brignac*, 2019 U.S. Dist. LEXIS 94581, at *16-17 (dismissing allegations of disparate treatment where other allegations suggested that plaintiff's treatment was attributable to other factors); *Melendez v. Emmett*, 2014 U.S. Dist. LEXIS 140511, at *6-7 (N.D. Cal. Sept. 30, 2014) (same). Though Plaintiffs dismiss this as mere "pretext" (TAC ¶ 523.e), that assertion is unsupported and inconsistent with the reality that only a subset of Plaintiffs' videos were ever removed or restricted. It also ignores the actual content of many of Plaintiffs' videos, which on their face seem inappropriate for certain audiences. *See, e.g.*, *id.* ¶ 392 (video that begins with simulated, but realistic and graphic, depiction of a knife slicing into an arm with a gaping bloody wound, https://www.youtube.com/watch?v=6O-BXCg0p7I); *id.* at 33 (music video for a song called "Lick My Balls," which consists of the performer repeating variations of "lick my balls" for three minutes, https://www.youtube.com/watch?v=VBMQ7a7Opis); *id.* (video joking about breastfeeding that begins with someone smoking what looks like a blunt, chanting "Chug, chug!," and then drinking a shot, https://www.youtube.com/watch?v=EZhX_wt4JR8).[6]

---

[6] Those are just examples of the videos expressly referenced in the TAC. But even a glance at the videos on Plaintiffs' YouTube channels reveals obvious issues. For example, one of the videos posted by Plaintiff Catherine Jones to the "Carmen CaBoom Reloaded" channel (TAC ¶¶ 36, 293-296) is entitled "What I Don't Like About Mexicans…" (https://www.youtube.com/watch?v=N33eLIj2-fk) and features Plaintiff saying things like: "I'm so sick of all these shitty acting Mexicans" (at 4:05); and "if they keep on treating me like shit, the Mexicans, I'm gonna start calling the police and immigration officers when I see them out in

1    In short, nothing in the TAC overcomes the problems this Court identified in the SAC. As

2    before, Plaintiffs' discrimination claims boil down to their frustration about how YouTube's race-

3    neutral moderation policies affected a limited set of their videos in ways Plaintiffs do not like.

4    Those frustrations do not amount to a viable claim under Section 1981 or the Unruh Act.

5         **D.       Plaintiffs Cannot Obtain A Declaratory Judgment Challenging Section 230**

6    Plaintiffs again seek preemptive declaratory relief regarding the scope and constitutionality

7    of Section 230. TAC ¶¶ 419-460. This Court, however, has already rejected this claim: "dismissal

8    of a claim under the Declaratory Judgment Act is appropriate where a claim is intended to

9    anticipate an affirmative defense." Order at 25 (quoting *Divino*, 2021 U.S. Dist. LEXIS 3245, at

10   *32). Plaintiffs reassert substantially the same declaratory relief claim in the TAC and, once again,

11   ask the Court to anticipate an expected defense and rule unnecessarily on its constitutionality.[7]

12   This improper use of the Declaratory Judgment Act should be dismissed for the same reasons as

13   before—and on the merits, if the Court chooses to reach them (*see infra* at 24-25).

14        **E.       Plaintiffs Fail To State A Contract-Based Claim**

15   Plaintiffs' claims that YouTube has violated the express and implied provisions of the

16   YouTube Terms of Service (and other agreements) either ignore the terms of the parties'

17   agreements or rest on unsupported, conclusory assertions that are not adequately pleaded in the

18   complaint. The express claim fails because, no matter how Plaintiffs describe their claims,

---

20   public in these restaurants eating you know like ordinary people" (at 5:15). Another video on that
     channel ("If My Son Was Gay…") (https://www.youtube.com/watch?v=vF8J2s_tBGA) begins
21   with Plaintiff saying "If my son . . . or my daughter was gay, I would straighten them out" (at
     1:47). Plaintiff Kimberly Newman's "The True Royal Family" channel includes multiple videos
22   with the word "coon" in the title, including "A COON GETS MORE 'NI@@ER'
     MOMENTS🙄" (https://www.youtube.com/watch?v=kvdse4qeexU), and a video titled "KISS
23   ALL PARTS OF MY ASS") (https://www.youtube.com/watch?v=7cj_N29Uc5M). In a case all
     about content moderation, Plaintiffs cannot ignore the reality of their own content.
24

25   [7] While this Court need go no further, Plaintiffs' declaratory relief claim also fails because
     Plaintiffs lack Article III standing to challenge Section 230(c). *See Lewis v. Google LLC*, 851 F.
26   App'x 723 (9th Cir. 2021), *aff'g,* 461 F. Supp. 3d 938, 952 (N.D. Cal. 2020) (affirming dismissal
     of a virtually identical declaratory judgment claim for lack of standing). And, because
27   "declaratory relief is not an independent cause of action but rather only a remedy," Plaintiffs'
     claim should also be dismissed in light of their failure to allege any other viable causes of action.
28   *Divino*, 2021 U.S. Dist. LEXIS 3245, at *31 (dismissing identical claim).

---

1    Plaintiffs ultimately contest various moderation and monetization decisions that are reserved to

2    YouTube under the express language of the operative agreements.[8] TAC ¶ 574. Plaintiffs' implied

3    contract claim fares no better, as claims for breach of the implied covenant of good faith may not

4    be premised on actions specifically contemplated by the relevant agreements. And to the extent

5    that both of Plaintiffs' contract claims suggest that Defendants' decisions were grounded in

6    discriminatory animus, they are merely improper attempts to repackage Plaintiffs' Section 1981

7    and Unruh Act claims. *See Farmearl v. Storopack, Inc.*, 2005 U.S. Dist. LEXIS 34293, at *30

8    (N.D. Cal. Sept. 12, 2005) (explaining that, because federal law required defendant "to refrain

9    from discrimination and harassment, [plaintiff] cannot predicate a breach of contract claim upon

10   Storopack's alleged failure to do so"). Dismissal of each claim is warranted.

11       Rather than identify the operative provisions of any agreement to support their express

12   contract claim, Plaintiffs vaguely suggest the Defendants have broken "promises to provide

13   Plaintiffs' equal access to YouTube and all related services that Defendants offer to other users"

14   by allegedly making various content moderation or monetization decisions. TAC ¶ 574. But each

15   of the alleged moderation or monetization decisions that they challenge is expressly reserved to

16   YouTube under the terms of the relevant agreements. Moreover, to the extent that some of these

17   allegations speculate as to racial motives for moderation decisions, they are "classic speculative

18   conclusion[s]" that can no more plausibly support a claim for breach of contract than Plaintiffs'

19   outright discrimination claim (as explained above). *Cf. DeHoog v. Anheuser-Busch InBev SA/NV*,

20   899 F.3d 758, 765 (9th Cir. 2018).

21       It is clear from the parties' agreements that the alleged removal, restriction, or

22   demonetization of Plaintiffs' content does not give rise to a viable contract claim, whether express

23   or implied, because the governing agreements expressly give YouTube the discretion to select how

24   videos are presented and monetized. The Terms of Service clearly state that YouTube reserves the

25

26       [8] As discussed *supra* at 2 n.2, though Plaintiffs never identify the express terms of the

27   agreements that they allege are violated, they focus on a set of agreements that includes
     YouTube's Terms of Service and the YouTube Partner Program and AdSense agreements. *See*

28   TAC ¶ 24 n.2.

right to remove content from its platform in its discretion. TAC, Exs. G-H; *see also id.*, Exs. D-F.

Likewise, the YouTube Partner Program Terms state that "YouTube is not obligated to display

any advertisements alongside your videos and may determine the type and format of ads available

on the YouTube Service." Willen Decl., Ex. 2. Finally, Google and YouTube's terms and policies

regarding advertising reserve "the right to refuse or limit your access to [AdSense] Services."

Willen Decl., Ex. 3. Because the parties' agreements expressly gave YouTube the discretion to

make each of the challenged moderation decisions, Plaintiffs' express claim cannot survive.[9]

Plaintiffs' implied contract claim fails for the same reason.[10] It is black-letter law that

Plaintiffs cannot premise a claim for breach of the implied covenant on an action specifically

permitted by the agreement. *See Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App.

4th 44, 56-57 (2002); *accord Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1159-60 (N.D.

Cal. 2020), *aff'd*, 857 F. App'x 907 (9th Cir. 2021); *Lewis v. Google LLC*, 2020 U.S. Dist. LEXIS

150603, at *44 (N.D. Cal. May 20, 2020) (YouTube did not breach the implied covenant by

removing objectionable videos); *Prager II*, 2019 Cal. Super. LEXIS 2034, at *31-32 (YouTube

did not breach the implied covenant by demonetizing and limiting access to plaintiff's videos);

*Ebeid v. Facebook, Inc.*, 2019 U.S. Dist. LEXIS 78876, at *21-22 (N.D. Cal. May 9, 2019)

(Facebook did not breach implied covenant by removing plaintiff's posts). That rule is fatal to

Plaintiffs' claims, because (as explained above) each of the challenged decisions was expressly

reserved to YouTube's discretion under the contract.

---

[9] Plaintiffs also confusingly suggest that Defendants have somehow expressly breached the
operative agreements by invoking Section 230(c) *in response to this lawsuit* (TAC ¶ 574), but do
not explain how that could even possibly be. Equally meritless is Plaintiffs' related claim that
Plaintiffs have somehow contracted out of Section 230 protection. TAC ¶¶ 443-445. Plaintiffs do
not (and could not) identify any provision of the parties' agreements that waives Defendants'
right to assert Section 230.

[10] Here, as "in most cases," Plaintiffs' implied covenant claim "add[s] nothing to [their] claim
for breach of contract." *Lewis*, 2020 U.S. Dist. LEXIS 150603, at *41. The implied covenant
"cannot be extended to create obligations not contemplated by the contract." *Pasadena Live v.
City of Pasadena*, 114 Cal. App. 4th 1089, 1094 (2004). Plaintiffs' attempt to invoke the
covenant either imposes limits "beyond those to which the parties actually agreed," rendering it
"invalid," or "seeks simply to invoke terms to which the parties *did* agree," rendering it
"superfluous." *Lewis*, 2020 U.S. Dist. LEXIS 150603, at *40-41.

Perhaps realizing that YouTube's moderation decisions fall within the discretion afforded under the relevant agreements, Plaintiffs now point to various inapplicable provisions of California's Civil Code and argue that the contract should be rescinded as "illusory." ¶ 587. But as Plaintiffs acknowledge, claims for rescission under Section 1689(b)(2) require the failure of adequate consideration—and Plaintiffs' allegations do not come close to meeting that requirement. Numerous courts have held that YouTube's terms create a contract "supported by adequate independent consideration" because the "ability to post videos, even without advertising revenues, can be valuable to content providers in reaching a wide audience." *Sweet v. Google Inc.*, 2018 U.S. Dist. LEXIS 37591 at *25-26 (N.D. Cal. Mar. 7, 2018) ("the provision of the Partner Program Terms conferring upon YouTube complete control over decisions regarding advertisements need not be deemed subject to the implied covenant of good faith and fair dealing in order to prevent the agreement from being illusory"); *accord Prager II*, 2019 Cal. Super. LEXIS 2034, at *31-32; *Mishiyev*, 444 F. Supp. 3d at 1159. The Terms of Service expressly include that mutual exchange, explaining that by agreeing to the contract and its conditions, users are able to "submit Content to the Service." TAC Exs. G-H; *see also* Exs. D-F. Plaintiffs have no basis for undermining the parties' mutual consideration by ordering rescission. Nor can Plaintiffs obtain rescission merely by repackaging their Unruh Act and Section 1981 claims under Sections 1689(b)(5) or 1689(b)(6)). *See, e.g.*, *Mahaffa v. McGraw*, Cal. App. Unpub. LEXIS 4310, at *41-42 (June 30, 2021) (rejecting rescission where court previously rejected same theory that contract was unlawful).

### F.     Plaintiffs Fail To State An Equitable Claim

Having abandoned most of their equitable claims in response to Defendants' prior motion to dismiss, Plaintiffs nevertheless reassert those claims in the TAC. Each fails as a matter of law.

**Promissory Estoppel**. Plaintiffs again try to repackage their contract claims as a claim for promissory estoppel. But this theory is again belied by the parties' written agreements.

Promissory estoppel is an equitable theory based on a promise to perform that is unbargained for and that plaintiffs reasonably and foreseeably relied upon to their detriment. *Youngman v. Nev. Irrigation Dist.*, 70 Cal. 2d 240, 249-50 (Cal. 1969). It "is not a doctrine designed to give a party to a negotiated commercial bargain a second bite at the apple in the event

it fails to prove a breach of contract." *Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir. 1984). But that is precisely what Plaintiffs seek to do here. They claim to have detrimentally relied on several of YouTube's alleged promises (TAC ¶ 594) in exchange for Plaintiffs' "irrevocable licenses, rights and other valuable consideration" (*id.* ¶ 597). This kind of bargained-for exchange "is founded on the very acts which induced [Plaintiffs] to enter into the written agreements" (*see id.* ¶¶ 573, 583, 596-597) and, as such, it cannot give rise to a claim of promissory estoppel. *Walker*, 728 F.2d at 1219; *accord Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 954 (N.D. Cal. 2010).

On top of that, Plaintiffs do not identify any "clear and unambiguous" promises made by YouTube that could create an enforceable agreement outside the parties' written contracts. *White v. J.P. Morgan Chase, Inc.*, 167 F. Supp. 3d 1108, 1113 (E.D. Cal. 2016). As discussed above, YouTube's Terms of Service and advertising agreements expressly authorize it to remove content and to decline to pair videos with ads. TAC, Exs. G-H; Willen Decl., Ex. 2. Plaintiffs do not, for example, allege that YouTube ever said anything that assured Plaintiffs the unfettered right to monetize their videos or have them appear in Restricted Mode. And they certainly cannot conjure a legally enforceable promise at odds with the terms of the parties' written agreements. *See Aguilar v. Int'l Longshoremen's Union Local #10*, 966 F.2d 443, 446-47 (9th Cir. 1992).

**Accounting.** Plaintiffs' claim for accounting is predicated on Defendants' supposed failure to pay Plaintiffs revenue allegedly owed under the parties' agreements. TAC ¶¶ 616-618. (Insofar as Plaintiffs might argue that the claim is based on something else, they do not explain what basis they have for asserting that YouTube owes them any money that could be the subject of an accounting.) As such, any version of this claim would be derivative of Plaintiffs' contract claims and fail for the reasons discussed. *See, e.g.*, *Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215, 1221 (N.D. Cal. 2011); *Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1068-69 (N.D. Cal. 2013). Nor do Plaintiffs explain why they have no adequate remedy at law here. *See, e.g.*, *Merritt v. JP Morgan*, 2018 U.S. Dist. LEXIS 69006, at *29-30 (N.D. Cal. Apr. 24, 2018) (Koh, J.) ("[W]here any money owed to Plaintiffs would be a result of damages, California courts have dismissed separate claims for an accounting.").

1     **Conversion.** Plaintiffs' conversion claim is based on YouTube's allegedly wrongful

2     retention of Plaintiffs' videos "in the form of electronic data" after those videos have been

3     removed from the YouTube platform. TAC ¶¶ 629-630. This theory fails on multiple grounds.

4         First, Plaintiffs consented to YouTube's retention of this data by uploading their videos to

5     YouTube and accepting the Terms of Service. "[T]here can be no conversion where an owner

6     either expressly or impliedly assents to or ratifies the taking, use or disposition of his property."

7     *Vallarta v. United Airlines, Inc.*, 497 F. Supp. 3d 790, 810 (N.D. Cal. 2020); *see Bank of N.Y. v.*

8     *Fremont Gen. Corp.*, 523 F.3d 902, 914 (9th Cir. 2008). Plaintiffs specifically agreed that

9     "YouTube may retain, but not display, distribute, or perform, server copies of [Plaintiffs'] videos

10    that have been removed or deleted" (TAC, Exs. D-H); and acknowledged that Plaintiffs could save

11    a copy of their data at any time prior to its removal (TAC, Exs. D-F). This consent to the terms

12    "negatives the wrongful element of the defendant's act." *Fremont Gen. Corp.*, 523 F.3d at 914

13    (citations omitted).

14        But even beyond consent, decisions in California and in this District have repeatedly held

15    that a plaintiff cannot plead a conversion claim based on unspecified, intangible electronic data.

16    *See Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 239 n.21 (2010); *UCAR Tech. (USA)*

17    *Inc. v. Li*, 2018 U.S. Dist. LEXIS 93817, at *9-10 (N.D. Cal. June 4, 2018) (dismissing a

18    conversion claim "[t]o the extent the conversion claim is based upon the misappropriation of

19    unspecified, intangible, non-trade secret 'computer data,' 'proprietary information and work

20    product'"); *Avago Techs. United States Inc. v. NanoPrecision Prods.*, 2017 U.S. Dist. LEXIS

21    13484, at *19-22 (N.D. Cal. Jan. 31, 2017).[11]

22        **Replevin.** Plaintiffs correctly recognize their claim for replevin—an equitable remedy

23    providing specific performance of the return of physical property improperly held by another—

24    rises and falls with conversion. TAC ¶ 632; *see Fuhu, Inc. v. Toys "R" Us, Inc.*, 2013 U.S. Dist.

25    LEXIS 196563, at *42 (S.D. Cal. Mar. 1, 2013); *see also Englert v. IVAC Corp.*, 92 Cal. App. 3d

26

27    ───────────────

        [11] To the extent Plaintiffs allege conversion of the *content* of their videos (*see* TAC ¶ 630),
28    that claim would be preempted by the Copyright Act. *See Media.net Advert. FZ-LLC v. NetSeer,*
      *Inc.*, 156 F. Supp. 3d 1052, 1069-70 (N.D. Cal. 2016).

1    178, 184 (1979). It therefore fails for the reasons discussed above.

2        **G.    Plaintiffs Fail To State A Claim Under The UCL**

3        The UCL "establishes three varieties of unfair competition"—unlawful, unfair, or

4    fraudulent. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999).

5    Plaintiffs cannot state an unlawfulness claim because they fail to allege a predicate unlawful act.

6    *See Oracle Am., Inc. v. Cedarcrestone, Inc.*, 938 F. Supp. 2d 895, 908 (N.D. Cal. 2013).

7        The UCL defines an "unfair" business practice differently depending on whether the

8    plaintiff sues as a competitor or as a consumer. To assert a competitor claim, Plaintiffs must

9    identify conduct that "threatens an incipient violation of an antitrust law … or otherwise

10   significantly threatens or harms competition." *Cel-Tech*, 20 Cal. 4th at 187. The TAC alleges

11   nothing close to that; instead, it offers threadbare assertions that Defendants somehow compete

12   with Plaintiffs by posting their own (unidentified) videos on YouTube. TAC ¶¶ 86, 88, 116, 147,

13   196). Plaintiffs' theory seems to be that YouTube restricts Plaintiffs' content unfairly, while

14   exempting its own content (or that of "preferred" or "sponsored" creators) (*id.* ¶¶ 89, 164, 605),

15   and that it uses its supposed "monopoly" power to "manipulate, bully, and falsely denigrate

16   legitimate YouTube users" (*id.* ¶¶ 85, 116, 199). This is not enough to show an incipient antitrust

17   violation or actual ***harm to competition*** (rather than just Plaintiffs). *See Cel-Tech*, 20 Cal. 4th at

18   186 ("Injury to a competitor is not equivalent to injury to competition."); *accord Levitt v. Yelp!*

19   *Inc.*, 765 F.3d 1123, 1136-37 (9th Cir. 2014) (rejecting assertion that Yelp "harms competition by

20   favoring businesses that … purchase advertising to the detriment of competing businesses that

21   decline to purchase advertising"); *Kinderstart.com, LLC v. Google, Inc.*, 2007 U.S. Dist. LEXIS

22   22637, at *18 (N.D. Cal. Mar. 16, 2007) (directing traffic to "*third-party* sites that competed with

23   KinderStart" did not show harm to competition).

24       Beyond these allegations, Plaintiffs assert that Defendants violated the UCL by allegedly

25   misleading the public that YouTube's enforcement of its rules "appl[ied] equally to all." TAC

26   ¶ 604; *see id.* ¶¶ 145-146. Whether offered under the "unfair" prong or the "fraudulent" prong, this

27   claim fails because Plaintiffs fail to identify any misleading statements with the particularity

28   required by Rule 9(b), and because YouTube's statements about the open nature of its platform

1    and its commitment to free expression are non-actionable statements, particularly when viewed

2    alongside YouTube's specific policies regarding Restricted Mode and advertising. *Prager II*, 2019

3    Cal. Super. LEXIS 2034, at *32-33 (dismissing nearly identical UCL claim). As for the statements

4    that Plaintiffs' videos were excluded from Restricted Mode, the TAC fails to allege that Plaintiffs

5    relied on those statements in any way. *See Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 326-27

6    (2011). Finally, Plaintiffs fail to allege financial harm as a result of any allegedly false statement,

7    as opposed to YouTube's decision to make certain of their videos less visible or demonetize them.

8    *Prager II*, 2019 Cal. Super. LEXIS 2034, at *33-34.

9    **III.    GOOGLE IS PROTECTED FROM PLAINTIFFS' CLAIMS BY SECTION 230**

10   **A.    Google Is Protected By Two Separate Provisions Of Section 230**

11           While the Court need go no further to dismiss this action, insofar as Plaintiffs' claims are

12   based on YouTube's decisions about whether and how to display videos and advertisements, they

13   are separately barred by Section 230, which immunizes online platforms against efforts to hold

14   them liable for publishing decisions like these. 47 U.S.C. §§ 230(c), (e)(3); *accord Barnes v.*

15   *Yahoo!, Inc.*, 570 F.3d 1096, 1102-03 (9th Cir. 2009).

16           Two separate provisions of Section 230 are relevant here. *First*, Section 230(c)(1) bars

17   lawsuits "seeking to hold a service provider liable for its exercise of a publisher's traditional

18   editorial functions—such as deciding whether to publish, withdraw, postpone or alter content."

19   *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). As the Ninth Circuit has explained,

20   "any activity that can be boiled down to deciding whether to exclude material that third parties

21   seek to post online is perforce immune under section 230." *Barnes,* 570 F.3d at 1102. This Court

22   thus has squarely held that Section 230(c)(1) protects against exactly the kinds of claims at issue

23   here: attacks on a service provider's "decision to block access to—or, in other words, to refuse to

24   publish"—user content, including user-uploaded videos and advertisements. *Sikhs for Justice*

25   *"SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1094-95 (N.D. Cal. 2015), *aff'd*, 697 F.

26   App'x 526 (9th Cir. 2017); *see also, e.g.*, *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F.

27   Supp. 3d 1107, 1119-20 (N.D. Cal. 2020); *Daniels v. Alphabet Inc.*, 2021 U.S. Dist. LEXIS

28   64385, at *34-35 (N.D. Cal. Mar. 31, 2021) (YouTube immune for removing and restricting user's

videos); *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 35 (2021) (banning user and blocking content).[12]

*Second*, Plaintiffs' claims predicated on the exclusion of their videos from Restricted Mode fail independently under the separate immunity provided by Section 230(c)(2)(B). This provision immunizes a provider of an "interactive computer service" as to "any action taken to enable or make available" to a user "the technical means to restrict access" to "material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable." 47 U.S.C. § 230(c)(2)(A)-(B). The immunity "covers actions taken to enable or make available *to others* the technical means to restrict access to objectionable material." *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1173-75 (9th Cir. 2009).

Restricted Mode is precisely the kind of tool covered by this immunity: it gives YouTube users the "technical means" to "restrict access" to content that they or YouTube deem "objectionable" for especially sensitive users (including material that may be sexually explicit or violent). *See Prager II*, 2019 Cal. Super. LEXIS 2034, at *25-26 (Section 230(c)(2)(B) bars similar claims based on YouTube's application of Restricted Mode); *see also* Willen Decl., Ex. 5. Restricted Mode is specifically designed to "maximize user control" and to "empower parents to restrict their children's access to objectionable or inappropriate online material"—just what Congress intended Section 230(c)(2)(B) to encourage and protect. 47 U.S.C. § 230(b)(3)-(4).

**B.    Section 230 Is Not Unconstitutional**

Perhaps recognizing that a straightforward application of Section 230 bars their claims, the

---

[12] The TAC rattles off a list of other alleged misconduct of mostly unspecified significance that exemplifies YouTube's role as a publisher of user-submitted content. *See supra* at 4 & n.3. Like the decisions regarding Restricted Mode, monetization, and removal of content, these alleged actions (to the extent they are discernable and could, even theoretically, state some viable claim) represent decisions by YouTube regarding whether and how to display content produced by others—what kinds of content to pair with ads, how to organize and present content to viewers, and whether and how to enable viewers to interact with content. These are decisions a publisher makes, and as such they are equally protected by Section 230(c)(1). *See Gonzalez v. Google LLC*, 2 F.4th 871, 913 (9th Cir. 2021) (Section 230(c)(1) bars claims based on pairing content with ads); *Levitt v. Yelp! Inc.*, 2011 U.S. Dist. LEXIS 124082, at *20 (N.D. Cal. Oct. 26, 2011) (Section 230(c)(1) bars claims based on changing the order in which Yelp reviews appear), *aff'd*, 765 F.3d 1123 (9th Cir. 2014).

TAC alleges that Section 230 is unconstitutional. TAC ¶¶ 32-33, 59, 61, 154-156, 448-451. While there is no reason for the Court to address this issue, Plaintiffs' argument is contrary to decades of case law, which has consistently applied Section 230 to protect online services like YouTube— and rejected similar constitutional objections. *See Green v. Am. Online (AOL)*, 318 F.3d 465, 472 (3d Cir. 2003); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 994-95 (S.D. Tex. 2017). For good reason: YouTube's reliance on Section 230 does not violate Plaintiffs' constitutional rights.

*First*, a constitutional challenge requires that the party "charged with the deprivation must be a person who may fairly be said to be a state actor" (*Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982)), but as the Government has explained (Dkt. No. 54 at 7-9), and this Court has held (Order at 16-18), YouTube is not a state actor. *See also Divino*, 2021 U.S. Dist. LEXIS 3245, at *19-22. In *Roberts v. AT&T Mobility LLC*, 877 F.3d 833 (9th Cir. 2017), the Ninth Circuit rejected a similar effort to hold the Federal Arbitration Act unconstitutional when it was invoked as a defense by a private litigant: "Plaintiffs cannot convert AT&T into a state actor simply by framing their FAA challenge as 'direct.'" *Id*. at 839. So too here, YouTube is not transformed into a state actor merely by relying on a federal statute in defense of a civil lawsuit. *Id*. at 838-39 ("[P]rivate parties [do not] face constitutional litigation whenever they seek to rely on some [statute] governing their interactions with the community surrounding them." (citing *Lugar*, 457 U.S. at 937)); *see* Order at 16 (rejecting Plaintiffs' argument that "that Defendants' invocation of Section 230(c) as an affirmative defense is sufficient to create state action").

*Second*, even if there were state action, Section 230 does not violate the First Amendment. The statute does not "prohibit any speech" (*Lewis*, 851 F. App'x at 723-724 & n.2), or "coerce private entities like Defendants to take any action, including any action that violates Plaintiffs' First Amendment rights" (Order at 17). *Accord Green*, 318 F.3d at 472. To the contrary, the statute protects the *voluntary* self-regulatory actions of private online platforms. Indeed, as this Court has explained, the whole purpose of Section 230 was to *avoid* the kind of government censorship that raised constitutional concerns. Order at 17-18.

Plaintiffs' reliance (TAC ¶¶ 32, 33.i, 155, 434, 450) on the plurality decision in *Denver Area Educational Telecommunications Consortium, Inc. v. FCC*, 518 U.S. 727 (1996), is

misplaced. The Ninth Circuit has instructed that this plurality opinion is "not binding" and should be read "very narrowly." *Roberts*, 877 F.3d at 840. That reflects *Denver Area*'s "unique context, where cable operators were empowered by statute to censor speech on public television," *id.* at 841, where they "ha[d] not historically exercised editorial control," *Denver Area*, 518 U.S. at 760-61. Section 230(c) is very different: it does not single out one narrow category of speech for censorship or create new editorial rights that did not exist before. To the contrary, online service providers have *always* had broad discretion to make their own choices about what content to allow on their services. *See Divino*, 2021 U.S. Dist. LEXIS 3245, at *19-22; *accord Prager Univ. v. Google LLC*, 2018 U.S. Dist. LEXIS 51000, at *25 (N.D. Cal. Mar. 26, 2018) ("*Prager I*") (rejecting similar reliance on *Denver Area*).

In that regard, far from violating the Constitution, Section 230 actually reinforces the First Amendment rights of online service providers to exercise judgments about content that they disseminate. *See Miami Herald Publ'g Co., Div. of Knight Newspapers, Inc. v. Tornillo*, 418 U.S. 241, 258 (1974) (First Amendment protects "exercise of editorial control and judgment"); *NetChoice, LLC v. Moody*, 2021 U.S. Dist. LEXIS 121951, at *26, *29-36 (N.D. Fla. June 30, 2021) (striking down state law that sought to interfere with social media platforms' editorial judgments). By providing statutory protection for this constitutional right to self-regulate, Section 230 does not transform private editorial choices into government-mandated prior restraints.

## CONCLUSION

For these reasons, Plaintiffs' TAC should be dismissed with prejudice.

Respectfully submitted,

Dated:  November 1, 2021

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: _____*/s/ Brian M. Willen*_____
Brian M. Willen
bwillen@wsgr.com

Attorneys for Defendants
GOOGLE LLC and YOUTUBE, LLC