1  Peter Obstler/SBN 171623
   pobstler@egcfirm.com
2  Eric M. George/SBN 166403
   egeorge@egcfirm.com
3  Dennis Ellis/SBN 178196
   dellis@egcfirm.com
4  Debi A. Ramos/SBN 135373
   dramos@egcfirm.com
5  ELLIS GEORGE CIPOLLONE
      O'BRIEN ANNAGUEY LLP
6  2121 Avenue of the Stars, Suite 2800
7  Los Angeles, CA 90067
   310-274-7100; Facsimile: 310-275-5697
8
9  Attorneys for Plaintiffs Kimberly Carleste
   Newman, Lisa Cabrera, Catherine Jones,
10 Denotra Nicole Lewis, Andrew Hepkins,
   Harvey Stubbs, Khalif Muhammad, Keu
11 Reyes, and Osiris Ley

   David H. Kramer/SBN 168452
   dkramer@wsgr.com
   Lauren Gallo White/SBN 309075
   lwhite@wsgr.com
   Kelly M. Knoll/SBN 305579
   kknoll@wsgr.com
   WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
   650 Page Mill Road
   Palo Alto, CA 94304-1050
   650-493-9300; Facsimile: 650-565-5100

   Brian M. Willen (Admitted *Pro Hac Vice*)
   bwillen@wsgr.com
   WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
   1301 Avenue of the Americas, 40th Floor
   New York, NY 10019-6022
   212-999-5800; Facsimile: 212-999-5801

   Attorneys for Defendants Google LLC and
   YouTube, LLC

12

13

14

15                     UNITED STATES DISTRICT COURT

16        NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

17  Kimberly Carleste Newman, Lisa Cabrera,      Case No. 3:20-cv-04011-VC
    Catherine Jones, Denotra Nicole Lewis,
18  Andrew Hepkins, Harvey Stubbs, Khalif
    Muhammad, Keu Reyes and Osiris Ley,          **JOINT CASE MANAGEMENT
19                                               STATEMENT**
                   Plaintiffs,
20                                               Judge:   Hon. Vince Chhabria
21         vs.                                   Date:    June 22, 2022
                                                 Time:    1:00 p.m.
22  Google LLC, YouTube LLC, Alphabet, Inc.      Crtrm:   4
    and Does 1 through 100, inclusive,
23
                   Defendants.
24

25

26

27

28

1    The parties to the above-entitled action respectfully submit this Joint Case Management

2  Statement pursuant to Judge Vince Chhabria's Notice Scheduling Initial Case Management

3  Conference (Dkt. No. 103), the Clerk's Notice requiring the filing of the Joint Case Management

4  Statement by June 15, 2022 (Dkt. No. 112), the Standing Order for All Judges of the Northern

5  District of California, and Civil Local Rule of Court 16-9.

6  **Plaintiffs' Statement:**

7    The Case Management Conference ("CMC") for this matter was continued on several

8  occasions under assignment to Judge Lucy Koh. Following the Court's Order Reassigning Case to

9  Judge Vince Chhabria (Dkt. No. 92), an Initial Case Management Conference was scheduled for

10  May 18, 2022 and thereafter continued to June 22, 2022.  To date, no CMC or other hearing has

11  ever been held in this case.  Plaintiffs are prepared to go forward with the CMC as ordered.

12  **Defendants' Statement:**

13    While Defendants are prepared to go forward with the CMC, Defendants do not believe

14  that it is necessary for the Court to hold a CMC unless and until the Court denies any part of

15  Defendants' pending Motion to Dismiss the Third Amended Class Action Complaint (Dkt. No. 80,

16  "MTD"). Defendants sought Plaintiffs' consent to continue the CMC date pending the Court's

17  forthcoming decision, but Plaintiffs declined to consent to a continuance.

18

19  1.  <u>Jurisdiction & Service</u>
    *The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether*
20  *any issues exist regarding personal jurisdiction or venue, whether any parties remain to be served, and, if any parties*
    *remain to be served, a proposed deadline for service.*
21

22  a.  The parties agree that jurisdiction over Plaintiffs' Third Cause of Action under 42 U.S.C.

23  §§ 1981 and 1983, and Fourth Cause of Action under 15 U.S.C. § 1125 (the Lanham Act), arises

24  under 28 U.S.C. § 1331.

25  **Plaintiffs' Statement:**

26    Federal jurisdiction over Plaintiffs' First Claim for Declaratory and Equitable Relief also

27  arises under 28 U.S.C. §§ 1331, 1337(a), and 2201. *See Gunn v. Minton, 568 U.S. 251, 258-259*

28  *(2013); Sarauer v. International Association of Machinists and Aerospace Workers, District No.*

*10, 966 F.3d 661, 673-675 (7th Cir. 2020); Noatex Corp. v. King Construction of Houston LLC, 74 F.Supp.3d 764, 772-774 (N.D. Miss., 2014)*; *United States v. Texas*, No. 1:21-cv-796-RP, slip op. (W. D. Tex. Oct. 6, 2021).  Furthermore, federal jurisdiction exists for all of the Plaintiffs' claims set forth in the Third Amended Class Action Complaint ("TAC") (Dkt. No. 77) under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), because this lawsuit is a representative action with at least 100 class members and "minimal diversity" exists because the citizenship of one or more of the class members is different from that of any defendant, and the aggregate amount in controversy exceeds $5 million.

**Defendants' Statement:**

Defendants do not agree that the TAC has established that 28 U.S.C. § 1332(d) is an independent basis for jurisdiction in this case. Nor do Defendants agree that the Court should assert jurisdiction over Plaintiffs' declaratory relief claim under the Declaratory Judgment Act. *See* Dkt. No. 68.

b. No issues exist regarding personal jurisdiction or venue, and no parties remain to be served.

2. Facts
*A brief chronology of the facts and a statement of the principal factual issues in dispute.*

**Plaintiffs' Statement:**

Plaintiffs do not challenge Defendants' right to moderate content in accordance with and under the identity neutral, content based rules that Defendants set and use to moderate content on YouTube under the sites Terms of Service and other promises to consumers.  What Defendants cannot do is violate those rules and legal obligations to consumers like Plaintiffs, by among other things, using the consumer's race or other protected identity to make identity neutral, content based filtering and blocking decisions.  The use of a consumer's identity to make neutral, content based decisions is unlawful discrimination under and in breach of a consumer contract, and violates the longstanding prohibitions against race and other identity based discrimination under a consumer contract, false advertising, consumer fraud, and California's Liberty of Speech protections provided to consumers who visit or use large private business establishments in

reliance on the property owners contractual promises of free speech and expression.

a.  On June 16, 2020, after Defendants refused to discuss and resolve Plaintiffs' claims regarding identity based discrimination in violation of the Terms of Service and federal and state anti-discrimination laws, Plaintiffs commenced this action on behalf of themselves individually and a putative class of similarly situated users of the global social media platform YouTube.

b.  Beginning at least sometime in 2016, and possibly earlier, and continuing through the present, Defendants admitted that they are using digital and other tools and machines to profile and use Plaintiffs' race and other protected identity status to restrict and deny Plaintiffs and other similarly situated YouTube users' rights to post, advertise, and monetize content and access promotional services that are available equally to all YouTube users, subject only to restrictions based on material that violates specific content based rules.  Defendants' use of race or other protected identity classifications to filter and block people, rather than objectionable content on YouTube, is unlawful discrimination under and in violation Defendants' contractual promises, terms of service, and license agreements that date back to 2006. Furthermore, Defendants use this discriminatory practice to unlawfully:  (1) promote and monetize their own content by falsely branding and telling Plaintiffs' advertisers, subscribers, and followers that Plaintiffs' content contains hate speech, sexually explicit, or graphically violent content, when they know it does not -- restricting or removing Plaintiffs' content from audiences and advertisers, and then doubling down on that lie by directing racist and other objectionable content to Plaintiffs' intended audiences and advertisers through comment and communication portals that link users directly to Plaintiffs' channels and content;  (2) convert and use Plaintiffs' intellectual property, data, and money on YouTube, while failing and refusing to account for all monies paid by and/or due and owing Plaintiffs;  (3) engage in deceptive, and unfair business practices; and  (4) use YouTube's ubiquitous reach to administer, control, and impact public functions, including the administration of elections, health and financial information, policing and law enforcement, and to operate the largest public forum in the world. In 2017, Defendants admitted that they were unlawfully "targeting" Plaintiffs and other users by using race and other personal identity classifications to filter and block Plaintiffs' access to advertising, monetization, and other services on YouTube in violation of contractual promises and

state and federal laws.  In 2019, Defendants were caught on a recorded customer service phone call declining to provide advertising services to a user because of what was described as the companies' policy prohibiting the "gay thing" on YouTube.  In addition to these and other admissions by Defendants, Defendants have been caught using algorithms, computer based tools, artificial intelligence, and other practices to filter, restrict, exclude, and/or block Plaintiffs' video content, channels, and access to services on YouTube based on race or identity, rather than on video material or content, in direct violation of Defendants' promise and statutory obligations to provide equal access to YouTube under neutral content based rules and guidelines that apply equally to all users, regardless of their race, gender, sexual orientation, religion, political identity, or other trait.  *See* Safiya Umoja Noble, "Algorithms of Oppression," Apple Books; https://books.apple.com/us/book/algorithms-of-oppression/id1327926683.  Furthermore, beginning at least in 2020, Defendants unilaterally and with no basis or notice to Plaintiffs, began to change, manipulate, and reduce the view numbers and total view times of Plaintiffs' videos and channels, as well as those of tens of millions other YouTube users.

c.  Defendants' conduct has caused and resulted in substantial financial and other harms, including lost revenue and income, harm to license and other property rights, conversion of Plaintiffs' property, and failure to account for and pay monetary and other valuable forms of consideration due and owing Plaintiffs and other YouTubers.  Defendants also continue to harm Plaintiffs and other similarly situated YouTubers by withholding, converting, and failing to pay revenues already earned, after Defendants removed videos or channels from the platform.  Finally, Defendants have converted and deprived Plaintiffs of the use and fair value of their intellectual property, video content, and data, by archiving and removing many of Plaintiffs' videos and channels, without notice, and in many cases depriving Plaintiffs of any further access to their property, including original video content and material.

d.  This case turns on one core factual issue that gives rise to all of the claims asserted by Plaintiffs here:  Defendants' use of algorithms, computer code and data, artificial intelligence, and other digital and manual tools that profile and use Plaintiffs' race or other protected identity to make identity neutral content based decisions about what and who gets access to YouTube.  The

resolution of that core factual issue turns on an inspection of the computer code, architecture, and functional operation of Defendants' filtering and blocking tools and practices, including the testimony and admissions of the engineers and other employees who built and operate Defendants filtering and blocking systems.  Once that factual information is known and the record is established, then, and only then, can the other core issues be resolved, including:

d.(i)  Are Defendants using Plaintiffs' race, gender, sexual orientation, identity, or protected classifications or viewpoints to filter and block Plaintiffs' content, advertising, or monetization on YouTube, under and in violation of contract, including intellectual property, content, and data licensing provisions, and the federal and state laws that prohibit identity based discrimination under a consumer contract?

d.(ii)  Are Defendants falsely representing to the market of YouTube users, viewers, subscribers and advertisers that Plaintiffs' videos contain material or content that is inappropriate, offensive, or otherwise violates YouTube's guidelines and rules?

d.(iii)  Have Defendants manipulated viewing, advertising data, or other data, or otherwise failed to account for monetary or other consideration due and owing to third party users?

d.(iv)  Have Defendants converted or otherwise deprived users of their property or intellectual property rights that arise from video content, data, or other property of users?

d.(v)  Based on the specific evidentiary record, including the ubiquity and reach of YouTube and its filtering tools that materially impact functions that are or were traditionally administered by a government, do Defendants hold out and operate the YouTube platform as a for profit forum for public expression and speech that is subject to scrutiny under Article 1. Section 2 of the California Constitution (the Liberty of Speech Clause) and/or the First Amendment of the U.S. Constitution?

d.(vi)  Are Defendants entitled to immunity for liability on any or all claims under §230(c) for filtering and blocking content and access on YouTube based in some part on the identity of the user rather than the actual "material" in the online content?

**Defendants' Statement:**

      YouTube is a popular online service for sharing videos and related content. YouTube

allows creators whose YouTube channels meet certain requirements to earn revenue from (or "monetize") their videos. The use of YouTube is governed by rules and policies that make clear that certain kinds of content—including harassment, hate speech, and other harmful or dangerous content—are not allowed and that YouTube has discretion to remove unwanted material from its service. *See, e.g.*, TAC ¶¶ 2, 24 n.2, 55, 127-130, 132, 136, 138, 401, 522. YouTube also offers a feature called Restricted Mode, an optional, opt-in setting that a small minority of users select to screen out content flagged as age-restricted or potentially adult. *Id.* ¶¶ 184-187.

Plaintiffs are individuals who identify as African American, Puerto Rican, or Mexican American and claim to have hosted their videos on YouTube over a period of more than five years. *Id.* ¶¶ 34-42. Plaintiffs' content includes videos titled "CANDACE OWENS IS A 'COON ARTIST'" and "What I Don't Like About Mexicans…", as well as videos depicting gory and simulated violence. *Id.* ¶¶ 34-42, 390, 392. No Plaintiff alleges that they are currently prohibited from uploading content to YouTube or from operating channels on YouTube's general service (that is, without Restricted Mode turned on). Plaintiffs' allegations are far more limited: they claim that YouTube removed (or failed to restore) a fraction of their videos, excluded some (but not all) of their videos from Restricted Mode, deemed some (but not all) of their videos inappropriate for advertising (or "demonetized" them), and took other actions that allegedly made it harder for viewers to find or access their videos and channels. Plaintiffs have attempted to pile up these alleged actions, all of which are contractually permitted, and weave them into a vaguely defined attack against Defendants.

For example, Plaintiffs contend that YouTube's algorithms "target" Plaintiffs or flag videos on the YouTube platform based on race. But, as was true of the Second Amended Complaint ("SAC"), nothing in the TAC or Plaintiffs' supporting documents plausibly suggests that YouTube or its algorithms consider race in any way to restrict or demonetize users' content. Plaintiffs claim to rely on so-called "admissions" that "the YouTube algorithm discriminates when making decisions" (*e.g.*, TAC ¶¶ 98-101), and that YouTube has a "policy" prohibiting the "gay thing" on its platform (*id.* ¶ 102), but those vague assertions are false. Defendants have admitted no such thing, nor ever engaged in any practice of intentionally discriminating against

content creators on the basis of race or adopting or enforcing any content policies that treat creators or videos differently based on race, ethnicity, or sexual orientation. Moreover, the Court has already rejected Plaintiffs' reliance on these allegations in dismissing the SAC, explaining that they do not "support Plaintiffs' argument that Defendants intentionally and purposefully discriminated against Plaintiffs on the basis of race by intentionally restricting and demonetizing Plaintiffs' videos." Dkt. No. 68 at 12-13.

Rather than being grounded in reality, Plaintiffs' story of discrimination continues to be based, at best, on their own guesses about the reasons their videos were restricted or demonetized and their claims reduce to dissatisfaction with the content-based moderation choices that YouTube made to restrict or demonetize some (but not all) of Plaintiffs' videos. As explained further in the pending MTD, Plaintiffs' allegations fail to state a claim for relief even if accepted as true. But those allegations are not true. None of the Plaintiffs or their content has been "targeted" or treated differently because of their race or ethnicity. Plaintiffs' allegations do not reflect how YouTube actually operates, and while Plaintiffs may disagree with YouTube's decisions about how to apply and enforce its content-based rules governing user content and access to its platform, they are simply wrong to conflate those disagreements with racial or ethnic discrimination. YouTube is committed to the cause of racial justice and anti-racism, and it works to eradicate it, not to perpetuate it.

3. <u>Legal Issues</u>
*A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.*

The disputed points of law are set forth in the parties' briefing in connection with Defendants' pending MTD, which the Court has taken under submission for decision on the papers. *See* Dkt. No. 101.

4. <u>Motions</u>
*All prior and pending motions, their current status, and any anticipated motions.*

a. *Prior motions*:

a.(i)  The United States Government filed a Motion to Intervene, which was granted on February

9, 2021.  Dkt. No. 49.

a.(ii)  Defendants filed a Motion to Dismiss the SAC (Dkt. No. 29), which was granted on June 25, 2021 (Dkt. No. 68).

a.(iii)  Plaintiffs filed a Motion to Strike Defendants' Motion to Dismiss (Dkt. No. 39), which was denied on June 25, 2021 (Dkt. No. 68).

a.(iv)  Defendants filed an Administrative Motion for Leave to File Response to Plaintiffs' March 29, 2021 Submission (Dkt. No. 56), which was denied as moot on June 25, 2021 (Dkt. No. 68).

a.(v)  The parties filed a Joint Stipulated Request to Extend Dates and Amend Briefing Schedule on September 27, 2021 (Dkt. No. 75), which was denied on September 28, 2021 (Dkt. No. 76).

a.(vi)  Defendants filed the MTD on November 2, 2021, which is currently pending.  Briefing is complete and the Court has indicated that it will issue a written ruling based on the papers (Dkt. No. 101).


b.  *Anticipated Motions*:


**Both parties:**

        If this case proceeds, the parties likely will file cross-motions for summary adjudication/judgment.

**Plaintiffs' Statement:**

        Plaintiffs intend to file a motion to certify a class of similarly situated YouTube users. Furthermore, in the event that Plaintiffs and Defendants are unable to reach an agreement on preserving the status quo, Plaintiffs may decide to file an application for Preliminary Injunction ("PI") (1) to prevent Defendants from further intentional breaches of the contract; (2) to prevent Defendants from further unilaterally amending or changing the contract; (3) to require Defendants to equally enforce the Community Guidelines and Terms of Service in response to flags and complaints made by members of the class; and (4) to prohibit Defendants from demonetizing, issuing warnings and/or strikes or removing videos and channels of the members of the class without first demonstrating that specific content posted constitutes a violation of the contract.

Based on what the code and architecture investigation reveal about the function and scope of Defendants' filtering and blocking practices and the evidentiary record related to when those practices started, the PI and class and issues should be susceptible to resolution.

**Defendants' Statement:**

Defendants filed the MTD on November 1, 2021 pursuant to the Court's July 22, 2021 Scheduling Order (Dkt. No. 74). Briefing is complete and the Court has indicated that it will issue a written ruling based on the papers. Dkt. No. 101. Defendants would oppose any motion to certify a class or application for Preliminary Injunction. Defendants do not currently contemplate filing other motions, but they reserve the right to do so.

5.  Amendment of Pleadings
*The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.*

**Plaintiffs' Statement:**

Per the Court's June 25, 2021 Order (Dkt. No. 68), Plaintiffs' TAC did not add new claims or parties.  Plaintiffs reserve the right to do so at a later date and/or after the Court rules on Defendants' Motion to Dismiss the TAC and/or to comply with or address any additional Court ruling.

**Defendants' Statement:**

Defendants believe that any amendment to the TAC would be futile.

6. Evidence Preservation
*A brief report certifying that the parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirming that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. See ESI Guidelines 2.01 and 2.02, and Checklist for ESI Meet and Confer.*

**Plaintiffs' Statement:**

This case turns on a purely factual issue: are Defendants using computer driven filtering and blocking tools that use and consider the race or other protected identity of the consumer under

and in violation of a consumer contract?  The only way to create a record on which that threshold issue can be fully and fairly adjudicated is through a discovery process in which Defendants, subject to appropriate confidentiality protections, are required to be transparent in the discovery process about how and what they use to filter and block content on YouTube.  Discovery, including disclosure by Defendants of the computer code, architecture, and complete information used to filter, block, or regulate content, user access, and user services on YouTube, and the extent to which any of Defendants conduct may come within the statutory immunity of 47 U.S.C. § 230(c) and the specific blocking and filtering rules Defendants promise to consumers, is the only means by which the Court can adjudicate whether Defendants conduct violates their contractual promises and/or California and federal statutory prohibitions on the use of a consumer's protected identity under and in violation of a consumer contract.

The parties have reviewed the ESI Guidelines, understand their respective obligations to preserve all information that may lead to the discovery of evidence with respect to the subject matter of the lawsuit, and have taken reasonable necessary steps to preserve that information.  The parties will meet and confer to confirm that they have met their obligations under Federal Rule of Civil Procedure 26.

**Defendants' Statement:**

Defendants believe it is premature to discuss the full scope of discovery or a schedule for discovery while Defendants' MTD is pending, and while the pleadings are not yet settled. As explained in Defendants' pending MTD (and as previously held by Judge Koh), Defendants believe that Plaintiffs' claims fail as a matter of law and do not agree that "[t]his case turns on a purely factual issue" or that discovery is "the only means" by which the Court can resolve Plaintiffs' claims. Should any part of Plaintiffs' case proceed past the pleadings, the parties agree to meet and confer within two weeks of any order denying Defendants' MTD to discuss and agree to a reasonable discovery plan. In the event that this case proceeds, Defendants do not agree that the disclosure of Defendants' highly confidential and sensitive computer code, architecture, "complete information used to filter, block, or regulate content," and other technical information is likely to be necessary or appropriate.

7. Disclosures

*Whether there has been full and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made. For ADA and employment cases, see General Order Nos. 56 and 71.*

**Plaintiffs' Statement:**

No disclosures have been made as of the date of this submission.  Plaintiffs stand ready to meet and confer immediately and to agree upon a schedule regarding the deadline for making disclosures and a reasonable discovery plan as provided for under Rule 26 of the Federal Rules of Civil Procedure.

**Defendants' Statement:**

Defendants object to initial disclosures prior to issuance of the Court's ruling on Defendants' MTD. Should any part of Plaintiffs' case proceed past the pleadings, Defendants agree to meet and confer within two weeks of any order denying Defendants' MTD to discuss and agree to a reasonable discovery plan, including a date to exchange initial disclosures.

8. Discovery

*Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, a brief report on whether the parties have considered entering into a stipulated e-discovery order, a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f), and any identified discovery disputes.*

a. Discovery to date:  No discovery has been taken to date.  The parties have not identified any discovery disputes at this time.

b. Anticipated future discovery:  If this case and *Divino Group LLC v. Google LLC*, No. 19-CV-04749-VKD, proceed beyond the motion-to-dismiss stage, the parties have agreed to endeavor to coordinate discovery in the two cases.

**Plaintiffs' Statement:**

This case turns on a purely factual issue: are Defendants using computer driven filtering and blocking tools that use and consider the race or other protected identity of the consumer under and in violation of a consumer contract?  The only way to create a record on which that threshold issue can be fully and fairly adjudicated is through a discovery process in which Defendants,

subject to appropriate confidentiality protections, are required to be transparent in the discovery

process about how and what they use to filter and block content on YouTube.  Discovery,

including disclosure by Defendants of the computer code, architecture, and complete information

used to filter, block, or regulate content, user access, and user services on YouTube, and the extent

to which any of Defendants conduct may come within the statutory immunity of 47 U.S.C. §

230(c) and the specific blocking and filtering rules Defendants promise to consumers, is the only

means by which the Court can adjudicate whether Defendants conduct violates their contractual

promises and/or California and federal statutory prohibitions on the use of a consumer's protected

identity under and in violation of a consumer contract.

Plaintiffs intend to serve the following discovery requests:

a)  Requests for Production of Documents and Things both with respect to class wide issues and

with respect to the videos and channels of the named Plaintiffs.

(b)  Requests for Admission in anticipation of filing a Motion for Summary

Judgment/Adjudication and to narrow the factual issues to be proven at trial.

(c)  Special Interrogatories regarding both with respect to class wide issues and with respect to the

videos and channels of the named Plaintiffs.

(d)  Deposition Notices for Defendants' employees, engineers and artificial ethics team members

who have knowledge about the subject matter and allegations of the operative pleadings and other

statements or information that bear on the allegations in this case.

(e)  Third party subpoenas for testimony and documents.

**Defendants' Statement:**

Defendants believe it is premature to discuss the full scope of discovery or a schedule for

discovery while Defendants' MTD is pending, and while the pleadings are not yet settled. As

explained in Defendants' pending MTD (and as previously held by Judge Koh), Defendants

believe that Plaintiffs' claims fail as a matter of law and do not agree that "[t]his case turns on a

purely factual issue" or that discovery is "the only means" by which the Court can resolve

Plaintiffs' claims. Should any part of Plaintiffs' case proceed past the pleadings, the parties agree

to meet and confer within two weeks of any order denying Defendants' MTD to discuss and agree

to a reasonable discovery plan. In the event that this case proceeds, Defendants do not agree that the disclosure of Defendants' highly confidential and sensitive computer code, architecture, "complete information used to filter, block, or regulate content," and other technical information is likely to be necessary or appropriate.

c.  Proposed limitations or modifications of discovery rules:

**Plaintiffs' Statement:**

No limitations or modifications are agreed to or anticipated at this time.

**Defendants' Statement**:

Defendants believe that the default limitations on discovery set out in the Federal Rules should apply and that the parties should work together to reach agreement on a mutual expansion if one becomes necessary.

d.  Stipulated e-discovery proposed order:

**Plaintiffs' Statement:**

The parties will meet and confer to negotiate a stipulated proposed e-discovery order.  If no agreement can be reached, the Plaintiffs agree to use the standard form e-discovery order.

**Defendants' Statement:**

Defendants agree to meet and confer to reach agreement on an ESI protocol to govern electronic discovery if and when discovery opens.

e.  Stipulated protective order:

**Plaintiffs' Statement:**

The parties will meet and confer to negotiate a stipulated proposed protective order.  If no agreement can be reached, the Plaintiffs agree to use the standard form protective order for the U.S. District Court for the Northern District of California.

**Defendants' Statement:**

If and when discovery opens, Defendants agree to discuss and seek to reach agreement with Plaintiffs on a pretrial Protective Order to govern disclosure of personal, confidential information; trade secrets; and proprietary or other confidential commercial information. Defendants do not currently anticipate any issues relating to claims of privilege or claims of protection as to work-product material, but they plan to include a Rule 502(d) provision in their proposed Protective Order regarding any disclosure of privileged information.

9. Class Actions
*If a class action, a proposal for how and when the class will be certified.*

All attorneys of record for the parties have reviewed the Procedural Guidance for Class Action Settlements.

**Plaintiffs' Statement:**

Plaintiffs intend to file a motion for class certification after merits and class discovery are completed.  In light of the systematic allegations and form consumer contracts at issue in this case, discovery should not be bifurcated with respect to issues regarding the merits or class.

**Defendants' Statement:**

Defendants intend to oppose class certification. Defendants believe it is premature to discuss the potential bifurcation of merits and class discovery at this stage of the case.

10. Related Cases
*Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.*

**Plaintiffs' Statement:**

For coordination of discovery purposes only:  *Divino Group LLC v. Google LLC, et al.*, No. 19-CV-04749-VKD (N.D. Cal.).[1]

---

[1] This case does not meet the requirements for related cases under the Federal Rules of Civil Procedure, but Plaintiffs have proposed to coordinate discovery for the two cases.

**Defendants' Statement:**

Defendants identify the following pending cases, which are based on the same underlying conduct at issue in this case: the removal, demonetization, or restriction of access to material on YouTube, and which involve the same Plaintiffs' counsel and many of the same claims asserted in this action, asserted against one or more of the Defendants:

- *Divino Group LLC v. Google LLC*, No. 5:19-cv-04749-VKD (N.D. Cal.) (DeMarchi, J.)
- *Prager University v. Google LLC*, No. CV340667 (Cal. Super. Ct.), *appeal filed*, No. H047714 (Cal. Ct. App.)

Defendants note that, while this case (like *Divino*) was initially assigned to Judge DeMarchi (*see* Dkt. No. 5), Plaintiffs declined magistrate judge jurisdiction in this case (*see* Dkt. No. 9). Defendants do not oppose Plaintiffs' proposal that the parties seek to coordinate proceedings in the two cases, but the propriety and extent of any coordination will depend on how, if at all, the two cases proceed.

11. Relief

*All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.*

**Plaintiffs' Statement:**

The Third Amended Complaint alleges thirteen causes of action. Plaintiffs seek injunctive relief; declaratory relief: restitutions; and compensatory, statutory and exemplary damages in an amount to be determined at trial in excess of $5 million.

Defendants have not filed a Counterclaim.

**Defendants' Statement:**

Defendants do not believe that Plaintiffs are entitled to any relief in this case, and Defendants seek denial of any such relief as well as dismissal of all of Plaintiffs' claims.

12. Settlement and ADR

*Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including which ADR process option the parties have selected and a proposed deadline, or if the parties do not agree, each party's preferred option*

*and timing, in compliance with ADR L.R. 3-5. In addition, the parties should include a description of key discovery or motions necessary to position the parties to negotiate a resolution.*

a.  No ADR efforts have been made.

b.  No ADR efforts are anticipated until after the Court rules on Defendants' MTD.

**Plaintiffs' Statement:**

Plaintiffs are amenable to mediation, but not arbitration or ENE.

**Defendants' Statement:**

Defendants believe prospects for settlement are low given the parties' very different view of the underlying facts and the nature of the demands that Plaintiffs have made, but are open to ADR following a ruling on the MTD.

c.  The parties have complied with ADR L.R. 3-5 and filed the required ADR certification on May 19, 2021.

13.  <u>Consent to Magistrate Judge For All Purposes</u>
*Whether **all** parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.*

____ YES   _X_  NO

14.  <u>Other References</u>
*Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.*

The parties agree that this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15.  <u>Narrowing of Issues</u>
*Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.*

**Plaintiffs' Statement:**

a.  *See* Response to Item14 above.

b.  This case turns on a purely factual issue: are Defendants using computer driven filtering and blocking tools that use and consider the race or other protected identity of the consumer under and

in violation of a consumer contract?  The only way to create a record on which that threshold issue can be fully and fairly adjudicated is through a discovery process in which Defendants, subject to appropriate confidentiality protections, are required to be transparent in the discovery process about how and what they use to filter and block content on YouTube.  Discovery, including disclosure by Defendants of the computer code, architecture, and complete information used to filter, block, or regulate content, user access, and user services on YouTube will greatly narrow the issues, including the extent to which any of Defendants conduct may come within the statutory immunity of 47 U.S.C. § 230(c) and the specific blocking and filtering rules promised to consumers, and expedite the presentation of evidence at trial by providing transparency as to what Defendants use and consider to make what they promise are identity neutral content moderation decisions.

c.  No issues have been identified for purposes of bifurcation at this time.

**Defendants' Statement:**

a.  Defendants believe that, because this case is still in its initial stages, there are presently no issues that can be narrowed by agreement or motion.

b.  Defendants believe it is premature to discuss the full scope of discovery, and any potential bifurcation of discovery, at this time while Defendants' MTD is pending and while the pleadings are not yet settled. In the event that this case proceeds, Defendants do not agree that the disclosure of Defendants' highly confidential and sensitive computer code, architecture, "complete information used to filter, block, or regulate content," and other technical information is likely to be necessary or appropriate.

16.  Expedited Trial Procedure

*Whether this is the type of case that can be handled under the Expedited Trial Procedure of General Order 64, Attachment A. If all parties agree, they shall instead of this Statement, file an executed Agreement for Expedited Trial and a Joint Expedited Case Management Statement, in accordance with General Order No. 64, Attachments B and D.*

The parties do not believe that this action is appropriate for Expedited Trial Procedure.

17. <u>Scheduling</u>
*Proposed dates for completion of initial ADR session, designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.*

**Plaintiffs' Statement:**

Following the Court's Ruling on Defendants' pending MTD, the parties shall meet and confer regarding a discovery schedule.  In the event that the parties cannot reach an agreement on a discovery schedule, Plaintiffs propose the following deadlines:

a.  Completion of initial ADR session – 105 days following the Case Management Conference.

b.  Completion of initial disclosures – 75 days following the Case Management Conference.

c.  Designation of experts – 300 days following the Case Management Conference.

d.  Discovery cutoff – 360 days following the Case Management Conference.

e.  Dispositive motions – 390 days following the Case Management Conference.

f.  Pretrial conference – 450 days following the Case Management Conference.

g.  Trial – 470 days following the Case Management Conference.

**Defendants' Statement:**

Defendants do not agree to a discovery schedule at this time. Defendants believe that it is premature to establish dates for designation of experts, discovery cutoff, hearing of further dispositive motions (beyond Defendants' MTD), pretrial conference, and trial. Should any part of Plaintiffs' case proceed past the pleadings, the parties agree to meet and confer within two weeks of any order denying Defendants' MTD to discuss a reasonable discovery plan, including a date to exchange initial disclosures.

18. <u>Trial</u>
*Whether the case will be tried to a jury or to the court and the expected length of the trial.*

**Plaintiffs' Statement:**

Plaintiffs have requested a trial by jury for those claims to be tried by a jury.

**Defendants' Statement:**

Plaintiffs have requested a jury trial. Defendants believe it is premature to formulate a view

concerning the expected length of any trial in the event that this case proceeds beyond the motion-to-dismiss phase.

19. <u>Disclosure of Non-party Interested Entities or Persons</u>
*Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15. In addition, each party must restate in the case management statement the contents of its certification by identifying any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.*

**Plaintiffs' Statement:**

Plaintiffs filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-15 on May 18, 2021. *See* Dkt. No. 61.

Pursuant to Civil L.R. 3-15, Plaintiffs certify that other than the named parties, no other person, firm, partnership, corporation or other entities known by the Plaintiffs has either (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

**Defendants' Statement:**

Defendants filed their Corporate Disclosure Statement and Certification of Interested Entities or Persons on July 9, 2020. *See* Dkt. No. 15. Pursuant to Federal Rule of Civil Procedure 7.1, Google LLC and YouTube, LLC disclose the following:

1. Alphabet Inc. is a publicly traded company; no publicly traded company holds more than 10% of Alphabet Inc.'s stock.

2. Google LLC is a subsidiary of XXVI Holdings Inc., which is a subsidiary of Alphabet Inc.

3. YouTube, LLC is a subsidiary of Google LLC.

Pursuant to Civil L.R. 3-15, the undersigned counsel for Defendants certifies that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

1.  YouTube, LLC

2.  Google LLC

3.  XXVI Holdings Inc., Holding Company of Google LLC

4.  Alphabet Inc., Holding Company of XXVI Holdings Inc.

20. <u>Professional Conduct</u>
*Whether all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.*

The attorneys for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

21. <u>Other</u>
*Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.*

The parties are not presently aware of any other matters that would facilitate the just, speedy, and inexpensive resolution of this action.

| | |
|---|---|
| **Dated: June 14, 2022** | **/s/ Peter Obstler** |
| **Peter Obstler** | Counsel for Plaintiffs |
| | |
| **Dated: June 14, 2022** | **/s/ Lauren Gallo White** |
| **Lauren Gallo White** | Counsel for Defendants |

**ATTORNEY ATTESTATION**

I, Peter Obstler, am the ECF User whose ID and password are being used to file this document. In compliance with N.D. Cal. Civil L.R. 5-1(i)(3), I hereby attest that concurrence in the filing of this document has been obtained from each of the other Signatories.

By:   */s/ Peter Obstler*_____

Peter Obstler