DAVID H. KRAMER, SBN 168452
LAUREN GALLO WHITE, SBN 309075
KELLY M. KNOLL, SBN 305579
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: dkramer@wsgr.com
Email: lwhite@wsgr.com
Email: kknoll@wsgr.com

BRIAN M. WILLEN (*Pro Hac Vice*)
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, NY 10019-6022
Telephone: (212) 999-5800
Facsimile: (212) 999-5801
Email: bwillen@wsgr.com

Attorneys for Defendants
GOOGLE LLC and YOUTUBE, LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| KIMBERLY CARLESTE NEWMAN, LISA CABRERA, CATHERINE JONES, DENOTRA NICOLE LEWIS, ANDREW HEPKINS, HARVEY STUBBS, KHALIF MUHAMMAD, KEU REYES, and OSIRIS LEY,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE LLC, YOUTUBE, LLC, and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.: 3:20-cv-04011-VC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FOURTH AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Before: Hon. Vince Chhabria<br>Courtroom: 4<br>Hearing Date: October 20, 2022<br>Time: 2:30 p.m. |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ..................................................................... 1

STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED ........... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

FACTUAL BACKGROUND ................................................................................. 1

    A.   YouTube's Terms Of Service And The Operative Agreements ........... 1

    B.   This Court's Prior Rulings .................................................................. 3

    C.   The Fourth Amended Complaint ......................................................... 3

ARGUMENT ....................................................................................................... 4

I.    THE 4AC STILL VIOLATES RULE 8'S PLAIN STATEMENT REQUIREMENT ...... 4

II.   PLAINTIFFS FAIL TO STATE A VIABLE CAUSE OF ACTION ................ 5

    A.   Plaintiffs Fail To State A Viable Contract Claim ............................... 5

        1.   Plaintiffs Cannot Revise Their Failed Discrimination Allegations As Breaches of Contract ........... 5

        2.   The TOS Give YouTube Broad Rights To Moderate Content .......... 6

        3.   The Agreements Provide YouTube The Right To Demonetize Videos .......... 8

        4.   Plaintiffs Fail To Allege An Implied Breach ........... 9

        5.   Plaintiffs' Contract Claims Are Barred By The Limitation Of Liability Provision And Warranty Disclaimer .......... 11

        6.   There is No Basis For Rescinding The Contracts ........... 12

    B.   Plaintiffs Fail To State An Equitable Claim ........... 12

    C.   Plaintiffs Fail To State A Claim Under The UCL ........... 14

III.  YOUTUBE IS PROTECTED FROM PLAINTIFFS' CLAIMS BY SECTION 230 ...... 15

CONCLUSION ........... 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Al-Ahmed v. Twitter, Inc.*,
2022 U.S. Dist. LEXIS 91204 (N.D. Cal. May 20, 2022) ........................................................15

*Avago Techs. United States Inc. v. NanoPrecision Prods.*,
2017 U.S. Dist. LEXIS 13484 (N.D. Cal. Jan. 31, 2017) ........................................................13

*Bank of N.Y. v. Fremont Gen. Corp.*,
523 F.3d 902 (9th Cir. 2008) ...................................................................................................13

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009) .................................................................................................15

*Cepelak v. HP Inc.*,
2021 U.S. Dist. LEXIS 221360 (N.D. Cal. Nov. 15, 2021) .....................................................12

*Chen v. PayPal, Inc.*,
61 Cal. App. 5th 559 (2021) .....................................................................................................10

*Daniels v. Alphabet Inc.*,
2021 U.S. Dist. LEXIS 64385 (N.D. Cal. Mar. 31, 2021) .........................................................7

*Darnaa, LLC v. Google Inc.*,
236 F. Supp. 3d 1116 (N.D. Cal. 2017) ...................................................................................11

*Ebeid v. Facebook, Inc.*,
2019 U.S. Dist. LEXIS 78876 (N.D. Cal. May 9, 2019) ...........................................................9

*Englert v. IVAC Corp.*,
92 Cal. App. 3d 178 (1979) ......................................................................................................14

*Farmearl v. Storopack, Inc.*,
2005 U.S. Dist. LEXIS 34293 (N.D. Cal. Sept. 12, 2005) .......................................................10

*Fed. Agency of News LLC v. Facebook, Inc.*,
432 F. Supp. 3d 1107 (N.D. Cal. 2020) ...................................................................................15

*Fuhu, Inc. v. Toys "R" Us, Inc.*,
2013 U.S. Dist. LEXIS 196563 (S.D. Cal. Mar. 1, 2013) ........................................................14

*George v. eBay, Inc.*,
71 Cal. App. 5th 620 (2021) .....................................................................................................10

*Guz v. Bechtel Nat'l Inc.*,
24 Cal. 4th 317 (2000) ..............................................................................................................10

*Hertz Corp. v. Accenture, LLP*,
   2019 U.S. Dist. LEXIS 185373 (S.D.N.Y Oct. 25, 2019) ........................................................14

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)...............................................................................................14

*King v. Facebook, Inc.*,
   2019 U.S. Dist. LEXIS 151582 (N.D. Cal. Sept. 5, 2019)......................................................15

*King v. Facebook, Inc.*,
   572 F. Supp. 3d 776 (N.D. Cal. 2021) .............................................................................13, 15

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011)...........................................................................................................14

*Lewis v. Google LLC*,
   461 F. Supp. 3d 938 (N.D. Cal. 2020) ....................................................................................9

*Lewis v. YouTube, LLC*,
   244 Cal. App. 4th 118 (2015).................................................................................................11

*McHenry v. Renne*,
   84 F.3d 1172 (9th Cir. 1996)...................................................................................................4

*Media.net Advert. FZ-LLC v. NetSeer, Inc.*,
   156 F. Supp. 3d 1052 (N.D. Cal. 2016) ............................................................................13,14

*Merritt v. JP Morgan*,
   2018 U.S. Dist. LEXIS 69006 (N.D. Cal. Apr. 24, 2018)......................................................13

*Mishiyev v. Alphabet, Inc.*,
   444 F. Supp. 3d 1154 (N.D. Cal. 2020) ...............................................................................7, 9

*Murphy v. Twitter, Inc.*,
   60 Cal. App. 5th 12 (2021).................................................................................7, 11, 12, 15

*Oracle Am., Inc. v. Cedarcrestone, Inc.*,
   938 F. Supp. 2d 895 (N.D. Cal. 2013) ...................................................................................14

*Perry v. Lockheed Missiles & Space Co., Inc.*,
   76 F. App'x 821 (9th Cir. 2003)............................................................................................10

*Prager Univ. v. Google LLC*,
   2019 Cal. Super. LEXIS 2034 (Super. Ct. Cal. Nov. 19, 2019) ...............................9, 12, 14, 15

*Prager Univ. v. Google LLC*,
   951 F.3d 991 (9th Cir. 2020)..............................................................................................6, 14

*Rangel v. Dorsey*,
   2022 U.S. Dist. LEXIS 127948 (N.D. Cal. July 19, 2022) .....................................................15

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
   144 F. Supp. 3d 1088 (N.D. Cal. 2015) ..................................................................15

*Silvaco Data Sys. v. Intel Corp.*,
   184 Cal. App. 4th 210 (2010)...............................................................................13

*Swain v. CACH, LLC*,
   699 F. Supp. 2d 1117 (N.D. Cal. 2009) .................................................................15

*Sweet v. Google Inc.*,
   2018 U.S. Dist. LEXIS 37591 (N.D. Cal. Mar. 7, 2018) ..........................................12

*UCAR Tech. (USA) Inc. v. Li*,
   2018 U.S. Dist. LEXIS 93817 (N.D. Cal. June 4, 2018) ...........................................13

*Vallarta v. United Airlines, Inc.*,
   497 F. Supp. 3d 790 (N.D. Cal. 2020) ...................................................................13

## Statutes

7 U.S.C. § 512 ..............................................................................................2, 14

15 U.S.C. § 1127 .................................................................................................3

47 U.S.C. § 230(c).........................................................................................1, 15

47 U.S.C. § 230(e)(3) .........................................................................................15

Cal. Civ. Code § 51 .....................................................................................3, 5, 10

Cal. Civ. Code § 1689(b)(2)................................................................................12

## Rules

Fed. R. Civ. P. 8 .............................................................................................1, 4

Fed R. Civ. P. 9(b)..............................................................................................14

Fed. R. Civ. P. 12(b)(6).....................................................................................1, 5

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that on October 20, 2022, before the Honorable Vince Chhabria of the U.S. District Court for the Northern District of California, Defendants Google LLC ("Google") and YouTube, LLC ("YouTube") ("Defendants") shall and hereby do move for an order dismissing with prejudice Plaintiffs' Fourth Amended Class Action Complaint (Dkt. No. 119, "4AC").

## STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED

Pursuant to Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure and Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c) ("Section 230"), Defendants seek dismissal of Plaintiffs' 4AC without further leave to amend.

## MEMORANDUM OF POINTS AND AUTHORITIES

In dismissing Plaintiffs' previous complaint, the Court definitively rejected Plaintiffs' discrimination claims and ordered that any amended complaint "must reflect a more serious effort to clearly articulate non-frivolous claims" or it would "be dismissed for that reason alone." Dkt. No. 115 ("3AC Order") at 5. Yet the latest complaint remains a confusing jumble, still far from the "plain statement" the Federal Rules require. And where it is comprehensible, its claims again fail as a matter of law. Plaintiffs try to recast their dismissed discrimination claims as contract claims, but they cannot evade the Court's prior rulings with this gambit. Nor can Plaintiffs point to any promise in the governing agreements that YouTube supposedly breached or overcome the express provisions that rule out their claims. And Plaintiffs' non-contract claims have not meaningfully changed from what this Court rejected. Plaintiffs have had two years and five iterations of the complaint to articulate viable claims. Enough is enough. The 4AC should be dismissed, this time with prejudice.

## FACTUAL BACKGROUND

### A.     YouTube's Terms Of Service And The Operative Agreements

YouTube's service is governed by terms and content policies. *See, e.g.*, 4AC ¶¶ 29, 50-51. Plaintiffs agreed to YouTube's Terms of Service ("Terms" or "TOS") and the incorporated Community Guidelines. *See, e.g.*, 4AC ¶¶ 43, 50. Those Terms reserve to YouTube the right to

remove content from its service, including videos uploaded by users. 4AC, Ex. 2 at 80-81; *see also* 4AC ¶ 58(h).[1] They also limit YouTube's liability for (among other things) offensive third-party content. *See, e.g.*, 4AC, Ex. 2 at 83-84. The Terms require that any cause of action related to YouTube's service be brought within one year of accrual. *See, e.g.*, 4AC, Ex. 2 at 86. Accordingly, Terms and alleged breaches or misconduct that pre-date June 16, 2019 are not at issue here. *See* Dkt. No. 1 (filed June 16, 2020).

YouTube publishes various policies governing use of its service. The Community Guidelines prohibit certain kinds of content, including content that targets people on the basis of race. *See, e.g.*, 4AC, Ex. 8. YouTube reserves the right to remove such content, but does not make any affirmative promise to do so. YouTube also is committed to helping copyright owners protect against unauthorized use of their works on the service, and it complies with the Digital Millennium Copyright Act by removing content in response to valid takedown notices. *See, e.g.*, 4AC, Ex. 2 at 79-82.

YouTube reserves the right to modify its Terms and Community Guidelines and does so from time to time. *See, e.g.*, 4AC, Ex. 2 at 74. While Plaintiffs complain about those amendments (*see* 4AC ¶¶ 45-49), they do not identify any material changes that would change or affect the viability of their causes of action.

YouTube allows users whose channels meet certain minimum viewership (and other) requirements to earn revenue from their videos by running advertisements with them as part of the YouTube Partner Program ("YPP"). *See, e.g.*, 4AC ¶ 52; 4AC, Ex. 9 at 376-377. To be eligible for monetization, Plaintiffs agreed to additional written contracts, including the YPP Terms and the AdSense Online Terms of Service. *See, e.g.*, 4AC ¶ 52; 4AC, Exs. 12, 15. Among other things, those Terms make clear that "YouTube is not obligated to display any advertisements alongside your videos." 4AC, Ex. 12 at 953.

---

[1] Effective December 10, 2019, YouTube replaced this reservation with a functionally identical one: "YouTube is under no obligation to host or serve Content." 4AC, Exs. 3-5; *see also* 4AC, Exs. 3-5 ("If we reasonably believe that any Content is in breach of this Agreement or may cause harm to YouTube, our users, or third parties, we may remove or take down that Content in our discretion.").

### B.    This Court's Prior Rulings

Judge Koh dismissed Plaintiffs' Second Amended Complaint ("2AC") because the federal claims it asserted were unsupported by any plausible factual allegations. In particular, Plaintiffs' claim under Section 1981 failed because Plaintiffs did not plausibly allege that YouTube intentionally discriminated against them on the basis of race. Dkt. No. 68 at 11-12.

Plaintiffs filed a Third Amended Complaint ("3AC"), which this Court found "failed to add any allegations of consequence" to the previously dismissed 2AC. 3AC Order at 1. Accordingly, the Court dismissed Plaintiffs' federal claims with prejudice, finding that Plaintiffs had again failed to plead "facts rendering it plausible that YouTube *intentionally* discriminated against them on the basis of race" and that Plaintiffs failed to plausibly allege that YouTube had misrepresented its content-moderation policies in violation of the Lanham Act. *Id.*

Turning to the state law claims, the Court dismissed some with prejudice and some with leave to amend. *Id.* at 2-5. Plaintiffs' Unruh Act claim was dismissed with prejudice because it was based on the same insufficient allegations as the failed 1981 claim. *Id.* at 2-3. The Court also dismissed with prejudice Plaintiffs' promissory estoppel and Liberty of Speech claims. *Id.* at 2, 4-5. The Court dismissed with leave to amend Plaintiffs' breach of contract claim, explaining that the 3AC did "not clearly state the express term of the contract YouTube has allegedly violated" and did not identify a specific alleged promise to Plaintiffs. *Id.* at 2-3. The court similarly dismissed Plaintiffs' UCL claim. *Id.* at 3. Plaintiffs failed to defend their unfairness claim and, as for a fraud-based claim, Plaintiffs "did not allege justifiable reliance on any misleading statements" and failed to "identify which of the many statements contained in the 217-page complaint are the basis of this theory of liability." *Id.* Plaintiffs were granted leave to amend their claim for equitable accounting on the condition that they allege "why a breach of contract claim is not available to them." *Id.* at 3-4. Plaintiffs were also granted leave to amend their conversion and replevin claims. *Id.* at 2.

### C.    The Fourth Amended Complaint

The 4AC relies upon the same corpus of operative facts alleged in the 3AC. Plaintiffs' claims are no more clear, the necessary exhibits and relevant language are no better defined, and

there is no more serious effort to articulate non-frivolous claims.

The 4AC mainly tries to repackage Plaintiffs' failed race-based discrimination claims as a claim for breach of contract based on alleged discrimination against Plaintiffs' ill-defined "identities," including their unspecified "race, ethnicity, gender, sexual identity, religion, political affiliation and views, and commercial and consumer status." 4AC ¶¶ 1, 23, 42. But in support, the 4AC offers nothing beyond allegations of disparate impact that this Court already rejected—namely, that some of Plaintiffs' videos were restricted while similar videos by other creators were not. *E.g.*, 4AC ¶ 100.

Beyond that, Plaintiffs describe a grab bag of unrelated and unsupported grievances without clearly identifying contractual promises that were supposedly breached. Those include:

- delaying uploads, notifications, and access to videos (4AC ¶¶ 153, 168, 195);

- excluding videos from "Trending," and other recommendations (*id.* ¶¶ 173-174);

- recommending others' "unrelated" videos excessively (*id.* ¶ 175);

- "automated" reviewing and filtering of videos (*e.g.*, *id.* ¶¶ 3-4, 6, 9);

- removing or preventing comments from posting (*id.* ¶ 169);

- reducing subscribers and view counts (*id.* ¶¶ 223-224);

- "shadow banning" videos and channels from search results (*id.* ¶¶ 171-172); and

- failing to stop copying of Plaintiffs' videos or branding by other users (*id.* ¶¶ 157-159).

These allegations generally restate those in the 3AC, often in less detail and with very limited Plaintiff-specific allegations. Plaintiffs' "new" allegations, while sparse, are simply more of the same. *E.g.*, 4AC ¶¶ 63, 97 (general statements by YouTube about the open nature of its platform); *id.* ¶ 154 (superimposing noises into videos); *id.* ¶¶ 183-184 (resolution of user reports and appeals).

## <u>ARGUMENT</u>

## I.   THE 4AC STILL VIOLATES RULE 8'S PLAIN STATEMENT REQUIREMENT

The Court may dismiss a complaint as violative of Rule 8 where it lacks a "short and plain" statement of the plaintiffs' claims, and instead "mixes allegations of relevant facts, irrelevant facts, political argument, and legal argument in a confusing way." *McHenry v. Renne*,

84 F.3d 1172, 1174, 1179-80 (9th Cir. 1996). Applying this rule, the Court explained that Plaintiffs' prior complaint was "far too long, far too repetitive, and far too difficult to comprehend" and expressly instructed Plaintiffs, in any amended complaint, to make a "more serious effort to clearly articulate non-frivolous claims." 3AC Order at 5.

Plaintiffs have failed to heed that admonition. Their 4AC is shortened, but not clarified. It remains "frustratingly vague" (*id.* at 2)—jumbled, impenetrable, and with more than 1,000 pages of exhibits. Plaintiffs still routinely fail to identify "the relevant language" from those exhibits that supposedly supports their claims. *Id.* at 5. The 4AC instead reiterates many of the same indiscernible accusations that led to this Court's prior dismissals, including vague and incendiary rhetoric like "digital redlining" and "embed[ding] … identity based user profiles … into automated content filtering machines." *Id.* ¶ 195, 41; *see also, e.g.*, 4AC ¶¶ 35, 54, 62. Consistent with this Court's prior ruling, the 4AC can and should be dismissed for these reasons alone.

## II.    PLAINTIFFS FAIL TO STATE A VIABLE CAUSE OF ACTION

The 4AC also fails to state a claim under Rule 12(b)(6).

### A.    Plaintiffs Fail To State A Viable Contract Claim

1.    Plaintiffs Cannot Revise Their Failed Discrimination Allegations As Breaches of Contract

Plaintiffs' central theory is that YouTube, by supposedly making content moderation and monetization decisions "based at least in part on Plaintiffs' Identities," breached "promises to provide Plaintiffs with a forum for freedom of expression, information, opportunity and belonging, including equal access to content, audiences, and services." 4AC ¶¶ 63, 97-98. This theory recycles the allegations that formed the basis of Plaintiffs' discrimination claims, which Judge Koh and this Court have definitively rejected. *Compare, e.g.*, 3AC ¶¶ 98-100, 525(a) (September 2017 meeting) *and* 3AC ¶¶ 107, 525(b) (chart comparing Plaintiffs' videos "to the videos of white or preferred users"), *with* 4AC ¶¶ 100-102 (same). Plaintiffs cannot evade this Court's prior ruling by pouring old wine into a new bottle. These discrimination allegations are no more plausible under a breach of contract theory than under Section 1981 or the Unruh Act.

That is especially so because Plaintiffs' contract theory relies not on the terms of

YouTube's contracts, but on various irrelevant and non-actionable statements. Plaintiffs allege, for example, that YouTube's mission statement was somehow incorporated in YouTube's terms, seemingly because a link to this statement appeared in navigation bars or webpage footers. 4AC ¶¶ 63-66. That does not make these extra-contractual statements part of the contract. But even if it did, the Ninth Circuit has expressly held that these specific statements are "impervious to being 'quantifiable'" and thus "classic, non-actionable opinions or puffery." *Prager Univ. v. Google LLC*, 951 F.3d 991, 999-1000 (9th Cir. 2020) (*Prager III*). As a matter of law, YouTube did not undertake any legally binding promise through such "[l]ofty but vague" statements (*id.*), much less through similarly generalized congressional testimony (4AC ¶ 69). Simply put, the TOS do not promise "neutral" or "equal" content moderation practices.

Beyond that, Plaintiffs rattle off a litany of supposed breaches that they describe as YouTube "misapply[ing]" its rules (4AC ¶¶ 105-135), "selectively enforc[ing]" its rules (4AC ¶¶ 136-152), and "deny[ing] … other contract services" (4AC ¶¶ 153-184), but all of these run into the same basic problem that this Court identified in dismissing their prior claim. Plaintiffs vaguely point to scattered statements from a decade's worth of contracts and hundreds of pages printed from YouTube's website (*see, e.g.*, 4AC ¶¶ 50-58 106-107, 134, 160), but they still have not identified "the express term of the contract YouTube has allegedly violated" (3AC Order at 2).[2] To the contrary, the terms of the governing agreements squarely bar Plaintiffs' claims.

### 2.    The TOS Give YouTube Broad Rights To Moderate Content

First, YouTube expressly reserves the right to remove content from its platform at its discretion. 4AC, Ex. 2 at 80-81 ("YouTube reserves the right to decide whether Content violates these Terms of Service" and may "in its sole discretion, remove such Content and/or terminate a user's account for submitting such material in violation of these Terms of Service"); *see* 4AC, Exs. 3-5. The Terms make clear that "YouTube is under no obligation to host or serve Content." 4AC, Exs. 3-5. And YouTube's right to restrict access to content via the Restricted Mode feature

---

[2] As discussed above, given the one-year contractual limitations period, only some versions of the Terms attached to the 4AC are possibly at issue here—those in effect between June 16, 2019 and December 31, 2021 (4AC, Exs. 2-5).

is subsumed within YouTube's general right to remove content.[3] This authority to remove or restrict content is neither confined to material that violates YouTube's Community Guidelines, nor constrained by users' opinions of whether content violates YouTube's policies. *See, e.g.*, *Daniels v. Alphabet Inc.*, 2021 U.S. Dist. LEXIS 64385, at *25 (N.D. Cal. Mar. 31, 2021) (dismissing similar contract claims against YouTube based on content removal); *Mishiyev v. Alphabet, Inc.*, 444 F. Supp. 3d 1154, 1159 (N.D. Cal. 2020), *aff'd*, 857 F. App'x 907 (9th Cir. 2021).

Plaintiffs nevertheless claim that YouTube breached the TOS by "misapplying" its policies when removing or restricting access to their content. *See* 4AC ¶¶ 99, 106-116, 186 (excluding some of Plaintiffs' videos from Restricted Mode); 4AC ¶¶ 122-135 (removing or restricting Plaintiffs' videos or channels by misapplying policies concerning, *inter alia*, hate speech, copyright infringement, misinformation, and firearms).[4] In support of this theory, Plaintiffs point to various pages describing YouTube's service and content policies (*see, e.g.*, 4AC ¶¶ 122, 130, 132), but they identify no actual promises—much less anything that circumscribes YouTube's contractual right to remove and restrict user content. Plaintiffs' disagreement with how YouTube has enforced its policies does not amount to a breach. To the contrary, "[b]ecause 'defendants were given the right to do what they did by the express provisions of the contract there can be no breach.'" *Daniels*, 2021 U.S. Dist. LEXIS 64385, at *25; *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 35 (2021) (contract claim based on Twitter's suspension of the plaintiff's account "necessarily fail[ed] … because Twitter's terms of service expressly state that they reserve the right to 'suspend

---

[3] Contrary to Plaintiffs' claim (4AC ¶ 109), the Terms encompass Restricted Mode: They govern use of the YouTube "Service," which includes "any YouTube products, software, data feeds, and services." 4AC, Ex. 2 at 74; *see also* 4AC, Exs. 3-5 (similar). But insofar as Plaintiffs claim that Restricted Mode is not governed by the contract (4AC ¶ 109), YouTube could not breach the contract by excluding Plaintiffs' videos from that feature.

[4] Plaintiffs contend that their videos were wrongly actioned, but they provide no meaningful description of the vast majority of the videos' contents. Many of Plaintiffs' videos are clearly inappropriate for certain audiences. *See, e.g.*, 4AC ¶ 111 (video detailing extensive allegations that women were drugged and sexually assaulted, labeling those experiences a "horrendous lie," https://www.youtube.com/watch?v=qZIrfp1VDRw); *id.* (video describing knife attacks, including an attack in which an individual had his throat slit and bled out, https://www.youtube.com/watch?v=Z6l6esoTOqM); *accord* https://www.youtube.com/watch?v=kvdse4qeexU (video with racial slurs in title discussing violent attack and lynching).

---

or terminate [users'] accounts … for any or no reason' without liability").[5]

Equally flawed is any contract claim based on YouTube's alleged failure to remove or restrict third-party content that Plaintiffs find objectionable or that, in their view, violates the Community Guidelines. *See* 4AC ¶¶ 136-152; *see also id.* ¶¶ 157-162, 180-182 (alleging Defendants failed to remove content in response to their reports, including "offensive" content containing "unauthorized use of [Plaintiff Cabrera's] trademarks" and personal information). The TOS establish YouTube's discretion to enforce its Community Guidelines—not a promise or duty to do so. *See* 4AC, Ex. 2 at 80-81 ("YouTube reserves the right to decide whether Content violates these Terms of Service …."); *see* 4AC, Exs. 3-5 (similar). While YouTube invites users to report objectionable content (*see, e.g.*, 4AC ¶¶ 157, 160-161), YouTube makes no promises about the outcome of such reports. YouTube did not breach its contract with Plaintiffs by failing to remove other users' content.

In a similar vein, Plaintiffs also allege that YouTube removes their viewers' comments, while allowing others to post comments Plaintiffs find offensive (4AC ¶¶ 140, 142-143, 145, 169); and that YouTube excludes their videos from search results and recommendations, while allowing others' "unrelated" content to appear there (4AC ¶¶ 170-179). Plaintiffs do not even try to tie these grievances to language in the agreements. At any rate, these complaints boil down to disagreement with YouTube's exercise of the discretion afforded by the TOS, and fail for the same reason.

### 3.     The Agreements Provide YouTube The Right To Demonetize Videos

The parties' separate monetization agreements likewise rule out a claim based on the allegedly improper demonetization of Plaintiffs' content. The YPP Terms provide that "YouTube is not obligated to display any advertisements alongside your videos and may determine the type and format of ads available on the YouTube Service." 4AC, Ex. 12 at 953. Google and YouTube's

---

[5] Insofar as Plaintiffs suggest that YouTube's alleged use of filters or automated systems to remove or restrict their content is a separate breach (*see* 4AC ¶ 98), the TOS provide that YouTube "may use automated systems that analyze your Content to help detect infringement and abuse, such as spam, malware, and illegal content" (4AC, Exs. 3-5). YouTube's use of such systems to identify content as inappropriate for Restricted Mode, or in violation of its content moderation policies, falls readily within this provision.

---

terms and policies regarding advertising also reserve "the right to refuse or limit your access to [AdSense] Services." 4AC, Ex. 15 at 1089.

Plaintiffs contend that YouTube breached the parties' agreements by demonetizing or limiting monetization of some of their content, "den[ying] their equal right and contractual benefits to generate advertising revenue." 4AC ¶ 118; *see also, e.g.*, *id.* ¶¶ 98-99, 117-120. But the parties' agreements do not guarantee a "right … to generate advertising revenue." 4AC ¶ 118. Plaintiffs point to statements within YouTube's channel monetization policies concerning, for example, types of content that can and cannot be monetized (4AC ¶¶ 117), but none purport to limit YouTube's right to select when or how videos are paired with advertisements.

Insofar as Plaintiffs allege that YouTube breached the parties' agreements by demonetizing particular content "with no justification or explanation" (4AC ¶ 119), Plaintiffs also identify no promise by YouTube to provide such explanation. And to the extent Plaintiffs conversely take issue with the *monetization* of their content (4AC ¶ 121 (claiming YouTube "weaponized advertising by 'ad bombing'" their videos)), viewers' alleged "annoy[ance]" does not transform ad serving into a breach of its agreements with Plaintiffs. *See* 4AC, Ex. 12 at 953 ("YouTube … may determine the type and format of ads available on the YouTube Service.").

### 4.   Plaintiffs Fail To Allege An Implied Breach

For similar reasons, Plaintiffs have no viable implied covenant claim. Plaintiffs focus their claim on allegations that Defendants improperly removed or demonetized some of their content. *See* 4AC ¶ 195. But as explained above, and as Plaintiffs specifically acknowledge (4AC ¶ 58 & ¶ 58h), the contract expressly reserves YouTube's right to engage in that conduct. *See supra* at 6-8. Because YouTube's removal, restriction, and demonetization of content is expressly permitted by the relevant agreements, as a matter of law, these actions cannot give rise to a claim for breach of the implied covenant. *See, e.g.*, *Mishiyev*, 444 F. Supp. 3d at 1159-60 (implied covenant claim failed where YouTube had the express right to remove videos); *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 962 (N.D. Cal. 2020)) (same), *aff'd*, 851 F. App'x 723 (9th Cir. 2021); *Prager Univ. v. Google LLC*, 2019 Cal. Super. LEXIS 2034, at *31-32 (Super. Ct. Cal. Nov. 19, 2019) ("*Prager II*") (same); *Ebeid v. Facebook, Inc.*, 2019 U.S. Dist. LEXIS 78876, at *21-22 (N.D. Cal.

May 9, 2019) (same for Facebook); *cf. Chen v. PayPal, Inc.*, 61 Cal. App. 5th 559, 571 (2021) (implied covenant claim failed where PayPal had sole discretion to hold users' funds).

Plaintiffs' claim also fails because it is untethered to any contract term. An implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 349-50 (2000); *see also George v. eBay, Inc.*, 71 Cal. App. 5th 620, 638 (2021) ("[W]here there is independent consideration … the implied covenant cannot be used to vary the express terms of the contract."). The 4AC never identifies an express term that supports Plaintiffs' claim. Instead, it vaguely references the entirety of several contracts, "including the TOS Rules, Google's Privacy Policy, and other related agreements" (4AC ¶ 193); "express representations Defendants made publicly to Congress, and to Plaintiffs" (*id.* ¶ 195); and unspecified "express and implied provisions of the TOS and other related contracts" (*id.* ¶ 197). None of those references identifies a substantive duty located in the "specific terms" of the parties' agreement. Plaintiffs defy this Court's requirement to clearly identify the language that supports their claim and fail to plead a viable implied-covenant claim.

Finally, insofar as Plaintiffs' claim rests on the idea that YouTube somehow discriminated against them based on their "Identities," in a manner that was "contrary to California law" (4AC ¶ 195), this is another impermissible attempt to repackage Plaintiffs' failed discrimination claims. California's anti-discrimination policies are set forth in the Unruh Act, but this Court dismissed Plaintiffs' Unruh Act claim ***with prejudice***. The implied covenant is not an open-ended means for Plaintiffs to evade the Court's dismissal. If Plaintiffs have no legally viable discrimination claim, they have no viable implied covenant claim based on the same theory. *See, e.g.*, *Perry v. Lockheed Missiles & Space Co., Inc.*, 76 F. App'x 821, 824 (9th Cir. 2003) ("[H]aving failed to demonstrate that Lockheed discriminated against her—these same allegations cannot form the basis of a viable theory of a breach of an implied covenant of good faith and fair dealing."); *accord Farmearl v. Storopack, Inc.*, 2005 U.S. Dist. LEXIS 34293, at *30 (N.D. Cal. Sept. 12, 2005) (explaining that, because federal law required defendant "to refrain from discrimination and harassment, [plaintiff] cannot predicate a breach of contract claim upon Storopack's alleged failure to do so").

>      5.     Plaintiffs' Contract Claims Are Barred By The Limitation Of Liability
>             Provision And Warranty Disclaimer

In addition to their allegations about YouTube's allegedly unfair restriction and removal of

their content, Plaintiffs also base their claims on YouTube's alleged denial of assorted "other

contract services," including instances when "the audio or video is obscured, throttled, pixelated,

or blocked" or interrupted by "inserted sounds or images." *See* 4AC ¶¶ 153-156. But none of these

theories can overcome the plain language in the limitation of liability provision. The TOS provide:

"In no event shall YouTube … be liable to you for any … damages whatsoever resulting from …

***any interruption or cessation of transmission to or from our services*** … and/or … ***any errors or***

***omissions in any content or for any loss or damage of any kind incurred as a result of your use***

***of any content posted, emailed, transmitted, or otherwise made available via the services***,

whether based on warranty, ***contract***, tort, or any other legal theory …." 4AC, Ex. 2 at 84

(emphases added); *see also* 4AC, Exs. 3-5 (similar). Insofar as Plaintiffs' contract claims are based

on YouTube's alleged failure to remove offensive or unlawful third-party content, the limitation of

liability provision further provides that "***YouTube shall not be liable for content or the***

***defamatory, offensive, or illegal conduct of any third party*** and that the risk of harm or damage

from the foregoing rests entirely with you." 4AC, Ex. 2 at 84. (emphasis added).

The California Court of Appeal and Ninth Circuit have applied YouTube's limitation of

liability provision to dismiss similar contract claims at the pleading stage. *Lewis v. YouTube, LLC*,

244 Cal. App. 4th 118, 126-28 (2015) (provision barred contract claims that YouTube "wrongfully

deleted" videos); *Darnaa, LLC v. Google Inc.*, 236 F. Supp. 3d 1116, 1125 (N.D. Cal. 2017)

(same; expressly rejecting argument that the provision was unconscionable), *aff'd*, 756 F. App'x

674 (9th Cir. 2018); *see also Murphy*, 60 Cal. App. 5th at 22, 35 (rejecting claim that Twitter had

violated "the duty of good faith and fair dealing" based on the user agreement's limitation on

liability and reservation of discretion to Twitter). So too here, the limitation of liability provision

independently bars contract claims for precisely the sorts of supposed wrongs that Plaintiffs

allege—including the removal (or non-removal) of content, the "poor quality video play for

content posted by Plaintiffs," and "service interruptions" (*e.g.*, 4AC ¶¶ 106-115, 130-156).

6.      There is No Basis For Rescinding The Contracts

As an alternative to their breach of contract claims, Plaintiffs allege that the parties' agreements should be rescinded as illusory and contrary to public policy. 4AC ¶ 198. But rescission requires the failure of adequate consideration (Cal. Civ. Code 1689(b)(2)), and Plaintiffs' own allegations make clear that they continue to enjoy rights and benefits under their agreements with YouTube. *See* 4AC ¶¶ 10-18; *see also, e.g.*, 4AC ¶¶ 111-116, 118-121, 156, 176 (allegations indicating Plaintiffs continue to use YouTube to view, upload, and monetize videos and to communicate with other users). Courts have squarely held that YouTube's discretionary monetization policies are "supported by adequate independent consideration" because the "ability to post videos, even without advertising revenues, can be valuable to content providers in reaching a wide audience." *Sweet v. Google Inc.*, 2018 U.S. Dist. LEXIS 37591, at *25-26 (N.D. Cal. Mar. 7, 2018) (rejecting argument that agreement is illusory); *accord Prager II*, 2019 Cal. Super. LEXIS 2034, at *31-32. The same analysis applies to YouTube's discretion to remove content. *See Murphy*, 60 Cal. App. 5th at 35-38 (holding that Twitter's contract, which gave it discretion to remove content, was enforceable and not unconscionable). YouTube provides Plaintiffs with free access to an online platform with billions of videos and worldwide users; it offers free bandwidth for hosting videos and related content; tools for uploading, searching, viewing, commenting, sharing, and curating playlists; and recommendations for discovering new ideas and information. That valuable consideration does not fail merely because Plaintiffs disagree with some of YouTube's decisions about when to remove or restrict access to certain pieces of content. *See id.*

B.      **Plaintiffs Fail To State An Equitable Claim**

**Accounting.** This Court dismissed Plaintiffs' accounting claim because it was "framed in terms of a breach of contract." 3AC Order at 3 (citing *Cepelak v. HP Inc.*, 2021 U.S. Dist. LEXIS 221360, at *7 (N.D. Cal. Nov. 15, 2021)). The Court provided Plaintiffs leave to amend specifically to explain how "they lack an adequate remedy at law." *Id*. at 4.

Plaintiffs have not done so. The 4AC merely reshuffles two allegations from the body of the 3AC into the accounting section: that one Plaintiff's content allegedly should have received more views and subscribers than it did (4AC ¶ 223), and another Plaintiff's video received fewer

views than initially reported (*id.* ¶ 224). These claims do not address the Court's instruction. The 4AC reasserts the same theory as the 3AC—that Plaintiffs are owed an accounting for money allegedly owed to them under the parties' agreements. 4AC ¶ 227. This is akin to a breach of contract claim, and it should again be dismissed. *See, e.g.*, *Merritt v. JP Morgan*, 2018 U.S. Dist. LEXIS 69006, at \*29-30 (N.D. Cal. Apr. 24, 2018) ("[W]here any money owed to Plaintiffs would be a result of damages, California courts have dismissed separate claims for an accounting.").

**Conversion.** Here too, Plaintiffs' conversion claim tracks the former complaint in every way. It is still based on YouTube's allegedly wrongful retention of Plaintiffs' videos "in the form of electronic data" after those videos were removed from the platform. 4AC ¶ 237. The only arguably new allegation is the identification of four specific Plaintiffs whose videos were allegedly removed and retained. 4AC ¶¶ 235, 237. But Plaintiffs consented to YouTube's retention of their video data by uploading their videos to YouTube and accepting the TOS. Plaintiffs agreed that "YouTube may retain, but not display, distribute, or perform, server copies of [Plaintiffs'] videos that have been removed or deleted." 4AC, Exs. 2-5. They also acknowledged that they could save a copy of their data at any time prior to its removal. 4AC, Exs. 3-4; 4AC, Ex. 7 at 184. Plaintiffs' consent "negatives the wrongful element of the defendant's act." *Bank of N.Y. v. Fremont Gen. Corp.*, 523 F.3d 902, 914 (9th Cir. 2008); *accord King v. Facebook, Inc.*, 572 F. Supp. 3d 776, 791-92 (N.D. Cal. 2021) (dismissing similar conversion claim based on Facebook's removal and retention of user data), *aff'd*, 845 F. App'x 691 (9th Cir. 2021). Simply put, Plaintiffs' failure to retain copies of the material they uploaded does not make YouTube's removal of those videos an unlawful conversion. *See also, e.g.*, *Vallarta v. United Airlines, Inc.*, 497 F. Supp. 3d 790, 810 (N.D. Cal. 2020); *Fremont Gen. Corp.*, 523 F.3d at 914.

Moreover, a conversion claim cannot be based on the kind of unspecified, intangible electronic data at issue here. *See Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 239 n.21 (2010); *UCAR Tech. (USA) Inc. v. Li*, 2018 U.S. Dist. LEXIS 93817, at \*9-10 (N.D. Cal. June 4, 2018); *Avago Techs. United States Inc. v. NanoPrecision Prods.*, 2017 U.S. Dist. LEXIS 13484, at \*19-22 (N.D. Cal. Jan. 31, 2017). To the extent the claim is based on the content of Plaintiffs' videos (*see* 4AC ¶ 238), that claim would be preempted by the Copyright Act. *See Media.net*

*Advert. FZ-LLC v. NetSeer, Inc.*, 156 F. Supp. 3d 1052, 1069-70 (N.D. Cal. 2016).

**Replevin.** The Court correctly recognized that Plaintiffs' claim for replevin rises and falls

with conversion. 3AC Order at 2; 4AC ¶ 239; *see Fuhu, Inc. v. Toys "R" Us, Inc.*, 2013 U.S. Dist.

LEXIS 196563, at *42 (S.D. Cal. Mar. 1, 2013); *see also Englert v. IVAC Corp.*, 92 Cal. App. 3d

178, 184 (1979). It therefore fails for the reasons discussed above.

### C.  Plaintiffs Fail To State A Claim Under The UCL

As before, Plaintiffs have no viable UCL unlawfulness claim because they fail to allege a

predicate unlawful act. *See Oracle Am., Inc. v. Cedarcrestone, Inc.*, 938 F. Supp. 2d 895, 908

(N.D. Cal. 2013). This Court rejected any competitor-based unfairness claim (3AC Order at 3),

and other than a couple of vague references to YouTube's market share (*e.g.*, 4AC at 8; *id.* ¶¶ 33,

36-38, 43), Plaintiffs offer nothing in the 4AC to overcome that holding. Nor is any consumer-

based unfairness claim coherently, much less plausibly, alleged. *See* 3AC Order at 3.

Instead, the 4AC tries again to assert the fraud-based UCL claim that the Court dismissed

on multiple grounds, but this claim still fails to meet Rule 9(b)'s particularity requirement. *See*

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). As to YouTube's supposed

misrepresentations, the only statements Plaintiffs clearly identify are YouTube's general

statements about the open nature of its platform and its commitment to free expression (4AC

¶ 203), which the Ninth Circuit expressly held are "classic, non-actionable opinions or puffery."

*Prager III*, 951 F.3d at 999-1000; *accord Prager II*, 2019 Cal. Super. LEXIS 2034, at *32-33

(dismissing nearly identical UCL claim); *Hertz Corp. v. Accenture, LLP*, 2019 U.S. Dist. LEXIS

185373, at *12-13 (S.D.N.Y Oct. 25, 2019) (dismissing similar claim). Plaintiffs also fail to plead

justifiable reliance with the requisite particularity. *See Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th

310, 326-27 (2011). Indeed, multiple Plaintiffs admit that they began using YouTube *before* the

so-called deceptive statements even took place (*compare, e.g.*, 4AC ¶¶ 15-16 *with id.* ¶¶ 63, 67-

70). At best, Plaintiffs claim that they were unhappy with the success of their content on YouTube

and, in the same breath, recognize that their content received "millions of views and view hours."

*Id.* ¶ 204. That is not a "but for" allegation that Plaintiffs relied upon any of Defendants'

statements to their detriment. *Kwikset*, 51 Cal. 4th at 326-27. Finally, Plaintiffs fail to allege that

they lost "money or property" as a result of any allegedly false statement. *Swain v. CACH, LLC*, 699 F. Supp. 2d 1117, 1121 (N.D. Cal. 2009). The economic harm Plaintiffs claim occurred as a result of YouTube's decisions to make certain of their videos less visible or to demonetize them, not as a consequence of YouTube's general statements about its policies and aspirations. *Prager II*, 2019 Cal. Super. LEXIS 2034, at \*33-34.

## III.   YOUTUBE IS PROTECTED FROM PLAINTIFFS' CLAIMS BY SECTION 230

While the Court need go no further, insofar as Plaintiffs' claims are based on YouTube's decisions about whether and how to display user content and advertisements, including its decision to continue to publish third-party content over Plaintiffs' complaints or objections, they are separately barred by Section 230, which immunizes online platforms against efforts to hold them liable for publishing decisions like these. 47 U.S.C. §§ 230(c), (e)(3).

As the Ninth Circuit has explained, "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102-03 (9th Cir. 2009). Section 230(c)(1) protects against the kinds of claims at issue here: attacks on a service provider's "decision to block access to—or, in other words, to refuse to publish"—user content, including user-uploaded videos and advertisements. *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1094-95 (N.D. Cal. 2015), *aff'd*, 697 F. App'x 526 (9th Cir. 2017); *see also, e.g.*, *Al-Ahmed v. Twitter, Inc.*, 2022 U.S. Dist. LEXIS 91204, at \*44, \*52-55 (N.D. Cal. May 20, 2022); *Fed. Agency of News LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1119-20 (N.D. Cal. 2020); *King v. Facebook, Inc.*, 2019 U.S. Dist. LEXIS 151582, at \*8-12 (N.D. Cal. Sept. 5, 2019), *aff'd*, 845 F. App'x 691 (9th Cir. 2021). That is so even where claims are based on the theory that the removal or restriction of content violated an online services' terms of use. *See Rangel v. Dorsey*, 2022 U.S. Dist. LEXIS 127948, at \*7-9 (N.D. Cal. July 19, 2022); *King*, 572 F. Supp. 3d at 794; *King*, 2019 U.S. Dist. LEXIS 151582, at \*8-12 (all applying Section 230(c)(1) to dismiss contract claims based on content removal in alleged violation of terms); *accord Murphy*, 60 Cal. App. 5th at \*27-35 (same).

## CONCLUSION

For these reasons, Plaintiffs' claims should be dismissed, this time with prejudice.

Respectfully submitted,

Dated:  August 22, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: _____*/s/ Brian M. Willen*_____
        Brian M. Willen
        bwillen@wsgr.com

Attorneys for Defendants
GOOGLE LLC and YOUTUBE, LLC