UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY CARLESTE NEWMAN, et al.,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>GOOGLE LLC, et al.,<br><br>　　　　　Defendants. | Case No. 20-cv-04011-VC<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 123 |

　　　　The motion to dismiss is granted. The complaint does not adequately allege that YouTube's algorithm treats the plaintiffs differently based on their personal characteristics. Thus, even assuming the existence of an enforceable promise to treat all users equally, the plaintiffs fail to state a breach-of-contract claim.

　　　　As far as the Court can tell, the plaintiffs identify three allegedly actionable promises. The first, based on statements made by YouTube at congressional hearings, is a nonstarter. The second consists of YouTube's Mission Statement. The Ninth Circuit considered that Mission Statement in the context of a Lanham Act claim and concluded that it is "classic, non-actionable opinion[] or puffery." *Prager University v. Google LLC*, 951 F.3d 991, 999–1000 (9th Cir. 2020).

　　　　That leaves one sentence in the "Overview" section of YouTube's Community Guidelines, which reads: "We enforce these Community Guidelines using a combination of human reviewers and machine learning, and apply them to everyone equally—regardless of the subject or the creator's background, political viewpoint, position, or affiliation." At the motion

hearing, YouTube seemed to abandon any argument that this assertion is not an enforceable promise, at least for purposes of the motion to dismiss.

The plaintiffs allege that YouTube's algorithm violates the promise in the Community Guidelines because it considers the plaintiffs' individual characteristics when deciding whether to remove, restrict, or monetize content. But the complaint does not identify the characteristics that the algorithm has allegedly (and wrongfully) considered when making those decisions. More importantly, the complaint does not adequately allege that the plaintiffs have been treated differently based on those characteristics. It may well be that the algorithm removes or restricts content in ways that are inconsistent with the Terms of Service or other rules. But if swaths of users with varied characteristics experience similarly erroneous decisions with similar regularity, then the plaintiffs are not being treated differently.

At the hearing, plaintiffs' counsel pointed to the portions of the complaint that he believes adequately allege differential treatment.[1] Counsel first pointed to a chart with video links that purportedly demonstrates how similar content is treated differently depending on the characteristics of the user who posts it. But none of the hyperlinks in the chart are functional, so this portion of the complaint is useless.

Counsel next highlighted the allegations in paragraphs 99, 111–15, and 136–52. These allegations only exemplify the complaint's deficiencies. Paragraphs 111–15 detail how "more than half" or "nearly all" of various plaintiffs' videos have been wrongfully restricted under the Terms of Service. These paragraphs may well allege that some of the plaintiffs' content has been removed or restricted when it should not have been according to YouTube's terms and rules. But

---

[1] At times, counsel seemed to suggest that the plaintiffs do not need to plead differential treatment. On his view, merely pleading that the algorithm considers the plaintiffs' personal characteristics in making certain decisions, even if such consideration does not result in differential treatment, should suffice. But the alleged contractual promise is to treat all users "*equally*—regardless of the subject or the creator's background, political viewpoint, position, or affiliation." (Emphasis added.) It is not a promise never to consider users' personal characteristics for any reason. And one can imagine legitimate reasons to do so that would not violate the alleged promise in the Community Guidelines. Indeed, the algorithm could conceivably take users' individual characteristics into account to ensure and promote equal and non-discriminatory treatment.

they say nothing of whether similar videos posted by users with different characteristics have been treated any better.

Paragraphs 99 and 136–52 fill this gap to a degree. There, the plaintiffs allege that certain "Preferred Creators" have been allowed to post "full copies" of videos that were restricted when posted by one of the plaintiffs, and that they are allowed to post videos that would seem to violate the Terms of Service. But these paragraphs do not allege the characteristics of the preferred creators. Are the preferred creators white and treated better than users of color who post similar content? Are they straight and treated better than gay users who post similar content? Specificity of this sort is important: If the preferred creators share the plaintiffs' characteristics, then the fact that their content is treated more favorably does not suggest differential treatment based on those characteristics.

Counsel then pointed the Court to paragraphs 101–04, which come closest to the mark. There, the plaintiffs allege that during a 2017 conference, YouTube admitted that its "algorithms and computerized filtering tools discriminate or 'target' users like Plaintiffs . . . who identify with marginalized groups when making decisions regarding which videos to monetize . . . [or restrict]." The plaintiffs also recount a phone call in which YouTube allegedly explained to a user, who identifies as gay, that the algorithm deemed the user's video ineligible for advertising because it concluded that content created by a gay user involved the "gay thing" and thus constituted "shocking" and "sexually explicit" content, even though the video was a "holiday special" that contained no such content.

These are by far the strongest allegations in the complaint. The latter, in particular, provides the sort of specific factual content that is largely absent from the rest of the complaint: It identifies a specific characteristic of the user and plausibly alleges differential treatment based on that characteristic. But this one allegation—limited to a single advertising decision as to one unnamed user's video—cannot singlehandedly make plausible the broad sweep of allegations of differential treatment as to removal, restrictions, and monetization that the 70-page complaint raises against YouTube. The breach-of-contract claim is therefore dismissed with leave to

3

amend.

The claims for conversion, rescission, and breach of the implied covenant of good faith and fair dealing all rise and fall with the breach-of-contract claim. The replevin claim, in turn, rises and falls with the conversion claim. Thus, those four claims are also dismissed with leave to amend. With respect to the accounting claim, the plaintiffs have failed to address the concerns addressed in the prior ruling, but in an abundance of caution, dismissal of this claim is also with leave to amend.

Lastly, the UCL claim is dismissed with leave to amend. The unlawful practice allegations, which were previously predicated on the section 1981 and Unruh Act claims, now appear to be predicated on the breach-of-contract claim, which has been dismissed. As to the fraudulent practices claim, the new allegation that "Plaintiffs relied on more than a decade of Defendants' promises of access to YouTube as a public forum, where the same content based TOS Rules apply to everyone and all content" does not come close to pleading reliance with the particularity required by Rule 9(b). Moreover, that claim is based in part on YouTube's Mission Statement, which the Ninth Circuit has already concluded is "classic, non-actionable opinion[] or puffery." *Prager*, 951 F.3d at 1000. As to the unfair practices claim based on anti-competitive conduct, the new complaint adds only a few references to YouTube's market share, which do not suffice to plausibly plead a competition-based unfairness claim.

This will be the plaintiffs' final opportunity to amend. The plaintiffs are advised that their Fourth Amended Class Action Complaint—while an improvement—remained far too long, repetitive, and difficult to comprehend. The plaintiffs will again have up to 70 pages, but they should endeavor to shorten and streamline the complaint as much as possible, eliminating the many superfluous paragraphs that serve only to distract and confuse.

The amended complaint is due 21 days from the date of this order, and YouTube's response will be due 21 days after the filing of the amended complaint.

**IT IS SO ORDERED.**

Dated: November 28, 2022

_____
VINCE CHHABRIA
United States District Judge